# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Cr. No.: 1:19-cr-10040-JDB |
| | ) |
| vs. | ) |
| | ) |
| JEFFREY W. YOUNG, JR. | ) |
| | ) |
| Defendant. | ) |

## GOVERNMENT'S MOTION PURSUANT TO 18 U.S.C. § 3145(a)(1) FOR REVOCATION OF MAGISTRATE'S RELEASE ORDER AND **REQUEST FOR EVIDENTIARY HEARING**

On April 18, 2019, the Government presented several motions for detention in pharmaceutical opioid diversion cases indicted as part of a regional takedown. The defendants are all medical doctors, pharmacists, and other medical-services professionals accused of illegally prescribing and dispensing dangerous narcotics, often in combination with other known drugs of abuse, fueling the country's ongoing "opioid crisis" under the guise of the practice of medicine. The Government's evidence at trial will show that the principal difference between these defendants and street-level drug dealers is that the defendants make their drug money by exploiting their medical licensure and the public's trust in the medical community.

Federal law recognizes the seriousness of these crimes and punishes them severely. That fact is underscored by an applicable statutory presumption that no condition or combination of conditions of pretrial release will secure the community's safety and the defendants' appearances at trial. *See* 18 U.S.C. § 3142(e)(3).

Presumption notwithstanding, the magistrate judge released all of the indicted medical-services providers on bond. Most of these defendants had no prior encounters with law enforcement; their danger to the community was arguably tempered by the magistrate judge's prescribed conditions, which tended to include restricting the defendants' ability to prescribe and dispense the opioids and other addictive drugs that the defendants were charged with illegally dispensing.

If some of the defendants' danger to the community was mitigated by those conditions, Jeff Young's was not. Even among other defendants presumed to be dangerous, Young stands out: he has a demonstrated history of violence against women, intimidation and threats, and disregard of judicial and administrative orders. The crimes with which he is charged are some of the most egregious, with six counts of illegally prescribing to a pregnant woman, each of which carries a one-year mandatory minimum and a 40 year statutory maximum. *See* Dkt. 3 (Indictment) & 4.1 (Penalty Notice); 21 U.S.C. §§ 841(a)(1) & 861(f). Young has long been, and remains, a danger to the community. He is also statutorily presumed to be a flight risk based on the seriousness of his offenses and his likely punishment if convicted, which the Sentencing Guidelines dictate should be more than twenty years' federal imprisonment.

Following Young's April 18 detention hearing, the Government began investigating Young's current practice, which Young claimed to the magistrate judge was legitimate and safe. Not so. Even with a restricted license, he continues to prescribe addictive, known drugs of abuse to drug-seekers.

The Government respectfully urges the Court grant an evidentiary hearing on this motion and, ultimately, enter an order detaining Young pending trial.

**BASIS FOR RELIEF**

Pursuant to 18 USCS § 3145(a), "[i]f a person is ordered released by a [United States magistrate judge], . . . (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release; and . . . [t]he motion shall be determined promptly."[1]

**STANDARD OF REVIEW**

The magistrate judge's ultimate determination that detention was not warranted in Young's case is a "mixed question of law and fact" that this Court reviews *de novo. United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *accord United States v. Harper*, 2013 U.S. Dist. LEXIS 179573, *2-3 (W.D. Ky. Dec. 23, 2013); *United States v. Romans*, No. 00-5456, 2000 U.S. App. LEXIS 10708, 2000 WL 658042, at *1 (6th Cir. May 9, 2000) (affirming district court that reviewed the magistrate judge's detention order de novo).[2]

---

[1] The statute provides no specific timetable for filing such a motion. See United States v. Stevens, 2005 U.S. Dist. LEXIS 7215, *4, 2005 WL 483387 W.D. NY March 2, 2005) (characterizing defendant's motion "timely" when it was filed around two months after the magistrate judge issued the detention order). This Court's Local Rules state that, as "an order of a magistrate judge determining a pretrial matter," such a motion be filed and served on opposing counsel "within fourteen days after being served with a copy of the order." See WDTN LR 72.1(g)(1). Under the Local Rule, this motion is timely.

[2] Local Rule 72.1 provides that "[t]he presiding district judge may reconsider any order determining a pretrial matter where it has been shown that the magistrate'[s] order is clearly erroneous or contrary to law." *Id.* The magistrate's release Order does not specify findings of fact that might be subject to clear-error review. *See* Dkts. 26 & 28.

