1        UNREDACTED

2        IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF TENNESSEE
3                 EASTERN DIVISION

4        ------------------------------------------------

5

UNITED STATES OF AMERICA            )
6                                    )
                                     )
VS                                   )NO.1:19-cr-10040
7                                    )JACKSON, TENNESSEE
                                     )
8   ALEXANDER ALPEROVICH,            )
    JEFFREY W. YOUNG, JR., and
9   ANDREW RUDIN

10       ------------------------------------------------

11

12                    REPORT DATE

13                 NOVEMBER 21, 2019

14

15

16       BEFORE THE HONORABLE J. DANIEL BREEN,

17            UNITED STATES DISTRICT JUDGE

18

19

20

21             KRISTI HEASLEY, RPR
               OFFICIAL COURT REPORTER
22          U.S. COURTHOUSE, SUITE 450
            111 SOUTH HIGHLAND AVENUE
23          JACKSON, TENNESSEE 38301

24

25

                UNREDACTED TRANSCRIPT

1                          APPEARANCES

2

3    FOR THE UNITED STATES:

4    KATHERINE PAYERLE, ESQ.
     U.S. DEPT OF JUSTICE
5    1400 New York Avenue NW
     Washington, DC 20530
6

7

8    FOR THE DEFENDANT ALPEROVICH:

9    STEPHEN ROSS JOHNSON, ESQ.
     RITCHIE DILLARD DAVIES & JOHNSON
10   606 West Main Street
     Suite 300
11   Knoxville, TN 37902

12

13

14   FOR THE DEFENDANT YOUNG:

15   JOHN MCNEIL, ESQ.
     CLAIBORNE FERGUSON LAW FIRM
16   294 Washington Avenue
     Memphis, TN 38103
17

18

19   FOR THE DEFENDANT RUDIN:

20   NISHAY K. SANAN, ESQ.
     ATTORNEY AT LAW
21   53 W. Jackson, Suite 1424
     Chicago, IL 60604
22

23

24

25

                    UNREDACTED TRANSCRIPT

1                    EXAMINATION INDEX

2                  NO TESTIMONY OFFERED

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              EXHIBITS

2                        NO EXHIBITS MARKED

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              THE COURT:  U.S. versus Jeffrey Young,

2   Alexander Alperovich, Andrew Rudin, cast of numbers.

3                  (Defendant Alperovich and Young Present.)

4              MS. PAYERLE:  Good morning, Your Honor.

5   Kay Payerle on behalf of the United States.

6              THE COURT:  Thank you, ma'am.

7              MR. JOHNSON:  Your Honor, Steven Johnson

8   on behalf of Dr. Alperovich.

9              THE COURT:  Mr. Johnson.

10             MR. MCNEIL:  Morning, Your Honor.  I'm

11  John McNeil standing in for Mr. Ferguson.

12             THE COURT:  Okay.

13             MR. SANAN:  Morning, Your Honor.  Nishay

14  Sanan on behalf of Andrew Rudin appearing by telephone

15  and Mr. Rudin's appearance is waived.

16             THE COURT:  Thank you, sir.

17             I'll hear whoever wishes to step up.

18             Mr. Johnson, do you want to step up and

19  tell us a little bit about where we are, sir.

20             MR. JOHNSON:  Your Honor, at the last

21  court date we indicated to the Court that there could be

22  some issues with the complexity of this case.  And the

23  Court inquired about scheduling.  And, you know,

24  obviously, there is a lot of discovery here.

25                  And I took the position at the last

UNREDACTED TRANSCRIPT

1   hearing that we're not prepared to even file pre-trial

2   motions, at least at that last report date, because we

3   were still trying to analyze what we had been provided

4   and figure out what issues to raise.

5          Since that time we have endeavored to

6   figure out and document what we've been provided and then

7   what we think the government still has to produce to us.

8   And we filed a supplemental discovery request with the

9   government.  I conferred with government's counsel about

10  that.

11         It's my understanding that they are in the

12  process of providing us an additional 2 terabytes of

13  discovery.  I shipped a hard drive up to DOJ in D.C.

14  yesterday so they can begin copying that, giving that to

15  us.  It's my understanding that will be provided as soon

16  as it's copied.

