IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 1:19-cr-10040 JDB |
| ) | |
| JEFFREY W. YOUNG, JR., ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Defendant, Jeffrey W. Young, Jr., seeks release from pretrial detention due to his medical condition and the current COVID-19 pandemic. (Docket Entry ("D.E.") 152.) In recent months, the world has drastically changed due to COVID-19, a coronavirus originating in Wuhan, People's Republic of China.[1] According to the World Health Organization, as of 10:00 Central European Time on March 24, 2020, there were 372,757 confirmed cases of COVID-19 world-wide and 42,164 confirmed cases within the United States.[2] On March 13, 2020, the President of the United States of America, Donald J. Trump, issued a Proclamation declaring a National Emergency to assist in combatting the spread of the disease.[3] Hitting closer to home, due to issues with COVID-19, the United States District Court for the Western District of Tennessee recently closed the

---

[1] *See* World Health Org., Novel Coronavirus (2019-nCOV) Situation Report-1 (Jan. 21, 2020), https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200121-sitrep-1-2019-ncov.pdf?sfvrsn=20a99c10_4.

[2] *See* World Health Org., Coronavirus disease 2019 (COVID-19) Situation Report-64 (Mar. 24, 2020), https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200324-sitrep-64-covid-19.pdf?sfvrsn=703b2c40_2.

[3] Proclamation No. 9994, 85 F.R. 15337 (March 13, 2020 [published March 18, 2020]).

Federal Courthouse located in Jackson, Tennessee. (Admin. Order No. 2020-14.)

In light of these circumstances, Mr. Young's request to be released was referred to the undersigned Magistrate Judge "to determine [in light of Mr. Young's immunosuppressive drug therapy and the current COVD-19 pandemic] if there are any conditions or combination of conditions found in 18 U.S.C. § 3142(c) which would reasonably assure the safety of any other person and the community by his release." (D.E. 154.) For the reasons set forth below, despite growing national concerns regarding the potential spread of COVID-19 within prisons, jails, and correctional facilities, Mr. Young's continued detention is warranted.

*Procedural Background*

On April 15, 2019, Mr. Young was indicted on fifteen (15) counts of controlled substance related offenses. (D.E. 4.) The indictment alleged that Mr. Young, a licensed nurse practitioner, prescribed various Schedule II and IV controlled substances in order to obtain money, notoriety, and sexual favors. (*Id.*) After conducting a detention hearing, the undersigned Magistrate Judge released Mr. Young on an unsecured bond with other conditions. (D.E. 28.)

The Government subsequently moved to revoke Mr. Young's release. (D.E. 58.) After conducting a two-day hearing on the Government's motion, United States District Judge J. Daniel Breen found that there were no conditions or combination of conditions that would assure the safety of the community and revoked Mr. Young's release. (D.E. 81; D.E. 120, PageID 2301-305.) In reaching this decision Judge Breen pointed to, among other factors, Mr. Young's threatening activity through Facebook and text messages, his pending charges, and a potential instance of sexual misconduct. (D.E. 120, PageID 2301-305.)

Mr. Young subsequently appealed Judge Breen's decision. (D.E. 93.) On November 7, 2019, the Sixth Circuit Court of Appeals affirmed Judge Breen's ruling that the Government

carried its burden of persuasion to establish that Mr. Young presented a risk of danger to the community if released. (D.E. 131.) In affirming Judge Breen's decision, the Court of Appeals, "[agreed] with the district court and [found] no special features of [Mr.] Young's case that take it outside the congressional paradigm."[4] *(Id.* (internal punctuation omitted).)

On March 12, 2020, Mr. Young filed his pending Motion for Immediate Release. (D.E. 152.) A telephonic hearing on Mr. Young's motion was held on March 25, 2020. (D.E. 157). During the hearing, counsel for Mr. Young reiterated the reasons raised in his motion as grounds for his relief. Specifically, Mr. Young contends that his medical conditions, including his kidney transplant and use of immunosuppressive drug therapy, place him at high risk for COVID-19. (D.E. 152.) Mr. Young asserts that because he is detained, he cannot socially distance himself or isolate himself from others and is forced to interact with guards and hundreds of inmates on a daily basis. Mr. Young also contends that medical isolation at West Tennessee Detention Facility ("WTDF") will not protect him from the risk of COVID-19 because he would be in the same area where those with COVID-19 would be taken for treatment. Mr. Young has provided affidavits from various medical professionals detailing the risk of COVID-19 for prison and/or jail populations. (D.E. 156.) Finally, Mr. Young claims that his continued detention would amount to a death sentence.

The United States opposes Mr. Young's release. The United States contends that there have been no confirmed COVID-19 cases in WTDF. Additionally, as set forth in the United States' response in opposition to Mr. Young's motion, WTDF is taking affirmative steps to prevent or mitigate the risk that COVID-19 poses to the facility and its detainee population. (D.E. 153.)

