

**U.S. Department of Justice**

Criminal Division

---

April 14, 2020

| | |
|---|---|
| **Claiborne H. Ferguson, Esquire**<br>THE CLAIBORNE FERGUSON<br>LAWFIRM, P.A.<br>294 Washington Avenue<br>Memphis, TN 38103<br>(901) 529-6400<br>claiborne@midsouthcriminaldefense.com<br>*Attorney for Jeffrey Young, Jr.* | **Stephen Ross Johnson**<br>RITCHIE, DILLARD, DAVIES &<br>JOHNSON, P.C.<br>606 West Main Street<br>Suite 300<br>Knoxville, TN 37902<br>(865) 637-0661<br>johnson@rddjlaw.com<br>*Attorney for Alexander Alperovich* |
| **Nishay Sanan**<br>NISHAY K. SANAN, ESQ.<br>53 W. Jackson<br>Suite 1424<br>Chicago, IL 60604<br>(312) 692-0360<br>nsanan@aol.com<br>*Attorney for Andrew Rudin* | **William D. Massey**<br>MASSEY&MCCLUSKY<br>3074 East Street<br>Memphis, TN 38128<br>(901) 384-4004<br>masseymccluskylaw@gmail.com<br>*Attorney for Alexander Alperovich* |

      **RE:**    *United States v. Jeffrey Young, et al*
             CR. No. 19-cr-10040-DJB

Dear Counsel:

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) and Federal Rules of Evidence 702, 703, and 705, the United States hereby provides notice that it may call the following witnesses in its case-in-chief.

- **Doctor Tricia Aultman:** Dr. Aultman, whose qualifications are reflected in her attached CV, is expected to testify about what it means to write a prescription for controlled substances in the usual course of professional practice and for a legitimate medical purpose. She will discuss the key features of the practice of medicine, distinguishing the "usual course of professional practice" of medicine from unlawful drug distribution activities. Specifically, she will explain that the practice of medicine is characterized by a practitioner examining the patient, taking a full history, and using scientific and data-based tests and methods to reach a diagnosis that applies to the patient. Further, the professional practice of medicine is characterized by using an iterative process to discover and apply the correct treatment for the patient's specific medical diagnosis, which requires the provider to be aware of—and to account for—the patient's relevant medical history. She will testify that the ordinary course of the professional practice of medicine requires a practitioner to be aware of the risks and benefits of various treatment options, and to apply a range of treatment options as appropriate. She will testify about the legitimate medical purposes of the controlled substances at issue in this case, their risks and benefits, and the precautions that must be taken in order for their distribution to constitute a legitimate medical purpose within the ordinary course of the professional practice of medicine.

    Dr. Aultman conducted several chart reviews in this case, and will testify about her reviews, which are contained in the expert reports attached to this Notice.

Dr. Aultman will further testify about the role of a supervising physician when a supervisee nurse practitioner is prescribing controlled substances.

Dr. Aultman will also testify about the use of echocardiograms. Dr Aultman will explain that echocardiograms are not used as screening tests. Instead, they are ordinarily used to test for specific cardiac issues in particular risk groups. Dr. Aultman will testify about what demographics constitute groups for whom echocardiograms are most properly used. For example, she will testify that young people are not considered a high risk group for which echocardiograms are often used.

- **Doctor Carl Christensen:** Dr. Christensen, whose qualifications are reflected in his attached CV, is expected to testify about the usual course of professional practice of medicine and the legitimate medical purpose of controlled substances. He will define those terms for the jury, based on his training and experience. He will also testify that the usual course of the professional practice of medicine is characterized by a scientific and iterative effort to reach the proper diagnosis and render the proper treatment.

  In addition, Dr. Christensen has reviewed the medical files and records related to the patients named in the Indictment, and will provide the jury with his opinion about whether the Defendant Jeffrey Young acted within the usual course of professional practice for a legitimate medical purpose when he wrote the prescriptions listed in the Indictment. A report setting forth the results of his chart review is attached to this Notice.

  Dr. Christensen is also an expert in the field of addictionology, and in that capacity, will testify about physical dependence and addiction, the signs and symptoms of addiction, the importance of considering addiction as a possible diagnosis, and the consequences of failing to adequately treat addiction. Dr. Christensen's own history of addiction provides him with additional personal insight into the topic. He has been in recovery since 1999.

