# Exhibit F

IN THE CHANCERY COURT OF TENNESSEE
FOR MADISON COUNTY

| | |
|---|---|
| JEFFREY W. YOUNG, JR., | ) |
| Plaintiff | ) |
| vs. | ) No. 71044 |
| DAWN C. YOUNG, | ) |
| Defendant | ) |

ENTERED 5|8|18

## ORDER

This cause came on to be heard on February 6, 2018 and March 16, 2018, upon the Motion to Intervene filed by the State of Tennessee, Petition for Civil Contempt filed by the State of Tennessee, Motion to Modify Child Support filed by the Defendant, Dawn C. Young [hereinafter referred to as "Wife"], and Motions for Contempt filed by Wife. Upon testimony of the parties, submission of certain exhibits, statement of counsel and the entire record, the Court took the matter under advisement and issued its ruling on April 13, 2018, as follows:

This matter is before the Chancery Court of Madison County, Tennessee. The Motions currently pending before the Court are:

1. Motion to Intervene filed by the State of Tennessee December 11, 2017.
2. Petition for Civil Contempt by the State of Tennessee filed December 11, 2017.
3. Motion to Modify Child Support filed July 20, 2017 by Wife.
4. Motion for Contempt filed July 20, 2017 by Wife.
5. Motion for Contempt filed January 24, 2018 by Wife.

Although the parties are divorced, for the purpose of this ruling, the said Jeffrey W. Young, Jr. will be referred to as Husband. Dawn C. Young will be referred to as Wife. The Order on Motion for Civil Contempt entered September 13, 2016

will be referred to as the 8-9-16 Contempt Order. The Marital Dissolution Agreement entered into by the parties filed May 19, 2015 will be referred to as the MDA. The Permanent Parenting Plan entered into by the parties and filed June 8, 2015 will be referred to as the PPP. The Final Decree of Divorce between the parties entered June 8, 2015 will be referred to as the FD. The Wife's Second Motion for Civil Contempt filed July 20, 2017 will be referred to as the 7-20-17 Civil Contempt.

## APPLICABLE LAW

### Civil Contempt:

Civil contempt occurs when a person does not comply with a court order and an action is brought by a private party to enforce rights under the order that has been violated.

i. Punishment for civil contempt is designed to coerce compliance with the court's order and is imposed at the insistence and for the benefit of the private party who has suffered a violation of rights.

ii. The proof necessary to convict is a preponderance of the evidence.

iii. Before sentencing an individual to jail for civil contempt for failure to comply with a court order, the trial court must affirmatively find that the individual has the present ability to comply.

iv. A court can imprison an individual to compel performance of a court order. This remedy is available only when the individual has the ability to comply with the order at the time of the contempt hearing.

v. In civil contempt, the imprisonment is meted out for the benefit of a party litigant. The one in contempt has the keys to the jail and can purge the contempt by complying with the court order.

See *Smith v. Smith*, Tenn. Ct. App., May 29, 2003, Judge Cottrell

### Attorney's Fees Request:

When deciding whether an award of attorney's fees is appropriate a trial court must consider the same factors that are used when considering an award of alimony. *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995).

It is well accepted the factors that are most important in evaluating whether an award of attorney's fees is appropriate are the disadvantaged spouse's need and the advantaged spouse's ability to pay. *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App.1999). The award of attorney's fees is largely in the discretion of the trial court, and an appellate court will not overrule unless there is a clear showing of abuse of that discretion. *Tomanelli v. Tomanelli*, 2008 Tenn. App. LEXIS 409 (Tenn. Ct. App. July 22, 2008).

While there have been many court cases relating to the award of attorneys fees, the most authoritative source for factors to be considered in determining the reasonableness of a fee are set forth in Tenn. Sup. Ct. R.8, RPC 1.5, which states in pertinent part as follows:

Rule 1.5 Fees.-(a) A lawyers fee and charges for expenses shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

1. The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
2. The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
3. The fee customarily charged in the locality for similar legal services;
4. The amount involved and the results obtained;
5. The time limitations imposed by the client or by the circumstances;
6. The nature and length of the professional relationship with the client;
7. The experience, reputation, and ability of the lawyer or lawyer performing the services;
8. Whether the fee is fixed or contingent;
9. Prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
10. Whether the fee agreement is in writing.

