IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.     No. 1:19-cr-10040-JDB

JEFFREY W. YOUNG, JR.,
ALEXANDER ALPEROVICH, M.D., and
ANDREW RUDIN, M.D.,

    Defendants.

_____

ORDER GRANTING MOTION TO CHANGE VENUE, TRANSFERRING CASE TO THE WESTERN DIVISION FOR PURPOSES OF TRIAL, AND REASSIGNING TO DISTRICT JUDGE JOHN T. FOWLKES, JR.
_____

In April 2019, as part of a coordinated effort by United States Attorneys and the Department of Justice Appalachian Regional Prescription Opioid Strike Force to fight the opioid crisis, indictments were brought against several medical doctors and nurse practitioners in West Tennessee. https://www.justice.gov/usao-wdtn/pr/us-attorney-dunavant-along-federal-state-and-local-partners-continue-efforts-combat (last visited Oct. 19, 2020). One of the Defendants, Jeffrey W. Young, Jr., is a nurse practitioner who operated and part-owned a clinic in Jackson, Tennessee. In an indictment dated April 15, 2019, he was charged with conspiring to unlawfully distribute and dispense controlled substances in violation of 21 U.S.C. § 846, unlawfully distributing and dispensing controlled substances to a pregnant woman in contravention of 21 U.S.C. §§ 841(a)(1) and 861(f), unlawfully distributing and dispensing controlled substances in violation of § 841(a)(1), and maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1). (Docket Entry ("D.E.") 4.) According to the indictment, Young, through his clinic, issued

prescriptions for controlled substances outside the course of professional practice and without a legitimate medical purpose. The motivation for these activities, according to the Government, was often to obtain money, status, notoriety, and sexual favors.

The indictment outlined the following alleged behavior on the part of Young. He promoted his practice under the motto "work hard, play harder" and branded himself as the "Rock Doc" in accordance with his affinity for the rock 'n roll lifestyle. He treated patients while intoxicated with alcohol, marijuana, and other substances; freely prescribed controlled substances to friends and family; and promoted the use of illicit drugs, including marijuana. Young used his power to prescribe controlled substances to promote a television pilot and podcast and to have sex with women, including those who were his patients. He ignored state guidelines for prescribing substances as well as the inherent risks associated with dispensing highly addictive drugs, independently and in combination. Young prescribed controlled substances to a pregnant patient for no legitimate medical purpose, after which her child was born addicted to opioids with Fetal Abstinence Syndrome.

Also charged in this matter were Young's supervising physicians, Alexander Alperovich, M.D., and Andrew Rudin, M.D. According to the indictment, the physicians conspired with Young to unlawfully dispense and distribute controlled substances by lending his practice the air of legitimacy in permitting their names and licenses to appear on his prescriptions in exchange for large profits generated by the issuance of prescriptions for such substances and diverting the proceeds to their personal benefit.

Before the Court is Young's motion, pursuant to Rule 21(a) of the Federal Rules of Criminal Procedure, for a change of venue to the Western Division of this Court, which sits in

Memphis, Tennessee, for the purposes of trial.[1]  (D.E. 126.)  Co-Defendant Rudin joins in the motion (D.E. 170) and the Government does not oppose it (D.E. 130).  An objection has been raised, however, by Co-Defendant Alperovich.  (D.E. 172.)

The Sixth Amendment to the United States Constitution requires that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . public trial[] by an impartial jury of the . . . district wherein the crime shall have been committed." U.S. const. amend. VI.  Rule 21(a) provides that, "[u]pon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a).  By its terms, the rule applies to *inter*district transfers.  *United States v. Gilpatrick*, No. 2:05-00009, 2006 WL 8452277, at *1 (M.D. Tenn. June 1, 2006).

*Intra*district transfers, such as that sought here, fall more appropriately, in the Court's view, under the guidance of Fed. R. Crim. P. 18, which states that,

> [u]nless a statute or [the federal criminal rules] permit otherwise, the government must prosecute an offense in a district where the offense was committed.  The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice.

Fed. R. Crim. P. 18; *see Gilpatrick*, 2006 WL 8452277, at *1 (citing *United States v. Lipscomb*, 299 F.3d 303, 339 (5th Cir. 2002)) ("Unlike Fed. R. Crim. P. 21 which applies to *inter*district transfers and implicates the Constitution, Rule 18 applies to *intra*district transfers and does not implicate the Constitution."); *see also United States v. Lopez*, Criminal Number H-15-564-S3, 2019 WL 6064935, at *2 (S.D. Tex. Nov. 15, 2019) ("Intradistrict transfers . . . are governed by

---

[1] The driving distance from the federal courthouse in Jackson to the federal courthouse in Memphis is approximately eighty-six miles.

3

Federal Rule of Criminal Procedure 18."); *United States v. Thomas*, Criminal Action No. 2018-0014, 2019 WL 3307043, at *3 (D. V.I. July 23, 2019) ("The Federal Rules of Criminal Procedure distinguish between transfers of a criminal case within a single district (known as intradistrict transfers or transfers of vicinage) and transfers between districts (known as interdistrict transfers). The former are governed by Rule 18 of the Federal Rules of Criminal Procedure and the latter are governed by Rule 21." (internal citations omitted)).

