# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | )  Cr. No.: 1:19-cr-10040-JTF |
| | ) |
| vs. | ) |
| | ) |
| JEFFREY W. YOUNG, Jr., | ) |
| | ) |
| Defendant. | ) |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS

After a two-day evidentiary hearing in May 2019, Judge Breen found that Young is a danger to the community that no condition or combination of conditions of release could mitigate. In his many motions for release, he has never supplied facts or evidence to address Judge Breen's concerns about the danger Young poses to the community—a finding that was upheld by the Sixth Circuit; instead, Young's arguments have all been rooted in the fact that it is hard—for various reasons—to be incarcerated during a pandemic. His pending motion follows suit: Young points out that it is hard to be incarcerated during a pandemic while preparing for trial.

Just as each of Young's prior attempts to secure release due to the hardships of incarceration has been rejected by the Court, the Court should reject Young's latest attempt to secure pretrial release, including because it is ostensibly predicated on concerns about Due Process and Young fails to articulate a single request for an accommodation, much less one that BOP, the government, or the Court has denied.

**Relevant Factual and Procedural Background**

The relevant facts are set forth in the Indictment (Dkt. 3) and expounded upon in several of the government's filings in this case. (*See, e.g.*, Dkts. 58, 153 & 164)[1] To summarize: Defendant Jeffrey Young was a nurse practitioner indicted in April 2019 for issuing prescriptions for large quantities of narcotics and other controlled substances outside the scope of a legitimate medical practice, in exchange for cash and sexual favors from his purported patients, in the course of cultivating notoriety associated with his online persona, the "Rock Doc."[2]

At his detention hearing in April 2019, the Defendant briefly secured pretrial release on a $5,000 unsecured bond when he claimed to Magistrate Judge York (through counsel) that he was neither a flight risk nor a danger to the community because he had abided by the restrictions on his nursing license in an agreed November 2018 Consent Order with the Tennessee Board of Nursing (the "Board Order"). Young falsely claimed that his "current practice" was "mostly cosmetic," and further assured Judge York that the Board had considered the government's evidence about Young's excessive substance use and sex with patients in exchange for prescriptions, and had found "no basis in fact" for these claims, such that the community's "safety ha[d] been guaranteed" by the Board.

---

[1] *See also* the government's Response Brief to the Sixth Circuit in Young's detention appeal to that court, attached to this Response as **Exhibit 1**. The Sixth Circuit's opinion affirming Judge Breen's detention order is attached to this Response as **Exhibit 2**.

[2] *See generally* Dkt. 3 (Indictment). The April 15, 2019 Indictment charged Young with multiple counts giving rise to a statutory presumption in favor of pretrial detention, *see* 18 U.S.C. § 3142(e)(3)(A). All told, Young is charged with one count of conspiracy to distribute controlled substances in violation of Title 21, United States Code, Section 846; and several individual counts of unlawful distribution in violation of Title 21, United States Code Section 841, including six counts of distribution to a pregnant woman and seven additional counts of unlawful distribution. He was also charged with one count of maintaining a drug premises in violation of Title 21 U.S.C. § 856(a)(1).

2

After a two-day evidentiary hearing on the government's motion to reconsider Judge York's order, where the government established that the Board was far off the mark in its handling of the dozen or so investigations into Young's practice leading up to the Board Order, and that Young had not accurately represented his circumstances at his initial detention hearing, Judge Breen ordered Young detained pending trial on the basis that he constituted a danger to the community. (Dkt. 81) That evidence is reflected in the transcripts of the revocation hearing (Dkts. 97 & 99), and it is summarized in the government's briefs seeking detention (Dkt. 58) and responding to Young's appeal of Judge Breen's order to the Sixth Circuit, *see* Ex. 1 (which was affirmed, *see* Ex. 2).

The evidence Judge Breen heard included that:

- *Young did not abide by the conditions in the Board Order*. To the contrary, in the six months between signing the Board Order and his arrest in April 2019, he prescribed lower-scheduled controlled substances (Schedule IV and V) to approximately 200 patients, favoring prescribing those drugs with street value. Worse, Young prescribed a number of these drugs to his own former patients who were obtaining Schedule II opioid prescriptions from another source.