## **REQUEST FOR EVIDENTIARY HEARING**

It is well settled that when considering a motion for revocation of a magistrate judge's order for release under 18 USCS § 3145(a), district court can receive evidence and hear arguments from counsel in addition to what was considered by the magistrate judge. *See, e.g.*, *United States v. Phillips*, 2018 U.S. Dist. LEXIS 182925, *3, 2018 WL 5304116 (W.D. Tenn. Oct. 25, 2018); *United States v. Villegas*, No. 3:11-CR- 28, 2011 U.S. Dist. LEXIS 31774, 2011 WL 1135018, at * 4 (E.D. Tenn. Mar. 25, 2011) (recognizing that the Court must "engage in the same analysis, with the same options . . . as the magistrate judge").

An evidentiary hearing before the Court is appropriate in this case. As a practical matter, the number of detention hearings set for April 18 in the medical-professional cases necessitated that, with the approval of the magistrate judge and by agreement of the parties, most of the evidence presented by both sides in the hearings on the Government's motions was by way of attorney proffer.[3]

The only exception was the Government's presentation of its motion pertaining to Young. That presentation, while truncated, included testimony from DEA Special Agent John Tankersley, who testified about investigators' extensive evidence that Young has a history of sexual predation. SA Tankersly stated that during the Indictment Period, Jeff Young regularly and cavalierly traded prescriptions for sex—sometimes even showing his employees cell phone photos of himself engaging in sex acts at his Preventagenix

---

[3] The Government has ordered an expedited copy of the transcript from the hearing, but has not yet received it.

clinic immediately after the fact. SA Tankersly also recounted disturbing cell phone video evidence obtained by agents showed Young having sex with a nearly unconscious woman.

The Government firmly believed at the time that this evidence, though only a microcosm of the Government's evidence that Young remains a danger to the community, would be sufficient to detain him, particularly in light of the applicable presumption.

Young took the position that any danger to the community was effectively mitigated by a November 2018 Agreed Order between Young and the Tennessee Health Related Boards, representing to the magistrate judge that the Board had already considered the conduct charged in the Indictment, which was two years old; Young's current medical practice is "mostly cosmetic"; and that pursuant to the Board Order, Young can no longer prescribe the powerful narcotics that got him into trouble. Ultimately, the magistrate judge credited those representations and allowed Young to continue to practice under those conditions.

The Government seeks the opportunity to show conclusively that the Board's Order was woefully inadequate to address the evidence the Board had before it, and that contrary to Young's representations to the magistrate judge, Young's prescribing under the Board Order—continuing to this day—evidences Young's ongoing disrespect for the law and for rules imposed upon him by authorities, and his continuing danger on bond.

## APPLICABLE LAW

Whether a defendant should be detained without bond pending trial turns on whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). This analysis takes into account whether a defendant is "particularly dangerous," *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)—including where, as here, the Grand Jury has returned an Indictment alleging that the defendant committed one of the crimes listed in § 3142(e)(3)(A)-(E) (listing drug diversion offenses with statutory maximums of 10 or more years among charges triggering the presumption); Dkt. 4-1 (reflecting that each of the Indictment's six counts under 21 U.S.C. §§ 841(a)(1) & 861(f) against Young for prescribing to a pregnant woman carries "a term of imprisonment for twice the maximum punishment otherwise authorized, or 40 years," and that "a term of imprisonment under this section shall not be less than one year").

The presumption in favor of detention therefore applies in this case. *See Stone*, 608 F.3d at 945. In rebutting the presumption, the defendant must produce evidence that he does not pose a danger to the community or a risk of flight. *Stone*, 608 F.3d at 945. If the defendant satisfies his burden of production, the Government must demonstrate danger or flight risk (though it need not prove them both) by clear and convincing evidence. *See id.*

When deciding whether pretrial detention is warranted, a court must consider the following factors: (1) the natures and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4).

## ANALYSIS

As a threshold matter, the Government agrees that Young met his burden of production to rebut the statutory presumption that he must be detained. However, even after a defendant rebuts the statutory presumption, it "remains a factor to be considered among those weighed by the district court." *Stone*, 608 F.3d at 945.