17         It's going to consist of the other items

18  that I listed out in the second discovery request, to

19  include the remainder of materials that were seized from

20  Preventagenix, the clinic that was operated by Defendant

21  Young, and also things like the search warrant, the

22  search warrant affidavit, which we don't have yet, and

23  like materials.

24         And once we have those -- I'm speaking a

25  little bit in the dark right now, because I don't know

UNREDACTED TRANSCRIPT

1    what all is on the 2 terabytes that they're going to give

2    us.  But once we have those materials and analyze them,

3    we'll be in a better position to talk about scheduling.

4              However, in conferring with counsel for

5    co-defendants, and also counsel for the government, I

6    believe where we're at is we may be in agreement,

7    consistent with the Court's calendar, to go ahead and

8    schedule a trial date for the last two weeks of

9    September, and then back certain deadlines up from that

10   trial date, consistent with what this Court asked us to

11   do at the last court date.  Which was to see if we can

12   come up with a pre-trial order, an agreed pre-trial order

13   on scheduling that would deal with issues like Daubert

14   hearings and Daubert disclosures and pre-trial hearings

15   that we're going to have to deal with in a case of this

16   nature.

17             THE COURT:  Well, I had -- I think -- of

18   course, it seems like every time I have a hearing in this

19   we have a new AUSA that is appearing.  So the gentleman

20   that was here last time, I instructed him to get me a

21   deadline as to when the government is going to be

22   presenting or producing all the information.  They kept

23   telling me there was statements repeatedly going on.  I

24   said, well, we've got to have an end date at some point.

25             So, ma'am, you're in the hot seat right

UNREDACTED TRANSCRIPT

1   now.  So tell me when that's going to be.

2          MS. PAYERLE:  Yes, Your Honor.  I have,

3   obviously, been in contact -- we're all in a team, so

4   I've been in contact with Mr. Knutson about this and we

5   discussed it.

6          And from our perspective -- well, first of

7   all, if I can back up.  There is two issues.

8          The first issue is the quantity of

9   discovery that is to be provided.  Mr. Johnson and our

10   prosecution team had a few discussions about this.  And

11   we are providing everything he's essentially asked for.

12          We heard about this list of information

13   that he wanted the same time the Court did.  That was the

14   first time we heard about it.  So when he filed this

15   request with the Court, of course, we immediately got in

16   touch on the phone.  And we said, sure.  If that's the

17   stuff that you want, you can have it.  Just send us a

18   hard drive and we will get it to you.

19          We don't believe the case is as complex as

20   the defense.  We think it's a relatively straightforward

21   case.  The 2 terabytes is a bit misleading.  It's

22   really -- they're computer images of hard drives.  So it

23   has every single thing that's on the hard dive.

24          And as I think Mr. Johnson knows, when you

25   get a computer image, you get all the software.  So all

1    the Windows software, all the Microsoft Word Suites

2    software.  And that comprises about 90 percent of the

3    stuff on the computer image.  So the actual reviewable

4    data is usually less than 10 percent of that information.

5                    And then, of course, most of that will

6    just be the day in and day out sort of business of the

7    practice.

8                    The case here is centered around patient

9    records, essentially.  And then, of course, witnesses who

10   may testify about how things were done with respect to

11   those patient records.

12                   So, I mean, I do want to sort of correct

13   the record a little bit on the quantum of evidence that

14   was or would be outstanding.  And I do think that

15   after -- let's give FedEx some time.  After next week the

16   defense will have most of the existing records of

17   discovery that exists.

18                   So I want to cabin that off and say that I

19   believe it will be in very short order.  Maybe -- let's

20   give it two weeks to make sure.  But I think in terms of

21   what they want and what they have asked for, you know,

22   they'll have it as soon as we get a get hard drive and as

23   soon as we can upload the material they have asked for.

24                   THE COURT:  That's one aspect --

25                   MS. PAYERLE:  That's right.

UNREDACTED TRANSCRIPT

1            THE COURT:  -- we're talking about.

2            The other is is your colleague last time

3 was telling me that he was, they were, you all were still

4 taking statements --

5            MS. PAYERLE:  Yes, Your Honor --

6            THE COURT:  -- of witnesses.

7            And, you know, this case is not an old

8 case, but it has some age on it.  And, I mean, I

9 recognize maybe this isn't the normal case the

10 prosecution always prosecutes.  But nonetheless, there

11 has got to be an end date.  And I instructed your

12 colleague to tell me when that was going to be.  And I'm

13 expecting you to tell me that.