---

[4] The Sixth Circuit Court of Appeals was referencing the congressional paradigm that was described in *United States v. Stone*, 608 F.3d 939, 946-46 (6th Cir. 2010).

3

Finally, the United States argues that Mr. Young's fear of the COVID-19 pandemic does not negate the danger that his release would pose to the community.

*COVID-19 & Confinement*

COVID-19 is a serious disease, particularly for high risk individuals. The Center for Disease Control ("CDC") has identified "older adults"[5] and persons with underlying medical conditions such as heart disease, diabetes, lung disease, and/or who are immunocompromised as being at higher risk of getting very sick from COVID-19.[6] Additionally, millions of United States citizens are currently under "shelter in place" orders.[7] Moreover, President Trump has issued guidelines that people should avoid gatherings of over ten (10) people.[8] As noted by the United States District Court for the District of Nevada, the COVID-19 pandemic could become especially problematic due to the close quarters, flow of people, and general population in our nation's prisons, jails, and correctional facilities. *United States v. Barkman,* No. 3:19-cr-0052-RCJ-WGC, 2020 U.S. Dist. LEXIS 45628, *1-4 (D. Nev. Mar. 17, 2020) (suspending intermittent confinement as a condition of probation for 30 days in light of the potential spread of COVID-19 in jails and prison in general, the specific precautionary measures of the facility at issue in its case, and the

---

[5] Persons over the age of 65.

[6] *See* Center for Disease Control and Prevention, People who are at a higher risk for severe illness, https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html (last visited Mar. 25, 2020, 1:42 p.m.)

[7] *See, e.g.,* Governor's Exec. Order No. N-33-20, *available at* https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf (last visited Mar. 20, 2020, 2:12 p.m.).

[8] *See* White House, Remarks by President Trump, Vice President Pence, and Members of the Coronavirus Task Force in Press Briefing (Mar. 17, 2020), *available at* https://www.whitehouse.gov/briefings-statements/remarks-president-trump-vice-president-pence-members-coronavirus-task-force-press-briefing-4/ (last visited Mar. 20, 2020, 2:26 p.m.)

absence of an objection from the government).

While the impact of COVID-19 on all Americans is growing and changing on a daily basis, multiple federal courts have addressed the issue of detaining defendants in light of COVID-19. Some courts have released defendants from detention, in part, due to COVID-19 concerns. *See, e.g., United States v. Stephens,* No. 15-cr-95 (AJN), 2020 U.S. Dist. LEXIS 47846, *1-11 (S.D.N.Y. Mar. 18, 2020); *United States v. Fellela,* No. 3:19-cr-79 (JAM), 2020 U.S. Dist. LEXIS 49198 (D.Conn. Mar. 20, 2020); *United States v. Brandon,* No. 19-Cr-644-1(GBD), 2020 U.S. Dist. LEXIS 50794 (S.D.N.Y. Mar. 24, 2020). Other courts have declined to release defendants due to COVID-19. *See, e.g.*, *United States v. Martin*, No. PWG-19-140-13, 2020 U.S. Dist. LEXIS 46046, at *3-14 (D. Md. Mar. 17, 2020); *United States v. Hamilton*, No. 19-CR-54-01 (NGG), 2020 U.S. Dist. LEXIS 49095, *1-6 (D. Md. Mar. 20, 2020); *United States v. Williams*, Criminal No. PWG-13-544, 2020 U.S. Dist. LEXIS 50185, *1-8 (D. Md. Mar. 23, 2020); *United States v. Jefferson*, Criminal No. CCB-19-487, 2020 U.S. Dist. LEXIS 49819, *1-3 (D. Md. Mar. 23, 2020).

Two of the recent federal court decisions regarding the continued pretrial detention of defendants are particularly instructive. In *Stephens,* the United States District Court for the Southern District of New York ordered the release of a previously detained defendant, in part, due to the COVID-19 outbreak. 2020 U.S. Dist. LEXIS 47846 at *1-11. On the other hand, in *Martin,* the United States District Court for the District of Maryland recently denied an appeal of a detention order based, in part, on the COVID-19 pandemic. 2020 U.S. Dist. LEXIS 46046, at *3-14.