- **Doctor Stephen Boggs.** Dr. Boggs, whose qualifications are reflected in his attached CV, is expected to testify about the usual course of the professional practice of medicine with respect to the distribution of controlled substances in Tennessee. He will also testify about the role of nurse practitioners and their supervising physicians in Tennessee. Specifically, he is expected to testify that nurse practitioners are supposed to be "physician extenders," and act on behalf of the physician supervisor they associate with. Therefore, a physician supervisor and nurse practitioner would usually have the same or similar specialty or area of practice. In addition, it would be unusual for a physician supervisor to live in another state. But regardless of the specialty or where the supervising physician lives, or what the financial arrangement is between the supervising physician and nurse practitioner, the supervising physician is still bound by medical ethics and Tennessee rules to actively supervise and be responsible for the medicine practiced by the nurse practitioners. Dr. Boggs will specifically address a Tennessee supervising physician's role with respect to the standards for a supervised nurse practitioner prescribing controlled substances.

- **Doctor of Nursing Practice Natalie Seabolt**: Dr. Seabolt was part of the investigative team at the Tennessee Bureau of Investigation, and her testimony will be primarily factual,

including her observations about certain data collected in the investigation and her observations about medical charts she reviewed in her role as an investigator. Her testimony will relate to the clinical aspects of the fraud and drug distribution investigations into the Defendants.

Dr. Seabolt will also testify about anomalies, or red flags, that she looks for in Medicare, Medicaid, and private insurance claims data, and in CSMD (Controlled Substance Monitoring Database) data kept by the State of Tennessee. Dr. Seabolt will testify about her analysis of the data in the present case, including trends she identified in the CSMD data and trends in several metrics relating to the use of echocardiograms at Preventagenix, including the gender and age of the recipients, timing, frequency, and types of prescriptions that were issued in the course of the same treatment.

In addition, Dr. Seabolt will testify about the presence or absence of the results of echocardiogram test results in the patient records recovered from Preventagenix. The testimony in the preceding paragraphs need not be noticed under Rule 702 *et seq.*, but is summarized here out of an abundance of caution.

Dr. Seabolt may also be offered as an expert to opine on the ways in which her observations in the data and patient charts deviate from the usual course of professional practice and legitimate medical purpose for the prescription of controlled substances, specifically from the point of view of a nurse practitioner practicing in Tennessee. In addition, Dr. Seabolt may be offered as an expert on the relationship between a nurse practitioner and supervising physician in Tennessee.

Dr. Seabolt's CV describing her qualifications is attached.

- **Dr. Kumar P. Yogesh:** Dr. Yogesh was Defendant Jeffrey Young's supervising physician for a brief period. He will provide his observations of the Preventagenix clinic, his experiences as Young's supervising physician, and his reasons for resigning. He may also be asked to respond to hypothetical questions that test those views.

  This is not expert testimony under Rules 702 *et seq*. In an abundance of caution, however, the Defendants are being notified of this testimony.

  Dr. Yogesh may also provide expert testimony regarding whether the way in which Defendant Young prescribed controlled substances---and the supervision of Young by the other Defendants—was outside the usual course of professional practice and without a legitimate medical purpose.

  Dr. Yogesh's CV is forthcoming.

- **Doctor Nathan Hoeldtke:** Dr. Hoeldtke was the physician who treated H███ R███ during her pregnancy. He will testify factually about his observations of her condition and to his knowledge of the condition of her infant. In addition, he may be offered to provide testimony regarding the impact of exposure to narcotics on infants and the ordinary course

of professional practice with respect to prescribing to pregnant patients. His CV setting forth his qualifications is forthcoming. An interview report setting forth a summary of his expected testimony is attached.

- **DEA Diversion Investigator**: Additionally, the Government anticipates calling as a witness a DEA Diversion Investigator, whether that person is Mark Wray, Karen Knight, or a law enforcement witness with similar training and experience, who may testify based on training and experience about the following:

    o The Controlled Substances Act, including the various schedules of drugs, the reason each drug is scheduled, and the types of drugs included in each schedule;
    o The "red flags" that law enforcement look for in controlled substance prescribing patterns. These include, for example, dangerous drug combinations such as opioids combined with benzodiazepines, the levels of MMEs for individual patients and averages across patients, and the numbers of prescriptions and mounts of pills; and
    o The Tennessee CSMD (Controlled Substance Monitoring Database), including what data it captures, who inputs the data, and how it can be used by law enforcement and medical boards to spot "red flags" in prescribing and dispensing patterns.

In addition, this witness may testify about "Red flags" actually observed in the Defendants' prescribing patterns.

This is not expert testimony under Rules 702 *et seq*. In an abundance of caution, however, the Defendants are being notified of this testimony.

Karen Knight's CV is attached.

    Respectfully,

    */s/ Katherine Payerle*
    Katherine Payerle
    Assistant Chief
    U.S. Department of Justice
    Criminal Division, Fraud Section

    Jason Knutson
    Trial Attorney
    U.S. Department of Justice
    Criminal Division, Fraud Section

    Andrew Pennebaker
    Trial Attorney
    U.S. Department of Justice
    Criminal Division, Fraud Section