These factors are basically an updated version of the factors set forth in *Connors v. Connors*, 594 S.W. 2d, 672 (Tenn. 1980).

3

## DISCUSSION

1. **Motion of State to Intervene:** By agreement of both counsel, there was no objection to this Motion and therefore, the State of Tennessee's Motion to Intervene is granted.

2. **State of Tennessee's Motion/Petition for Civil Contempt:** The State filed its Motion December 11, 2017, seeking to recover child support for the parties' minor child. The arrears were stated to be $9,581.12 as of November 30, 2017. According to testimony and Exhibit 11, Husband owed child support at the rate of $1,325.00 per month for a total of $45,050.00 through March, 2018. Husband has paid $26,484.32 through March, 2018. Therefore, Husband is in arrears in child support in the amount of $18,566.32.

3. **Motion to Modify Child Support filed by Wife 7-20-17:** The Wife alleged that under the PPP, Husband was to maintain health insurance on the child. The proof shows that Husband agreed to same in the PPP, but has not complied and the insurance has been canceled. Wife testified that she obtained coverage for the child and pays a monthly premium of $102.00 per month for the child's coverage. Mother testified, unrebutted, that from July 1, 2017 through December 31, 2017, she paid total premiums for the child of $714.00. She further testified unrebutted that from January 1, 2018 through March 31, 2018, she has paid premiums at $105.00 per month for a total of $315.00. Therefore, Husband owes Wife for medical insurance premiums for the child the sum of $1,029.00. Judgment is rendered to the Wife against the Husband for $1,029.00, plus interest from and after April 1, 2018 at the rate of 5.5% per annum until the principal and accrued interest is paid in full. The child support shall be modified accordingly to reflect Wife is paying the premium.

4. **Motion for Contempt filed by Wife January 24, 2018:** On July 20, 2017, Wife filed a Second Motion for Civil Contempt. On July 20, 2017, Wife also filed a Motion to Modify Child Support. The matter was set for August 7, 2017, but on oral Motion of counsel for Husband, Mr. Mark Donahoe, the case was continued to October 6, 2017 to give Husband time to employ new counsel. Further, the Court Ordered Husband to deliver to Mr. Donahoe's office all complete bank statements for the business known as

4

Genexis Health from its inception to present. Said documents shall then be delivered to the office of Middlebrooks and Gray by Mr. Donahoe. On October 2, 2017, J. Colin Morris, Attorney, appeared for Husband and asked for a continuance claiming he was recently hired and needed additional preparation time. That Motion was granted by the Court on October 3rd over Wife's objections, and the Court set the matter for October 27, 2017 and again ordered Husband to deliver to Mr. Morris' office the bank statements referred to above, and further that Mr. Morris should deliver them to the office of Middlebrooks and Gray. On January 24, 2018, Wife filed a Third Motion for Civil Contempt alleging that Husband had failed and refused to comply with the orders of the Court reference the documents referred to above. That Contempt Motion came on to be heard on January 24, 2018. The parties who testified were Hillary Hollingsworth, Husband's employee who was handling the matter of furnishing the documents at issue. The Court finds based on the testimony that while some documents were furnished, none were delivered within the five day time set out in the previous Order entered October 12, 2017, that Husband pretty well relied upon Ms. Hollingsworth to make sure these things were completed, and that he failed to supervise her efforts. The Court ordered that Ms. Hollingsworth produce immediately the statements for U.S. Bank and Simmons Bank, this date, February 6, 2018, and that Mr. Morris is ordered upon receipt of them to furnish them to Ms. Middlebrooks within twenty-four hours.

5. <u>Motion for Contempt filed by Wife July 20, 2017</u>: This Motion for Contempt contains a number of issues. The Court will deal with those issues hereafter.

a. <u>Skyline Cardiovascular Institute account</u>: The parties' MDA referred to above had attached to it Exhibit A which was the property division. As part of the property division Wife was to receive the Skyline account valued at $61,000.00. Post-divorce, on April 22, 2016, Wife filed a Motion for Contempt against Husband alleging, among other things, Husband had failed to authorize the transfer of the funds in the Skyline account to her although he had agreed to do so in paragraph 8 of the MDA. Thereafter, Husband filed a Petition for Contempt on August 8, 2016, seeking damages from Wife with reference to a