Rule 18 "merely states the traditional rule of 'forum non conveniens' and vests discretion in the [d]istrict [c]ourt to determine the proper place of trial." *United States v. Lewis*, 504 F.2d 92, 97 (6th Cir. 1974). While the Constitution and the rule "require that a defendant's trial take place in the *district* where the crime was committed, there is no constitutional or statutory requirement that a defendant's trial take place in a specific courtroom or *division* within a federal judicial district." *United States v. Erwin*, 155 F.3d 818, 824 (6th Cir. 1998) (en banc); *see also United States v. Forlani*, No. 1:11CR491, 2012 WL 3524751, at *2 (N.D. Ohio Aug. 14, 2012) (citing *Erwin*). Prior to 1966, Rule 18 provided "a statutory right to trial in the division where the defendant's offense allegedly occurred." *Erwin*, 155 F.3d at 824. The 1966 amendment to the rule eliminated the divisional requirement. Fed. R. Crim. P. 18, advisory committee's note (1966 Amendments); *Erwin*, 155 F.3d at 824; *see also Lewis*, 504 F.2d at 97 ("In eliminating the requirement of division venue, the 1966 amendment recognized that the presence of venue at a particular place is controlled by numerous factors . . . and should not be hemmed in by artificial boundary lines drawn by Congress.").

"Transfer of a particular case from one place within the district to another place within the district is a matter for the local district judges to decide." *Lewis*, 504 F.2d at 98. In doing so, courts may consider "proximity of the defendant's residence, proximity of witnesses and counsel,

docket conditions which bear on whether a defendant receives a speedy trial, and proximity of records and documents." *Forlani*, 2012 WL 3524751, at *2 (citing *Lewis*, 504 F.2d at 97). Against these factors must be balanced the interest of the public and the court itself in the "prompt administration of justice." *Id.* at *4 (citing *United States v. Ford*, 812 F. Supp. 761, 771 (W.D. Tenn. 1981)). Relevant to the administration of justice consideration is pretrial publicity. *See Ford*, 812 F. Supp. at 771.

The proximity of the Defendants' residences, witnesses, counsel, or records does not appear to be at issue with respect to the instant motion. Young's primary concern rests with the amount of pretrial publicity the case has garnered in the Eastern Division. Indeed, there was significant press coverage of his alleged misdeeds in the local Jackson press, more so than in Memphis, for a period after his arrest. However, "Rock Doc" has also caught the attention of certain national media outlets.

While the Court is confident that an impartial jury could be empaneled in the Eastern Division, "the fact that prior publicity would pose a concern" weighs in favor of transfer to a less challenging venue -- that is, Memphis.[2] *See Forlani*, 2012 WL 3524751, at *5 (despite the court's ability to seat an impartial jury in division in which case received considerably more press coverage, the fact that such publicity "would pose a concern" weighed against trying the case in that division).

As noted above, Dr. Rudin and the Government agree to the transfer of this matter to the Western Division for the purposes of trial. The only objection comes from Dr. Alperovich, whose sole basis for challenging the motion appears to be that he enjoys a certain level of status in

---

[2]Young also expressed some concern about the smaller size of the jury pool in the Eastern Division, which is largely rural, compared to that of the more populous and urban Western Division. This concern would be assuaged by transferring the trial to Memphis.

5

Jackson. The fact that one is known in one's community can, however, cut both ways. In any case, where the requirements of Rule 18 have been met, as they have been here, an intradistrict transfer does not require the assent of a defendant. *See Lewis*, 504 F.2d at 98; *United States v. Roberts*, Criminal Action No. 6:06-82-DCR, 2006 WL 3068807, at *1 (E.D. Ky. Oct. 26, 2006).

Based on the foregoing, the motion to change venue is GRANTED and this matter is TRANSFERRED to the Western Division for the purposes of trial.

As the parties are keenly aware, the COVID-19 pandemic has affected every segment of society, including the operation of the federal courts in the Western District of Tennessee. Only recently have the judges in this district allowed jury trials in criminal cases to restart. In the reopening of trials, the district has limited the number of courtrooms to be used for that purpose, one in Jackson and two in Memphis. As the judicial makeup of the Western Division consists of four active judges and two senior judges, the availability of courtroom and office space is limited. There is little, if any, additional space for a visiting judge's chambers and staff for a trial expected to last two or more weeks. Consequently, although counsel have expressed interest in the undersigned trying the case even if it were transferred, this request cannot be granted based on this judge's determination. The Court has contacted District Judge John T. Fowlkes, Jr., who has agreed to try this case at its present setting of March 15, 2021. Obviously, he has the courtroom and chambers availability to do so. Otherwise, this case, which was indicted in 2019, might be indefinitely postponed due to space considerations. All of the Defendants and the Government are entitled to disposition of this matter within a reasonable time period. Accordingly, this case is hereby REASSIGNED to District Judge John T. Fowlkes, Jr.

IT IS SO ORDERED this 20th day of October 2020.

s/ J. DANIEL BREEN  
UNITED STATES DISTRICT JUDGE