- *Outside the exam room, Young is just as dangerous as inside the exam room*. Specifically, the United States presented

    o a video of an apparent sexual assault of a semi-conscious woman filmed by his friend "Uncle Kevin" Phillips;

    o testimony from Board investigator testified about fearing for her life after Young threatened her;

    o a recorded witness statement detailing how, after he had been disciplined by the nursing board for overprescribing, Young continued to have sex with his patients at his new clinic Genexis;

    o testimony and social media posts showing that Young prescribed to addicts he knew were in rehabilitation programs; and

    o postings on social media accounts where Young threatened people who questioned his medical practice; and

3

- *Young has a history of violating court and administrative orders.* For example, in May 2018, the Chancery Court of Tennessee presiding over his divorce found the Defendant in contempt (including instances of "willful contempt") of nearly a dozen separate conditions of the divorce. After an evidentiary hearing in the divorce matter, at which the Defendant provided testimony, the Court did "not find Mr. Young to be credible."

After he was detained, Young was among the first defendants in the country to file a motion for release in light of the COVID-19 pandemic, citing the fact that he is on immunosuppression therapy due to a kidney transplant, claiming that remaining detained is a "death sentence," and again arguing that because he would no longer prescribe controlled substances, he is not a danger to the community. (Dkt. 152 *et seq.*) Yet, photographs inside the jail demonstrated Young was not availing himself of the precautions available to him, and Magistrate Judge York denied the motion (Dkt. 158) After Young sought reconsideration of that decision, Judge Breen reached the same result. (*e.g.*, Dkts. 162, 164 & 168)

Critically, Young does not claim now that any of the facts have changed that led Judge Breen to conclude that Young is a danger to the community. They have not. To the contrary, Young *still* regularly bemoans—in recorded jail calls—that the government is conducting a "witch hunt" and that he is charged and detained without the slightest evidence of wrongdoing. He makes these claims having sat through the government's presentation of evidence showing his (often public) threats of physical harm to patients, their family members, members of the Jackson, TN, recovery community, and even, as Judge Breen heard from a Board investigator's live testimony, members of the State's oversight agency. Young refuses to concede even the slightest wrongdoing in his abuse of his trusted position as a medical practitioner by prescribing lethal opioids and other pharmaceutical drugs of abuse to vulnerable addicts in exchange for sex and adoration.

4

He fails to see anything wrong with a video shot by Young's pal "Uncle Kevin," that Judge Breen found particularly disturbing, depicting Young having sex with a mostly unconscious woman.

### Legal Standard

In support of his Motion, Young cites several out-of-circuit cases (most of which find no due process violation, including one involving twenty-six months' pretrial detention, *see United States v. Briggs*, 697 F.3d 98, 101 (2d Cir. 2012)), and subsection (i) of the Bail Reform Act, which provides that "a judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." *Id.* § 3142(i).

Young apparently overlooked the recent decision by the Sixth Circuit in *United States v. Foster*, No. 20-5548, 2020 WL 6791572 (6th Cir. July 20, 2020) (unpublished). Like Young's own case, *Foster* was a case involving a rebuttable presumption and trial-court finding of dangerousness, among other similarities. *See id.* at *2 (6th Cir. July 20, 2020) (child pornography case) ("Foster's family and community ties, long-term employment, and lack of criminal history all weigh in favor of his release. But his deceptive conduct and unwillingness or inability to change or stop his behavior even after being alerted that it had been discovered, does not speak to his strength of character.").

The Sixth Circuit in *Foster* recited that the "Bail Reform Act is regulatory, not punitive, because it carefully limits the circumstances under which detention may be sought to the most serious of crimes." *Id.* at *3 (6th Cir. July 20, 2020) (quotation marks

omitted). Like the defendant in *Foster*, Young "received full due process, and the district court did not clearly err in ordering him detained. Thus, his detention does not constitute punishment." *See id.*

After disposing of the defendant's Due Process claim, the *Foster* court turned to the defendant's claim that imprisonment during COVID-19 deprived the defendant of his right to counsel. Though he doesn't frame it as such, this is in substance the claim Young now stakes. *Foster*'s brief disposition of that claim follows:

> Foster also argues that his detention violates his right to counsel. Whether Foster can assist in his defense does not have any impact on the determination of whether conditions of release would assure his appearance or protect the public. *See United States v. Petters*, No. 08-364, 2009 WL 205188, at *2 (D. Minn. Jan. 28, 2009). In any event, limited contact with counsel due to COVID-19 concerns is not sufficient to violate this right if there are still opportunities for significant trial preparation. *See United States v. Persico*, No. S 84 Cr. 809, 1986 WL 3793, at *2 (S.D.N.Y. Mar. 27, 1986). **Foster's trial has been continued to October 2020, giving him ample time to consult with counsel**.

*Id.* (emphasis added).

**Argument**

In support of his claim that his continued detention violates Due Process, the sum total of Young's factual support is that "[t]he detention facility only uses Zoom and it is limited in time and usefulness. The discovery if multi-terabytes in size and impossible to be reviewed via Zoom. Currently, counsel is unable to effective[ly] prepare for a trial this complex without the ability to have many long discovery sessions with the defendant." (Dkt. 194 at 2-3)

Young does not claim that he has sought any sort of accommodation for this alleged difficulty in preparing for trial, short of pretrial release pending trial. He does not represent that he has even made any inquiry into those accommodations. Young has not

requested any modification to the terms of the confidentiality agreement that he entered with the United States that governs discovery in this case. He has not inquired into whether that is something the government would consider. Young does not explain why, in the year preceding the emergence of the COVID-19 pandemic, Young was unable to review with his lawyer the discovery in this case—most of which his counsel has possessed throughout the pendency of this case. Young does not offer any reason why, if four months to prepare for trial while detained during the COVID-19 pandemic was sufficient for the defendant in *Foster*, the eight months between when his last release motion was denied (for the second time by Judge Breen, after Judge York denied it the first time) and the date of this Response—a span which does not include the additional two months between now and the current March 2021 trial setting—has not afforded him a meaningful opportunity to prepare his defense. He does not because he cannot.

Young correctly argues that he has been incarcerated pending trial for a long time; but this is a problem of his own design. At every turn, he has joined in his co-defendants' efforts to postpone this trial. (e.g., Dkt. 113 (Young moving to continue report date due to voluminous discovery)); Dkt. 127 (docket entry reflecting all defendants' agreement to continue report date) & Dkt. 134 (all defendants agreeing in November 2019 to a September 2020 trial date)). The out-of-Circuit cases Young cites make plain that a defendant who causes or acquiesces to the delay(s) in his own case cannot be heard to complain about the length of his pretrial detention. *Compare, e.g.*, *United States v. Ojeda-Rios (Ojeda Rios 1)*, 846 F.2d 167, 169 (2d Cir. 1988) (thirty-two-month detention with trial delayed several more months violates due process because some responsibility for delay lay with government), *with, e.g.*, *United States v. Melendez-Carrion*, 820 F.2d 56

7

(2d Cir. 1987) (nineteen-month pretrial plus four-month anticipated detention on grounds of risk of flight did not violate due process where the prosecutor lacked responsibility for the delay and the defendant was a strong flight risk).

### **Conclusion**

Young's latest effort to secure release is predicated on nothing more than conclusory allegations that *he concedes in his Motion* were on his mind "some eight months ago, [when] the defense notified the Court that it was having difficulty due to the pandemic in preparing for trial and would not be ready for trial if the pandemic persisted." (Dkt. 194 at 3) During that time, Young has done nothing to engage the Court, the government, or, apparently, BOP to try to rectify this issue. Instead, he has joined in his codefendants' efforts to continue the trial. Young offers no explain how his case is any different than every other defendant preparing for trial while in custody during a pandemic. On their face, then, Young's unsupported claims fall far short of the Due Process Clause.

Therefore, the government respectfully urges that Young's motion for release be DENIED.

Respectfully submitted,

/s/ Drew Pennebaker
Andrew Pennebaker
Trial Attorney
U.S. Department of Justice
(202) 597-0683
Andrew.Pennebaker@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically filed through ECF on January 19, 2020.

>  */s/ Drew Pennebaker*
> Andrew Pennebaker
> Trial Attorney