Here, the presumption and all other factors favor detention.

1. **Nature and Circumstances of the Offense**

The Indictment charges Young with conspiring to possess, with the intent to distribute, controlled substances in violation of 21 U.S.C. § 846; six counts of unlawful distribution of controlled substances to a pregnant woman in violation of 21 U.S.C. §§ 841(a)(1) & 861(f); seven counts of unlawfully distributing and dispensing controlled substances under 21 U.S.C. § 841(a)(1); and maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1). See Dkts. 3 & 4-1.

The first Section 3142(g) factor weighs in the Government's favor as a matter of law and a matter of fact. As a matter of law, the offenses at issue in this case are serious enough to raise the rebuttable presumption in favor of pretrial detention pursuant to 18 U.S.C. § 3142(e)(3). *United States v. Marcrum*, 953 F.Supp.2d 877, 883

(W.D. Tenn. 2013) (rejecting magistrate's conditions and ordering detention). "This presumption represents the belief of Congress that in the majority of serious Controlled Substance Act offenses, there is an increased risk of flight or danger to the community, and in particular, the danger that the defendant will resume drug trafficking activities while released." *United States v. Williams*, 948 F. Supp. 692, 693 (E.D. Mich. 1996) (citing *United States v. Hare*, 873 F.2d 796, 798) (5th Cir. 1989)); *see also United States v. Hinton*, 113 F. App'x 76, 78 (6th Cir. 2004) ("Congress has determined that drug offenders pose a special risk of flight and dangerousness to society.").

As a matter of fact, Young not only committed serious crimes; he used his powers of prescription and position of trust in the course of committing those crimes to extract sex from patients as he illegally prescribed drugs to all comers, including addicts he knew were in rehabilitation programs and pregnant women whose unborn children were exposed to these substances—at least one of whom was born with neonatal abstinence syndrome). Young's sentence, should he be convicted, will also reflect that he illegally dispensed prescriptions for these drugs in large amounts: From July 2014 to January 2017, Young prescribed approximately 800,000 Schedule II opioid pills (mostly Hydrocodone and Oxycodone) and 600,000 Schedule IV benzodiazepine pills (mostly Alprazolam). His Guidelines range will likely be more than twenty years' federal imprisonment. For that reason, first Section 3142(g) factor weighs heavily in favor of detention.

2. **Weight of the Evidence**

The weight-of-the-evidence factor "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608

F.3d at 948. As discussed in more detail below under the fourth § 3142(g) factor, the weight of the Government's evidence of dangerousness is overwhelming.

On the other hand, at the hearing before the magistrate judge, Young offered only a November 2018 Agreed Board Order restricting his nursing license to refute the Government's evidence. Based on Young's representations about the nature and effect of the Board's Order, the magistrate judge afforded great deference to it. But under scrutiny, that Order is hardly "rebuttal" evidence; it is more akin to a confession. In it, Young "acknowledge[d] that the Department's proof would show" that he:

- Provided narcotics and other controlled substances in amounts and/or for durations that were "not medically necessary, advisable, or justified for a diagnosed conditions";
- Prescribed these medications without "inquiring into a patient's potential substance abuse history";
- Prescribed controlled substances without conducting office visits;
- Prescribed dangerous combinations of medications, including the deadly cocktail of "opioids, benzodiazepines, and muscle relaxants";
- Failed to have his supervising physician co-sign charts as required by law where a patient receives a controlled substance; and
- Failed to prove that he had a supervising physician for several months during 2015 and 2016, also required under Tennessee law.

In light of those findings of fact, the Board's decision to allow Young to keep his license and continue practicing is inexplicable. Not only can Young practice; the Order allows Young to prescribe Tylenol with codeine (a Schedule III opioid), depo-testosterone (a Schedule III anabolic steroid), all benzodiazepines, and cough syrup with codeine. These are all known drugs of abuse with substantial street value and demand. In other words, the Board's Order permits Young—charged by the Grand Jury with illegally prescribing addictive and dangerous substances—to continue to prescribe

9

*other* addictive and dangerous substances. The conditions of the Board's Order cannot be squared with the evidence that was before it.

The Board's Order provides even less reassurance in light of Young's track record, discussed below, of violating such orders. Nor does it in any way mitigate Young's demonstrated propensity for violence against women, drug and alcohol abuse, or his history of threats and intimidation of those who attempt to stand up to him.