14            MS. PAYERLE:  Yes, Your Honor.  And I

15 think that is what I'm getting at.  We don't actually

16 think there are a lot of new people to go interview --

17            THE COURT:  That doesn't tell me anything.

18            MS. PAYERLE:  Right.  But what I think we

19 were hoping to do is set the deadlines keyed off of the

20 trial date.

21            And the reason is because if there is a

22 trial date a year from now or two years from now,

23 sometimes you lose witnesses, sometimes evidence gets

24 stale, sometimes you need to refresh people, and new --

25 and as you're preparing them for testimony.

1          And so what I was hoping to do, and what

2     Mr. Knutson and I discussed, is providing the Court with

3     an end date that would be 60 days back from the trial

4     date.  Whatever date the trial is, we would firmly say no

5     new witnesses after, you know, 60 days before that date.

6          And we do that only because of the

7     practicality of having a trial date that is so far out.

8     And because people -- you know, cases are made of human

9     witnesses and things happen to human beings.

10          But I say with the representation that

11     most of what we have already done, and most of what we

12     intend to do so in the case, we believe in good faith is

13     done, and will be done.  It's just a matter of as we

14     prepare for trial, just sometimes things come up.

15          We don't anticipate, in other words,

16     exploring other areas of the case, bringing other areas

17     of investigation, things like that.  But just things

18     happen with witnesses because they're human beings.

19                    THE COURT:  Okay.

20                    MS. PAYERLE:  I think I just want some

21     clarity on how maybe --

22                    THE COURT:  Mr. Johnson, what do you think

23     about that, sir?

24                    MR. JOHNSON:  Well, one of our concerns

25     here, Your Honor, is -- and I'm going to go back to the

1   discovery materials.  I appreciate the government, the

2   discussion that I had.  And they have reviewed my second

3   Rule 16 discovery request that itemized what they have

4   given us.  We had not had any itemization from the

5   government on what they had given us.  They just gave us

6   a bunch of electronic materials.

7            And so they have agreed to give me the

8   additional items that I've itemized in my second

9   discovery request; hence, these 2 terabytes of materials.

10  But that's not all of it.

11           One of the things that I specifically

12  asked for was, look, the electronic materials you have

13  given us are not searchable.  And surely the government

14  has it in some way that is searchable, to be able to go

15  through it and look at this volume of information.

16           And it's been represented to me, and I

17  have no reason to disbelieve that this representation is

18  accurate, that they do not have it in any sort of format

19  that is searchable, other than how they produced it to

20  us.  So that dealt with that issue.

21           But the issue that is still outstanding,

22  and it's a substantial issue, is in a case like this,

23  expert disclosures.

24           And if I understand the government's

25  counsel correctly, they are pretty much done with this

1  case other than just doing some additional witness

2  interviews.

3             And so if the rub of this case is really

4  going to turn on expert testimony concerning the medical

5  decision-making that occurred here, and then also the

6  medical supervision that may or may not have occurred

7  here, that's really kind of two different areas of

8  expertise, then why can't the government go ahead and

9  give us expert disclosures.  And let's go ahead and get

10  started on the issues that really matter here in this

11  case.

12              I'm not saying that all the lion of

13  information doesn't matter, because it does.  But

14  presumably, any expert witness that the government is

15  going to have, or expert witnesses, have reviewed all of

16  this information, and are able to provide an opinion

17  about the medical decision-making here.

18              And so we have got to have our own

19  witnesses -- first, to identify what type of experts

20  we're going to have, we need to know what kind of experts

21  they have.  And then we're going to have to do the exact

22  same thing.