In *Stephens,* the presiding district judge noted that the decision to initially hold the defendant was a "close one" due to his prior criminal conduct. *Id*. at *5-6. Therefore, the court found that in light of new information concerning the strength (or, rather, weakness) of the

Government's case and the unprecedented circumstances surrounding the COVID-19 pandemic, the defendant had established by clear and convincing evidence that he did not pose a danger to the community. *Id*. at *6. The court also held that pursuant to 18 U.S.C. § 3142(i), compelling reasons justified the defendant's release due to his inability to effectively prepare his defense, because of difficulties the defendant's counsel encountered in communicating with the defendant in preparation for a March 25, 2020, hearing. *Id*. at *8-11. The

In *Martin*, the magistrate judge previously found that there was a presumption that the defendant should be detained pursuant to 18 U.S.C. § 3142(e)(3)(A), and that the defendant failed to overcome that presumption in light of the nature of his charges, the weight of the evidence against him, and his criminal history. 2020 U.S. Dist. LEXIS 46046 at *3.  In his appeal to the presiding district judge, the defendant argued that the Federal and State declarations of emergency concerning COVID-19 coupled with his diabetes, high blood pressure, asthma, and pain placed him at higher risk for COVID-19. *Id.* at *4-5.

The court considered the defendant's argument and noted that the unprecedented magnitude of COVID-19 could "indeed constitute new information having a material bearing on whether there are conditions of release that will reasonably assure the appearance of detained defendants and secure the safety of the community." *Id*. at *8.  However, the court also recognized that, "resolving an appeal of an order of detention must in the first instance be an individualized assessment of the factors identified by the Bail Reform Act, 18 U.S.C. § 3142(g)." *Id*. at *9-10. Therefore, despite the unprecedented nature of the COVID-19 pandemic and the defendant's medical conditions, the court found that the defendant failed to rebut the presumption of the detention. *Id*. at *11-4.  The court made this finding based upon the nature of the charges against the defendant, the government's evidence, the defendant's criminal history, and the precautionary

measures being taken against COVID-19 by the detention facility. *Id*. at *13-4.

*Ruling*

The Court is sympathetic to Mr. Young's personal health concerns due to his underlying medical conditions. His concerns are understandable and reasonable. The seriousness of the ongoing COVID-19 pandemic and its potential impact on inmates and detainees throughout the United States, and in particular within the Western District of Tennessee, is recognized by this Court. However, in this case unlike in *Stephens*, the Government has opposed the defendant's request to be released and the Government's case remains strong. Furthermore, like in *Martin*, Mr. Young is facing a presumption of detention. Finally, while Congress has passed legislation in response to the COVID-19 pandemic, Congress has not, as of yet, specifically authorized the judiciary to release "high risk" detainees or otherwise confront this potential issue. Therefore, I am constrained by the Bail Reform Act, 18 U.S.C. § 3141, *et seq.,* and my analysis starts and ends with the statute.

Here, pursuant to 18 U.S.C. § 3142(e)(3)(A) and as Judge Breen and the Sixth Circuit Court of Appeals have already recognized, there is a rebuttable presumption that there is no condition or combination of conditions that will reasonably assure the safety of the community from Mr. Young. (D.E. 120, PageID 2301-305; D.E. 131.) Additionally, while Mr. Young may have rebutted the presumption, the presumption must still be considered in determining whether the Government has carried its burden of persuasion. Because both Judge Breen and Sixth Circuit Court of Appeals have already found that, prior to the COVID-19 pandemic, the Government did meet that burden, I will limit my analysis to whether the current COVID-19 pandemic, as applied to Mr. Young, takes his case outside of the congressional paradigm.

Mr. Young's underlying medical conditions in conjunction with the spread of COVID-19 might reduce the likelihood that he would leave his father's home if released. However, Mr. Young has not demonstrated how his medical conditions and the spread of COVID-19 alleviate the specific concerns noted by Judge Breen with respect to his release.  For example, his home detention would not preclude him from potentially engaging in threatening behavior through Facebook, text messages, or other electronic mediums.

Additionally, the Government has described the various precautions WTDF has taken to prevent the spread of COVID-19 in the facility.  These precautions include, but are not limited to: cancelling social and volunteer visits at the facility; requesting attorneys to use non-contact visitation rooms; unless needed for security reasons, halting detainee transfers within the facility; checking detainee temperatures for in-coming and out-going transfers; disinfecting hard surfaces every two hours; wiping down restraints before and after use; and signage to encourage proper hygiene. (D.E. 153.) Moreover, there has been no proof that COVID-19 has been confirmed in the facility.

Therefore, despite Mr. Young's medical condition and the spread of COVID-19, I find that none of the conditions or combinations of the conditions set forth in 18 U.S.C. § 3142(c)(1)(B) will reasonably assure the safety of any other person and the community from Mr. Young. Accordingly, Defendant's Motion for Immediate Release (D.E. 152) is DENIED, and he will continue to be detained pending trial.

So ordered this the 25th day of March, 2020.

                                         s/Jon A. York_____
                                         United States Magistrate Judge

**IF DESIRED, AN APPEAL OF THIS ORDER TO THE PRESIDING DISTRICT COURT JUDGE MUST BE FILED WITHIN FOURTEEN (14) DAYS OF THE SERVICE OF A COPY OF THIS ORDER.** *SEE* **LOCAL RULE 72(g). FAILURE TO APPEAL WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**