5

parcel of real estate awarded to him in the divorce. The Court heard Wife's Motion for Contempt on August 9, 2016. The Court found that Husband had withdrawn the funds after the divorce without Wife's knowledge or consent, was in breach of the MDA, and awarded Wife a judgment for $61,000.00 plus interest at the rate of 5.25% per annum from the date of the MDA, May 18, 2015 until paid in full. By Order entered October 14, 2016, the Court stayed the judgment of $61,000.00 pending the hearing on Husband's Motion for Contempt. Husband's Motion for Contempt was heard on October 17, 2016 and December 13, 2016. The Order was entered thereon on January 25, 2017, denying Husband's claims and dismissing Husband's Petition for Contempt. The effect of that Order was to dissolve the Order staying the judgment which had continued to draw interest from the date of the judgment. The proof showed that Husband had withdrawn the funds awarded to Wife after the divorce and MDA was entered. (See Exhibit 5) Husband testified that he withdrew the funds to invest in his business. Wife is hereby granted a judgment against the Husband for $61,000.00, plus interest from the date of the MDA at the rate of 5.25% per annum until the principal and interest is paid in full. Because Husband withdrew said funds knowing they belonged to the Wife, Husband is in civil contempt of the FD which incorporated the MDA.

b. <u>Global Private Client Group account (Global)</u>: In the MDA, Wife was awarded funds in the Global account as shown on the property division attached thereto. The MDA was filed May 19, 2015. It was incorporated into the FD entered June 8, 2015. The property division indicated the balance in the Global account at the time of the MDA was $15,329.33. Husband testified on August 9, 2016, that the funds were still in the account in Husband's name and that Wife could receive them. Husband was ordered to transfer the funds in the account immediately to the Wife including any increase in the value thereof since the date of the FD. If requested, the Court ordered Husband to provide copies of statements since the FD to show withdrawals or deposits. Wife testified that as of March 16, 2018, Husband still had not transferred the funds to her or made them available. Husband testified that he did not receive the funds and that the Global fund had "failed." Husband produced nothing to support this statement. The Court finds Husband's testimony is not credible. Husband produced nothing other than his bare testimony to support his claim that the Global fund had failed and that he did not receive the funds. Wife

6

is granted a judgment against the Husband in the amount of $15,329.33 plus interest at the rate of 5.25% per annum from and after May 19, 2015 until the principal and interest is paid in full. Husband is further found in civil contempt for failing to abide by the FD and violating the Order entered May 19, 2016.

c. <u>HFP Capital and Markets, LLC number 5115 (HFP)</u>: Wife was awarded the HFP account in the MDA which was described as being valued at $10,000.00 in the property division attached to the MDA. On August 9, 2016, at a hearing on Wife's Motion for Contempt filed 8-22-16, Husband testified the funds in the HFP account were still in the account. Based on that testimony by Husband, the Court ordered Husband to withdraw the funds and transfer same to the Wife plus any increase in the account since the date of the divorce, same to occur immediately. Husband testified on March 16, 2018, that the HFP fund had "failed" and that he did not take the money from the account. Husband produced no documents to support his claim that the HFP account had failed. Husband's testimony is not credible. Judgment is granted to the Wife against the Husband for $10,000.00 plus interest at the rate of 5.25% from May 19, 2015 until the principal and interest is paid in full. Husband further is in contempt of the FD and the Order entered September 13, 2016 for failing to comply with the Order, having the ability to comply therewith.

d. <u>Charles Schwab joint account 7288 (Schwab account)</u>: Wife was awarded the Schwab account in the MDA with a stated value of $35,024.39. After not receiving the account, Wife sued for contempt. Husband testified on August 9, 2016 that the funds were still in the account and had not been moved or withdrawn and that Wife could obtain them. Based on that testimony, the Court ordered the Wife to attempt to retrieve the funds and ordered Husband to fully cooperate and take any steps necessary to enable Wife to receive the funds. Wife made the attempt, but found that Husband had withdrawn the funds. Wife was somehow able to intercept the check from the Schwab account and therefore, did receive the funds. Husband failed to abide by the Order entered September 13, 2016 by withdrawing the funds himself, and had the ability to comply with the Order, but did not. Therefore, Husband is in willful contempt of the Order entered September 13, 2016.