As a Tennessee federal court recently stated in response to a defendant's argument that his proposed conditions of release (*i.e.*, ankle monitoring and home confinement) would keep him from "prowl[ing] around,"

> [t]he electronic ankle monitor is just a device. And a protective order is just a piece of paper. Both can be used to punish Defendant after a harm has occurred, but **neither ensures that Defendant will not leave his mother's house to further harass these victims**. If there were evidence to show his current conduct was an aberration, or that he had taken responsibility for his actions, the Court might consider imposing release with conditions. **But Defendant's pattern of conduct is not reassuring, and he has provided no evidence proving he is now a changed man**.

*United States v. Hefner*, 2019 U.S. Dist. LEXIS 23432, *21 (E.D. TN, Feb. 13, 2019) (emphases added).

The Government's evidence will show that the Board's Order should be given minimal weight (if any), and that the Court should do what the Board did not: stop Young from further harming the community by prescribing dangerous substances and

10

exploiting his patients in the process. The only way to ensure this is to detain Young pending trial.

3. **History and Characteristics of Defendant**

In considering the history and characteristics of the defendant, a court should consider the following:

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.

18 U.S.C. § 3142(g)(3).

Cutting in Young's favor on this element are that Young has lived in Tennessee most of his life and has ties and employment in the community. His criminal history is minimal, though it is under-representative of his propensity for violence.

Cutting against him are a history of threats, intimidation, and violence against women, a well-documented history of abuse of drugs and alcohol, and a propensity to use his position of trust as a medical provider to coerce women into sex.

Young has demonstrated his propensity for coercion with more than just controlled substances. By his own representation to the magistrate judge, Young's

current practice under the Board's Order is "mostly cosmetic." Cosmetic services, however, have always been on Young's list of services he'll exchange for sexual favors. For example, in a June 2016 private exchange on Facebook, when asked by C.T. about Botox, Young replies, "I will open for you anytime. After hours even. . . . You tell me and I'll work around you, on top of you, behind you, under you." In September 2016, in a private exchange on Facebook with a different woman, R.H., Young responds to R.H.'s suggestion that "maybe one day I will make it up to your office for that Botox." He states, "I'll treat you for free and we could play 'Doctor,'" "PreventaGenix AFTERHOURS." Later, Young attempts to elicit explicit photos from R.H.: "You've got my cell and on SnapChat[?]" She responds, "Yes I do!" Young replies, "Then use it!!!  Send me something!  Pacify this curiosity until I can meet you."

Young also has a history of disregarding court and administrative orders. For example,

- Last year, Young was held in civil contempt in Tennessee state court after the State of Tennessee filed a petition in support of Young's ex-wife relating to Young's breaches of their Marital Dissolution Agreement (MDA) and Final Divorce Decree (FD). The court repeatedly found Young's testimony "not credible," including relating to withdrawal of funds that the judge found Young knew belonged to his ex-wife.
- In the context of that hearing, Young admitted to some of the allegations that he had wrongfully violated the court's order, for which the court held Young in contempt.
- Relatedly, witnesses testified that Young had admitted outside of court that he had no intention of honoring the FD, and that he hid assets and expenses in his companies to avoid compliance.
- The Board's records contain abundant evidence Young believes he is above the law and not beholden to the truth. The Board's investigators have conducted numerous interviews with Young, several times confronting him with evidence that flatly contradicts his statements. When caught, Young's response is generally to become angry and claim the Board is on a witch hunt. Young has

also ignored the Board's admonitions, delivered to him in writing, that, *e.g.*, he cannot keep alcohol in his clinic or feud with patients on Facebook.

If nothing else, Young's history of disregarding orders of courts and admonitions from the Board demonstrates that he cannot be trusted to obey his conditions of bond or the November 2018 Order that insulated him from detention before the magistrate judge. This factor weighs in the Government's favor.

4. **Danger to the Community**

The Government will show that Young is a danger to the community that cannot be mitigated with any condition or combination of conditions with evidence of the following:

***First***, since the magistrate judge entered the April 18 Order with conditions, the Government has investigated Young's current prescribing practices at his Genexis clinic and learned that, even with severe restrictions on his powers to prescribe, Young is still a danger to his patients.