23              And so respectfully -- I addressed this at

24  the last time we were here.  I appreciate them giving us

25  the additional 2 terabytes, but we also need the expert

1    disclosures.  And I think that's critically important to
2    be able to try this case.
3                    THE COURT:  When is that going to be done,
4    ma'am?
5                    MS. PAYERLE:  Your Honor, I think the
6    position is exactly the same, which is it really depends
7    heavily on the trial date.  And that is because expert
8    witnesses —— again, we have scheduling issues.  We have
9    to make sure that they're available to testify.
10                   But in an ordinary case, at least the ones
11   that I've done that are like this, sometimes expert
12   disclosures are even 30 days before trial is fairly
13   reasonable.  We're willing to back up to 90 days before
14   trial.
15                   Key it off the trial date.  And we will
16   just say, look, you know, we'll ensure by 90 days before
17   trial, whenever that trial date is set, that we have
18   somebody who is able to testify and available in their
19   schedules.  And they are experts or doctors, so they have
20   clinic schedules and things like that.
21                   I've had expert witnesses that, you know,
22   because of lengthy delays in trials, simply became
23   unavailable due to illness or other things.
24                   So for us to identify an expert
25   conclusively and to ensure that the report is consistent

1   with the testimony, really needs to be done once we have

2   a trial date in the record and we're able to ensure that

3   the person whose report we produce is the person who will

4   be on the stand testifying.

5                And so, you know, we would just ask for a

6   date that's 90 days prior to the trial date.  And since

7   the parties are prepared to set a trial date, we're then

8   also prepared to set that expert witness date.

9                MR. JOHNSON:  I've had cases where there

10  has been a later expert disclosure.  I've had cases

11  where --

12               THE COURT:  Been earlier.

13               MR. JOHNSON:  -- it's been a lot earlier.

14               And I will note, and the Court knows this,

15  but I want to say it for the record, Rule 16 does not set

16  out a different deadline for expert disclosures.  Rule 16

17  delineates things that have to be provided upon request,

18  because it is presumed that once the government obtains

19  an indictment, it has got its information together for

20  the case.

21               And so my concern is, is that if we have a

22  late expert disclosure in a case like this that's 30

23  days, 60 days, even 90 days before the trial date, we're

24  running the real risk of blowing up whatever trial date

25  that we set.

1          MS. PAYERLE:  If I may, Your Honor,

2     respond.

3          THE COURT:  Yes.

4          MS. PAYERLE:  One of the things -- again,

5     this goes back to the issue of simplicity.  I don't think

6     there is any secret about what the expert testimony looks

7     like in this case, because there are really only a few

8     discreet issues the jury will find --

9          THE COURT:  It would be nice for defense

10    counsel to have that.  Even though it may not be a

11    surprise to him, it would be well that he has it.

12         MS. PAYERLE:  Yes, Your Honor.  But what

13    I'm actually discussing is that because, because the

14    issue is pretty discreet, that is whether the

15    prescriptions are in the course of professional conduct

16    and not for a legitimate medical purpose, in this

17    particular case, because of these expert -- it really is

18    more about making sure we have somebody who can testify

19    on a specific date and making sure that person has an

20    opportunity to do a report.

21         Defense has the same patient records that

22    our expert has and knows where this is going.

23         And I understand the Court's urgency to

24    get them that.  But I do think from our prospective, just

25    for a scheduling pragmatic purpose, it just makes sense

1    to key it off the trial date.

2              Mr. Johnson:  Judge, can I add one caveat

3    to that?

4              THE COURT:  Sure.

5              MR. JOHNSON:  I'm not sure that we have

6    all of the records here.  The bulk of the materials that

7    were taken out of Preventagenix have not been provided to

8    us in discovery yet.  All of the electronic materials

9    that were seized out of that clinic have not been

10   provided to us yet.  That's part of the 2 terabytes of

11   material that are getting ready to be provided to us.

12             I appreciate counsel for the government's

13   representation that a lot of that may be an operating

14   system of the computer.  In my experience, that's not

15   necessarily the case.  Operating system of the computer

16   actually is a very small portion of the ultimate hard

17   drive of the computer.

18             And there may not be information on the

19   computers for the clinic that relates to patient care.

20   I'm going to be surprised if there is not.

21             And so I'm -- I'll go back to what I said

22   before.  For us to have expert disclosures, I would

23   presume that the government's experts have reviewed the

24   medical information in this case.  And the way I see

25   it -- and, no, I don't think it's a surprise, the type of

1    expert testimony the government is going to provide.