7

e. <u>Personal checking account:</u> In the MDA, Wife was to receive $13,000.00 from the parties' joint checking account. Husband was to receive $12,000.00. Wife did not receive the funds and sued for contempt. At the hearing, Husband testified that he had not transferred the funds to the Wife. The Court ordered Husband to transfer $13,000.00 from that account to the Wife, plus interest at the amount of 5.25% from the date of the MDA, May 19, 2015, said transfer to be made immediately. Wife testified that Husband closed the account and obtained all of the funds including her share of $13,000.00. Husband admitted withdrawing the funds including Wife's share, claiming that he used it "for his expenses." Husband did not elaborate. The Court finds that Husband had the ability to transfer the funds to the Wife as ordered, but willfully failed to do so. Husband had the ability to comply. Husband is in willful contempt of the FD and the Order entered September 13, 2016.

f. <u>IRS debt:</u> In the MDA, Husband assumed a debt owed to the IRS in the approximate amount of $16,271.20. The MDA was entered May 19, 2015. Wife testified that the IRS had intercepted her tax refund for 2015 in the amount of $7,322.00 and her tax refund for 2016 in the amount of $3,629.00, and had applied them to Husband's debt to the IRS which he assumed in the MDA. In the MDA, Husband agreed to hold Wife harmless from debts assumed by him, set out in paragraph 4 of the MDA. The Court finds the Husband had the ability to comply, but did not comply with the FD and MDA. Husband testified August 9, 2016 that he had worked out a payment plan with the IRS, but apparently his plan did not protect Wife and he did not hold her harmless. To hold one harmless means that the one held harmless should not have to deal with or worry about the debt one is being held harmless from. Husband has at all times been able to pay the IRS and hold Wife harmless. The Court had previously granted Wife a judgment for the 2015 tax intercept. Wife is granted an additional judgment for the 2016 tax intercept in the amount of $3,629.00 plus interest at the rate of 5.75% per annum until the principal and interest is paid in full. The Court further finds that Husband had the ability to hold Wife harmless and is therefore in civil contempt of the FD and MDA.

g. <u>Trinity Christian Academy tuition (TCA debt):</u> In the PPP referred to above, Section 3, B, Husband agreed to pay all

8

tuition, registration and application fees for the parties' minor child attending Trinity Christian Academy or other private schools not to exceed TCA cost. Wife testified unrebutted that she was required to pay the 2016 tuition in the amount of $9,300.00. The Court previously granted Wife a judgment for that amount, plus interest, in the Order entered September 13, 2016. Wife further testified that she was required to pay the 2017 tuition for the child at TCA, in the amount of $9,120.00 and the 2018 tuition for the child at TCA, in the amount of $9,300.00, plus a registration fee. Husband admitted that he had not paid the tuition as he agreed in the PPP. The Court finds Husband had the ability to comply with his agreement in the PPP but willfully failed to comply. Husband is found to be in willful contempt of the FD which incorporates the PPP in this regard. Wife is also granted a judgment against the Husband in the amount of $18,420.00 plus interest at the rate of 6.25% per annum until the judgment and accrued interest is paid in full.

h. <u>Non-covered medical expenses:</u> In the PPP, Husband agreed to pay for all of the child's non-covered medical expenses. Wife testified unrebutted that the amount due at the time of the filing of the Petition for Contempt was $509.15. (See Exhibit 7) Wife further testified unrebutted that the amount incurred for non-covered medical expenses for the child since the date of filing to the date of the hearing was an additional $340.00. (See Exhibit 8 and 9) Wife is entitled to a judgment for the above amounts since she has paid those amounts on behalf of the child. Judgment is granted to Wife against Husband in the amount of $849.15 for non-covered medical expenses paid by Wife for the child.

i. <u>Attorney's fees:</u> By virtue of the Order entered September 13, 2016, Wife was awarded the sum of $3,418.50 for her attorney's fees and suit expenses. Wife was granted a judgment for that amount. Husband was ordered to pay that amount to Wife. Husband has failed to pay said amount to Wife. Husband admits this in his testimony. Husband has the ability to pay said fees. Husband is in willful contempt for failing to pay according to the Order of the Court entered September 13, 2016. The Court further is aware that Attorney Brad Sigler has $3,000.00 in his escrow account remaining from the sale proceeds of the Greendale house which was a short sale because Husband failed to pay the mortgage. The Court orders that Mr. Sigler may pay said funds to the Wife in

9

their entirety. Since half of the funds belong to the Wife, Husband will be given a credit for $1,500.00 against his attorney's fee obligation set out in this paragraph. Said funds may be paid to Mary Jo Middlebrooks for distribution.

j.  As a result of the short sale of the Greendale property, Wife was required to pay a security fee and homeowner's association fee from her share. Wife paid out $263.38 which should have been paid by Husband. Wife is therefore owed that amount and is granted a judgment against Husband for $263.38.