- In March 2016, the CDC warned that medical professionals should avoid prescribing opioids and benzodiazepines concurrently wherever possible because of the risk of potentially fatal overdose.
- Yet, *to this day*, Young continues to prescribe benzodiazepines to former Preventagenix patients who not long ago were receiving the balance of the opioid-benzodiazepine cocktail *directly from Young*, among others, without checking the Controlled Substance Monitoring Database to determine whether they are receiving opioids from another provider or doctor shopping.
- Not surprisingly, the CSMD shows that many of Young's benzodiazepine patients *are* receiving opioids from other doctors and doctor shopping. In short, Young has taken his existing prescribing privileges to their very limits, and he continues to engage in dangerous prescribing despite the Board's order.

***Second***, Young has a long history of sexual harassment, threats, and violence, including threats to potential witnesses in this case. *See United States v. Hefner*, 2019 U.S. Dist. LEXIS 23432, *20 (E.D. TN, Feb. 13, 2019) (determining that a "pattern of assault presents a serious danger," stressing in rejecting proposed release with conditions the defendant's conviction for assaulting a woman 15 years earlier, that he was the subject of two active protection orders, and was facing assault charges in state court). *Cf. U.S. v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990) ("A willingness to strike loved ones offers probative evidence of a tendency to violence and dangerousness toward others"). For example,

- In 2011, Young was booked on domestic battery charges; in 2013, a judge issued a restraining order prohibiting contact with an ex-wife, which police reports reflect he violated repeatedly through at least the end of 2015. In November 2015 Young posted a naked picture of his ex-wife on Craigslist and Facebook and taunted her about it. In September 2016, Young was served a criminal summons for menacing an individual in his clinic parking lot. In December 2016, Jackson P.D. received an assault complaint from yet another woman.
- Several people, including Young's ex-wife, former co-workers, and even individuals associated with the Board, have reported being verbally threatened by Young; still more have reported being threatened by his affiliates on his behalf. More than one witness has told investigators she began carrying a weapon after receiving such threats. Investigators still regularly hear from fact witnesses that they are "afraid" of Young;
- Young's closest associate was convicted in the Western District of Tennessee by Judge J. Daniel Breen of making threats to harm a DEA Special Agent and his family in 2017. The DEA agent was known to be investigating Young;
- Young's public posts on social media reinforce his tendency to threaten and/or shame those who come forward with concerns about his practices. The Board has long been aware of this issue, as the Board's investigative files reflect numerous complaints from former patients, as well as a complaint from a member of the Jackson Area Council on Alcoholism and Drug Dependency, about being threatened and/or harassed on social media by Young and his cohorts. In one post, Young states that the Council member "would be the first to call the police if we tried to settle it like 'men' . . . You know his type! P U S S Y [sic]

14

- Young is a sexual predator. In April 2016, Young was investigated for forcible rape of a 23-year old by the Jackson Police Department. She claimed she had been drugged at Young's home—a strikingly similar scenario to the one found on Young's phone depicting sex with a near-unconscious woman. Numerous witnesses have reported that Young coerced young women into sex by dangling opioid prescriptions over them. The Board's investigations into Young contain evidence showing Young's misogynistic social media posts containing content like "Little Johnny couldn't wait to show that bitch his cock. Bitches love cocks," and "Cigarettes and alcohol have warning labels because they are addictive, dangerous, and destroy lives. And yet vaginas are just allowed to roam about freely."

Young's communications obtained by investigators reflect a staggering number of additional instances of assault, sexual coercion, and threats.

## **CONCLUSION**

For all of the foregoing reasons, the Government respectfully requests the opportunity to present the Court with evidence at a full evidentiary hearing, in order to ensure that the Court is fully aware of the ineffectiveness of the November 2018 Order and Young's ongoing danger to the community. Jeff Young should not be permitted to harm the public for a single day longer. After hearing the Government's evidence, the Court order him detained pending trial.

Respectfully submitted,

/s/ Drew Pennebaker
Andrew Pennebaker
Trial Attorney
U.S. Department of Justice
(202) 597-0683
Andrew.Pennebaker@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically filed through ECF on May 2, 2019.

                                         */s/ Andrew Pennebaker*
                                         Andrew Pennebaker
                                         Trial Attorney