2               But just because it's not a surprise as to

3    the type of the expert testimony, both with respect to

4    were prescriptions provided in the course of medical

5    practice and for a legitimate medical purpose, but then

6    also was adequate medical supervision conducted by the

7    supervising physicians who were charged here.

8               At the same time we need to know exactly

9    what that opinion is and who is going to be offering that

10   opinion.

11              THE COURT:  Well, it strikes me that --

12   well, what were you saying the last two -- what time

13   frame are you talking about a potential trial in

14   September?

15              MR. JOHNSON:  Last two weeks of September,

16   Your Honor.

17              THE COURT:  Okay.  I'm trying to find the

18   e-mail.  Something came up the last couple of days

19   surprisingly that might have a potential problem that I

20   was -- how long do you all anticipate this case is going

21   to take to try?

22              MS. PAYERLE:  Your Honor, the

23   government -- I can't image it will last longer than two

24   weeks.  And that's only because there is three defense

25   counsel.  I have tried doctor cases.  I've never had one

19

1    last longer than about a week and a day.  I'm pretty

2    efficient on examination.  But I don't know the -- I

3    think a lot of it, in my experience, depends on the

4    cross-examination efficiency.

5                I would also note to Your Honor that I

6    don't really think we need until September.  But my

7    understanding is just when counsel got together and

8    conferred, because there were so many of us, I think that

9    may have wound up being the date that we all had

10   available.  But, of course, the government can be ready

11   sooner.

12               THE COURT:  Well, the concern I have, I

13   guess, is making sure that defense counsel receives the

14   information that it claims it's entitled to.  Obviously,

15   until they get these terabytes of information that you

16   say is going to be forthcoming in the next hopefully week

17   or so, that hopefully gives them a little bit of a better

18   idea where they are.

19               Based on Mr. Johnson's statements it

20   sounds like he's concerned about whether or not it's

21   going to give him all of what he thinks he's entitled to.

22   And, obviously, I'm can't prejudge that.  Until he sees

23   it and tells me one way or the other, as well as

24   co-counsel, whether or not that is, in fact, what he

25   needs or what he's expecting to receive.  So it's -- I'm

1    shooting in the dark here right now until he tells me

2    what it is that he's received.

3                    I tell you what, let's go ahead and hold

4    the last two weeks of September.  When will that be?

5    There is like a half of a week the very last week of

6    September.  Are you talking about including that, which

7    goes into the first part of October?  Is that what you're

8    talking about?

9                    MS. PAYERLE:  I believe the date was

10   September 14th.  Is that right?

11                   MR. JOHNSON:  Yes.  We talked about the

12   week of September 14 and the week of September 21st.

13                   And, Judge, I will say in my experience,

14   particularly in cases like this, where thorough

15   cross-examination is necessary, you know, the government

16   anticipates a two week trial for the government's

17   proof -- this is a case where I anticipate defense proof.

18                   THE COURT:  I don't think she is

19   talking -- I think she's talking about the whole case.

20                   MS. PAYERLE:  That's right, Your Honor.

21   Yeah.  And in the cases where I have tried, including

22   doctors, and even though -- the government is usually

23   through with its case by about Thursday.  But again, it

24   depends on cross-examination.  So maybe the government is

25   done in a week.  Again, though, depending heavily on

1    cross-examination style.

2                   THE COURT:  Well, that will give you --

3    you think you can get your case presented in a week?

4                   MR. JOHNSON:  I'm shooting in the dark

5    too, Judge.

6                   THE COURT:  Okay.  Well, let's go ahead

7    and hold that time period.  You said the 14th and then

8    the 21st?

9                   THE CLERK:  Yes, sir.

10                  THE COURT:  I think I'm here both of those

11   weeks as far as I know right now.

12                  THE CLERK:  You only have civil trials.

13                  THE COURT:  Well, this overrides those.

14                  So we will go ahead and set that.

15                  Now with regard to the expert information,

16   now that you know what those dates are, ma'am, I think we

17   could push that disclosure back further than 90 days.  I

18   think -- here we are in November.  We still have got

19   quite a bit of time to get that to defense counsel.