6.  Herein above, the Court has found that the Respondent, Jeffrey W. Young, Jr., has had and currently has the ability to comply with the Marital Dissolution Agreement which he entered into, and the other Orders of this Court. The Court has heard testimony from Mr. Young as to why he has not complied, but the Court does not find Mr. Young to be credible. For instance, Mr. Young has testified that two of the funds which were awarded to the Wife by agreement have filed bankruptcy. Husband produced no evidence whatsoever to support his claim, or how he received that information. The Court also heard testimony from Ms. Hollingsworth which indicated that she handles Mr. Young's money and receipts, deposits them into an account which she handles herself, and which also contains her own personal funds which have been co-mingled with the Clinic funds. The testimony concerning the operation of that account and the disbursement and receipt of funds that go into that account is hazy at best. It appears that the money that goes into this account from Mr. Young's Clinic and his receipts are not under Mr. Young's control and that she and her husband are the only ones who can write checks on that account. She testified Mr. Young is paid solely in cash, that other bills are sometimes paid in cash and that the doctor who administers the Clinic from Chicago is paid in cash. There is very little accountability. The Court further heard testimony from Christy Gutgsell who previously was Mr. Young's office manager and now owns her own medical clinic. Her testimony indicated that Mr. Young told her that he had cashed out at least one of Mrs. Young's accounts awarded to her in the MDA and that the money went to him and his Clinic. She further testified, unrebutted, that Mr. Young told her that he did not intend to pay Mrs. Young. She testified unrebutted further that Mr. Young took $100.00

10

per day in cash in addition to his payroll checks from the previous Clinic Mr. Young operated of which she was the manager. She had no knowledge as to whether he reported these cash takings as income. Mr. Young testified he had not filed federal tax returns for the past year. She further testified that Mr. Young's previous Clinic which she was manager of, purchased personal items, or paid for personal expenses of Mr. Young including expenses at Target, eating out, purchases of alcohol, tickets to Grizzlies ball games, Mr. Young's utilities and house cleaning at his personal residence, paid Mr. Young's personal insurance, his cell phone, car insurance, and personal attorney's fees. She further testified that the Clinic paid for Mr. Young's heating and air repair at his personal home and that the bill presented to the Clinic was for $7,600.00, but that the amount paid was not the amount of the bill which she testified was $1,800.00. She did not know where the other money went. On cross examination from Mr. Young's attorney, she again confirmed that Mr. Young told her he had no intention to pay Mrs. Young and that he cashed out her account. Husband's attitude toward Wife and complying with the MDA is characterized in Exhibit 13 entered March 16, 2018 where he severely disparaged her, calling her "gold digging bitch." While Mr. Young denied that he takes cash currently, as stated, the Court finds Mr. Young is not credible in light of his past history and the method by which he is operating his current Clinic and the lack of accountability for its income and expenses. Further, Ms. Hollingsworth testified that she received a wage assignment for child support to the Genexis Clinic which she was involved with and is currently operating, but that she discarded the wage assignment and did not pay it. Based on all of this, the Court finds that Mr. Young is concealing his income and that he has the ability to pay the amounts owed and that he has willfully violated the Orders of the Court and the terms of the MDA.

The Court finds Mr. Young in willful civil contempt of the Orders of this Court. Mr. Young will be given thirty (30) days from the date of this letter to purge himself of contempt by paying the amounts owed to Mrs. Young. Failing that, the Court sets a hearing on the amount of punishment and the terms thereof to be administered. That hearing date is set for May 30, 2018 at 9:00 a.m. in the Chancery Court for Madison County, Tennessee. All

11

parties are ordered to attend. Wife is entitled to an award of attorney's fees, per the MDA, which will be set at the May 30, 2018 hearing.