20                  I would think something in -- talking

21   about this summer is what you're talking about.  I would

22   think early spring.  I can't image that you couldn't get

23   that information to them early in that time period.

24   Maybe in April.  Is that a problem?

25                  MS. PAYERLE:  Okay.  Your Honor, if I

22

1    could push -- honestly --

2                    THE COURT:  I mean, you can now -- you can

3    now tell your people, the people that you plan to

4    present, these are the dates.  We want you to hold these

5    dates.

6                    MS. PAYERLE:  Yes.

7                    THE COURT:  And unless something happens

8    to them, which hopefully it doesn't, but, I mean, that

9    gives them -- put it on their calendar and they're ready

10   to go.

11                   Now they may tell you, I can't be there

12   then.  So if that happens, you need to tell me and tell

13   the counsel, and maybe we can try to work around that

14   somewhat.

15                   MS. PAYERLE:  Why don't we -- since we

16   have the trial date September 14th, why don't we say

17   April 14th.

18                   THE COURT:  How about that, Mr. Johnson?

19                   MR. JOHNSON:  That would be acceptable to

20   us, Your Honor.

21                   THE COURT:  Is that okay with you all too?

22                   MR. MCNEIL:  That is, Your Honor.

23                   THE COURT:  All right.  So April 14th will

24   be the expert disclosures from the government.

25                   And do you want to set a time period for

UNREDACTED TRANSCRIPT

1    when you're going to be disclosing your expert

2    information?

3                    MR. JOHNSON:  If you could give us —— just

4    looking at the calendar —— if we get expert disclosures

5    on April 14th, if we could have —— if we had 90 days.

6    Then we know their experts —— and we're not going to hold

7    off on waiting to sort of work on expert issues until

8    then.  But we —— that puts us in July.

9                    THE COURT:  Is that all right with the

10   government?

11                   MS. PAYERLE:  Let me see if I can count

12   forward.  And then that would give everybody time ——

13                   THE COURT:  That would be April to May,

14   May to June, June to July, July 14th.

15                   MS. PAYERLE:  I think that's okay.

16                   THE COURT:  So July 14 will be defense

17   counsel's expert disclosures.

18                   Now I still haven't gotten complete

19   information from the government about —— like I said,

20   your colleague —— I forgot your colleagues' name.

21                   MS. PAYERLE:  Mr. Knutson, Your Honor.

22                   THE COURT:  Mr. Knutson was telling me

23   that they were continuing to provide and get, obtain

24   statements from witnesses.  And I guess —— I think like

25   Mr. Johnson, well, the indictment —— maybe they've got

24

1   them, but maybe they don't.

2            When is that -- I wanted a date when that

3   is going to be completed, so that the defense would then

4   say, okay, now we've got everything that is going to be

5   presented here.

6            MS. PAYERLE:  Yes, Your Honor.  And I

7   guess --

8            THE COURT:  And I'm not saying we won't

9   see something that might pop up.  I mean, I'm not trying

10  to hold you completely.  But I think there needs to be

11  some kind of time period there so that everybody is on

12  the same page here.

13           MS. PAYERLE:  Well, I think -- that's the

14  thing.  I want to suggest April 14th as well, with this

15  caveat.  Which is, in the course of trial preparation

16  exiting witnesses very often say things that are -- you

17  know, when they're meeting face to face, when it's

18  intense, when we're talking about testimony, when we're

19  drilling down on statements, I've never had a case where

20  a witness doesn't say something that we need to go

21  corroborate, that we need to handle in the course of

22  trial prep.  And we are always extremely prompt about

23  turning those things over.

24           But I would say that any new avenues of

25  investigation, any kind of active looking for things

1    that -- just to make sure that -- I just don't want to

2    run afoul of this deadline.

3                    THE COURT:  April 14th.  Is that all

4    right?

5                    MS. PAYERLE:  April 14th.

6                    THE COURT:  All right.  April 14th.

7                    MR. JOHNSON:  Thank you, Your Honor.

8                    MS. PAYERLE:  And is the Court okay with

9    the sort of ordinary trial prep?

10                   THE COURT:  Yes.

11                   MS. PAYERLE:  Okay.  Thank you, sir.

12   Appreciate that.

13                   THE COURT:  I understand.

14                   All right.  What else we need to talk

15   about today?