IT IS THEREFORE ORDERED:

1. The State of Tennessee's Motion to Intervene is granted.

2. That Husband is in willful contempt for nonpayment of child support with an arrearage in the amount of $18,566.32, through and including March 31, 2018. Wife is granted a judgment for said amount, which shall run at 4% interest until paid in full. The Court finds said interest rate to be equitable as Husband has had the use of said funds and other awarded sums for Wife for his use, depriving Wife of the use of said funds.

3. That Wife is granted a judgment against Husband to reflect Wife's payment of the health insurance premiums for the minor child totaling $1,029.00 plus interest at 5.5% per year from and after April 1, 2018 until paid in full. Execution may issue upon request of Wife or her attorney.

4. That Wife is granted a judgment against Husband regarding the Skyline Cardiovascular account in the amount of $61,000.00 plus interest at the rate of 5.25% from May 19, 2015, until principal and interest are paid in full. Execution may issue upon request of Wife or her attorney.

5. That Wife is granted a judgment against Husband regarding Global Private Client Group in the amount of $15,329.33 plus interest at a rate of 5.25% per year from May 19, 2015 until principal and interest are paid in full. Execution may issue upon request of Wife or her attorney.

6. That Wife is granted a judgment against Husband regarding HFP Capital and Markets, LLC number 5115 in the amount of $10,000.00 plus interest at the rate of 5.25% from

May 19, 2015 until principal and interest are paid in full. Execution may issue upon request of Wife or her attorney.

7. That Husband is in willful contempt of the Orders of this Court entered September 13, 2016, regarding the Charles Schwab joint account 7288.

8. That Husband is in willful contempt of the Orders of this Court entered September 13, 2016, regarding the personal checking account.

9. That Wife is granted an additional judgment against Husband regarding the IRS debt in the amount of $3,629.00 plus interest at the rate of 5.25% per year until the principal and interest are paid in full. Execution may issue upon request of Wife or her attorney. Husband is further found to be in willful civil contempt of the Final Decree and Marital Dissolution Agreement.

10. That Wife is granted a judgment against Husband regarding Trinity Christian Academy tuition in the amount of $18,420.00 plus interest at the rate of 6.25% per year until judgment and interest are paid in full. Execution may issue upon request of Wife or her attorney. Husband is further found to be in willful civil contempt of the Final Order for Absolute Divorce and the Permanent Parenting Plan.

11. That Wife is granted a judgment against Husband in the amount of $849.15 for non-covered medical expenses (Exhibits 7, 8 and 9 at trial). Execution may issue upon request of Wife or her attorney.

12. That attorney Brad Sigler shall pay to Middlebrooks & Gray, P.A. the $3,000.00 currently in his escrow account from the sale of the Greendale house. $1,500.00 of these funds shall be applied as a credit toward Husband's attorney fee obligation previously Ordered by this Court on September 13, 2016.

13

13. That Wife is granted a judgment against Husband regarding security fees relative to sale of the Greendale house in the amount of $263.38. Execution may issue upon request of Wife or her attorney.

14. That the child support obligation in this cause is modified to reflect Wife's payment of health insurance for the minor child. Beginning April 1, 2018, and the first day of each month thereafter, the child support shall be $1,434.00 per month. A child support worksheet is attached as "EXHIBIT A."

15. That Mr. Young shall have thirty (30) days from April 13, 2018, to purge himself of contempt by paying all of the amounts owed to Ms. Young as outlined above. Should Mr. Young fail to follow the Orders of this Court, all parties shall be required to attend a hearing set for May 30, 2018 at 9:00 a.m. in the Chancery Court for Madison County, Tennessee to determine the amount of punishment and the terms to be administered. The Court shall also set Wife's attorney fees at said hearing.

16. That Husband shall pay the costs of this cause, for which execution may issue.

ENTER this the __8__ day of __MAY__, 2018.

_____
Chancellor James F. Butler

APPROVED FOR ENTRY:

_____
J. COLIN MORRIS   BPR #015855
204 W. Baltimore
Jackson, TN 38301
Telephone: (731) 424-6616


MIDDLEBROOKS & GRAY, P.A.
Attorneys for Defendant

By:_____
   Mary Jo Middlebrooks, BPR #5342
P.O. Box 1985
Jackson, TN 38302
(731) 423-2234


_____
Assistant District Attorney
F. Dean Barry, BPR #5027
P. O. Box 2825
Jackson, TN 38302
731-423-5805

15