16                   MR. JOHNSON:  I think something that we're

17   trying to do, and we're working in good faith to do, is

18   to set some other pre-trial schedule issues.

19                   I think we're going to need a, maybe some

20   deadlines on motions, and then also deadlines on Daubert

21   motions, and setting pre-trial hearings.  I anticipate

22   they'll be, particularly once we have the search warrant

23   and search warrant affidavit, there could be suppression

24   issues or evidence exclusion issues that we may need to

25   take a look at.  I don't know for sure, because I don't

1    have the stuff yet.

2              But we're working on those, Your Honor.

3    I'm just thinking out loud about the best way to

4    coordinate with the Court on getting those scheduled.

5              If we're working together to try to get

6    those scheduled, rather than do so and take up the Courts

7    time, do you want us to -- how do you want us to do that?

8              THE COURT:  I think it would be

9    appropriate for you all to sit down, and Mr. McNeil and

10   Mr.  Ferguson, to sit down and just come up with a

11   schedule -- we now kind of have a parameter of where we

12   are in terms of the trial -- and submit it to the Court.

13             You know, if it presents a problem to me,

14   I can let you know.  Otherwise, we can put it down as an

15   order.

16             MR. JOHNSON:  Thank you, Your Honor.

17             THE COURT:  Is that satisfactory?

18             MS. PAYERLE:  Yes, Your Honor.

19             THE COURT:  I don't see why you can't --

20   seems like you're working all right, I don't see why you

21   couldn't do that.

22             MR. JOHNSON:  We will do that.  If we need

23   to pick -- I don't know how granular you want us to get

24   on trying to pick hearing dates and things like that.

25   But do you want us just to confer with your chambers on

1    dates?

2              THE COURT:  Yes, you can, and with Ms.

3    Cheairs.  And she has got my calendar.  And if I'm

4    available, then I'm happy to accommodate you in that

5    regard.

6              MR. JOHNSON:  Thank you, Your Honor.  And

7    we're working in good faith on that.  And I think very

8    shortly we'll have a proposed order for the Court.

9              THE COURT:  Okay.

10             MR. JOHNSON:  Thank you.

11             MS. PAYERLE:  Your Honor, if I may just

12   ask.  And I just think both counsel could use some

13   clarification on the local rule about discovery letters

14   and so forth.

15             It's our understanding that we should

16   confer before raising any discovery issues --

17             THE COURT:  Yes, ma'am.

18             MS. PAYERLE:  And I just -- because I know

19   Mr. Johnson was in good faith trying to follow the local

20   rule.  But we were just a little taken off guard and...

21             And so as we proceeded in what will be a

22   discovery heavy case, I just want to be sure that we all,

23   that our requests to them and their requests to us don't

24   necessarily need to be raised to the Court, unless there

25   is disagreement.

1          THE COURT:  No.  That's correct.

2          MS. PAYERLE:  Okay.  Thank you, sir.

3          MR. JOHNSON:  Judge, I will -- let me just

4   elaborate briefly.

5          We filed our Rule 16 discovery request in

6   letter form per the local rules.

7          THE COURT:  Yes, sir.

8          MR. JOHNSON:  The government filed its

9   Rule 16, multiple Rule 16 discovery responses in letter

10  format on ECF with the Court, per the local rules.  I

11  filed a supplemental Rule 16 discovery request, not as a

12  motion to compel, but on ECF, per the local rules.

13         And so that -- if the Court -- just as a

14  point of clarification, if I have another, for example,

15  supplemental Rule 16 discovery request, does the Court

16  not want that filed on ECF or -- I think they are taking

17  some issue with the fact that I filed a supplemental Rule

18  16 discovery request, not a motion to compel, but a

19  supplemental discovery request on ECF.  And so I think

20  that's the point of contention.

21         THE COURT:  If you want to file it, I

22  think counsel -- different counsel do different, handle

23  it differently.  So I don't have a problem with that,

24  unless there is some issue that counsel does.

25         MR. JOHNSON:  Thank you, Your Honor.

 1               THE COURT:  Is there a problem from the
 2  government?
 3               MS. PAYERLE:  No, Your Honor.  I just
 4  wanted some clarity --
 5               THE COURT:  That's fine.  And since you're
 6  doing it, let's just keep it consistent.
 7               MS. PAYERLE:  Okay.  Thank you, Your
 8  Honor.
 9               MR. JOHNSON:  Thank you, Your Honor.
10               THE COURT:  If it gets down to the point
11  where you all are, can't agree -- you agree to disagree,
12  then you can file a motion to compel and I'll take it up.
13               MR. JOHNSON:  Thank you, Your Honor.
14               MS. PAYERLE:  Thank you, Your Honor.
15               THE COURT:  Anything else from -- Mr.
16  McNeil, anything else from your side, sir?
17               MR. MCNEIL:  Not from us, Judge.
18               THE COURT:  Okay.  All right.
19               Do we want to set another, maybe another
20  status conference?  I think it might be well just to kind
21  of keep everybody on track here.  Something after the
22  holidays, maybe in January or February, something like
23  that.
24               MR. JOHNSON:  Your Honor, my suggestion
25  is -- you know, if we are going to get the additional

1    materials by the end of this month, I think January would

2    be an appropriate time for a status hearing.  I'll be

3    able to let the Court know at that time what we've

4    gotten.  The last week of January?

5                    THE COURT:  Yeah.  It may end up being the

6    first part of February, if you don't mind.  I've got a

7    fairly heavy January right now.

8                    What do we have, Ms. Cheairs?

9                    THE CLERK:  Okay.  We have Wednesday,

10   February 5th, 11:00 o'clock.

11                   MR. SANAN:  Judge, this is Mr. Sanan.

12                   I have a trial that starts the first week

13   of February that is going to go for two weeks.  So if we

14   can get into that latest part of the second or third week

15   of February so I can attend with my client.

16                   THE CLERK:  Yes, sir.  Wednesday,

17   February 19th, 10:00 o'clock.

18                   MR. SANAN:  That works, Your Honor.

19                   MS. PAYERLE:  Your Honor, that would work

20   for the government, except that I might personally be

21   covering another trial.  But if Your Honor is okay with

22   Mr. Pennebaker or Mr. Knutson --

23                   THE COURT:  That's fine.

24                   MS. PAYERLE:  Thank you, Your Honor.

25                   MR. SANAN:  Your Honor, would it be a

1    problem to move it to the 20th, I apologize, of February?

2                    THE COURT:  What day of the week?

3                    MR. SANAN:  Thursday.

4                    THE COURT:  Is that satisfactory?

5                    MR. JOHNSON:  That's fine.  I don't have

6    Mr. Massey's calendar in front of me.  But it's a report

7    date, and either one of us can handle it.

8                    THE COURT:  Okay.  The 20th at what time?

9                    THE CLERK:  10:00 o'clock.

10                   THE COURT:  All right.  Time will be

11   excluded then.

12                   Anything further from any of the parties?

13                   MR. JOHNSON:  Not from the --

14                   MS. PAYERLE:  Nothing from the government,

15   Your Honor.

16                   THE COURT:  All right.  Thank you all.

17   You will be excused.

18                   MR. JOHNSON:  Thank you, Your Honor.

19                   MR. MCNEIL:  Thank you, Judge.

20                   THE COURT:  Thank you.

21                   (End of Proceedings.)

22

23

24

25

32

1              I, Kristi Heasley, do hereby certify that the

2      foregoing 31 pages are, to the best of my knowledge,

3      skill and ability, a true and accurate unredacted

4      transcript from my stenotype notes in the matter of:

5      UNITED STATES OF AMERICA

6                                          )

       VS                                  )NO.1:19-cr-10040

7                                          )JACKSON, TENNESSEE
                                           )
8      ALEXANDER ALPEROVICH,               )
       JEFFREY W. YOUNG, JR., and
9      ANDREW RUDIN

10

11

12              Dated this 12th day of January, 2020.

13

14

15     /s/  Kristi Heasley

16     ----------------------------------
       Kristi Heasley, RPR
17     Official Court Reporter
       United States District Court
18     Western District of Tennessee
       Eastern Division
19

20

21

22

23

24

25

                        UNREDACTED TRANSCRIPT