IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| Plaintiff,  ) | Cr. No.: 1:19-cr-10040-JDB |
| ) | |
| vs.  ) | |
| ) | |
| JEFFREY YOUNG,  ) | |
| ) | |
| Defendant.  ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT JEFFREY YOUNG'S NOTICE OF AUTHORIZATION DEFENSE AND MODIFIED PUBLIC AUTHORITY DEFENSE**

Defendant Jeffrey Young's notice filing (Dkt. 239) purports to cover two affirmative defenses. The first—that Young's licensure means the government bears the burden of proving beyond a reasonable doubt that Young knew he was prescribing outside the scope of professional practice—is not disputed.[1]

Young also claims to provide notice to the government of what he calls a "modified" public authority defense. Although Young does not even cite the relevant rule, this defense is covered by Federal Rule of Criminal Procedure 12.3. The notice requirements of Rule 12 are stringent and, as explained below, Young's single-page filing fails as a matter of law to meet them. Nor does this case present the type of fact-pattern where this defense could ever be raised by Young—even if he had complied with Rule 12.3. At base, Young should be precluded from raising any form of public authority defense at trial.

---

[1] Young seems to suggest that his licensure means that his prescribing was "authorized" as a matter of law. Young provides no authority or explanation for this proposition, nor can he; Young's unauthorized prescribing is the primary fact that the government intends to prove beyond a reasonable doubt to the jury at trial.

**Background**

Defendant Young, who also referred to himself as the "Rock Doc," was a nurse practitioner indicted in April 2019 for knowingly issuing prescriptions for controlled substances outside the scope of a legitimate medical practice, in exchange for cash, notoriety, and sexual favors from his purported patients. The Indictment alleges that Young abused his license and his position of public trust to meet these ends, ignoring repeated admonitions from the Tennessee Board of Nursing (the "Board") over the course of numerous investigations by that agency into allegations ranging from overprescribing, to online threats of violence against former patients and industry peers, to alcohol use and having sex with patients.

On November 8, 2018, Young signed a Consent Order with the Tennessee Board of Nursing (the "Board Order"), reflecting the Board's findings that Young "prescribed controlled substances to some patients without seeing the patients for office visits and without documenting the prescriptions in the patients' records," and that Young prescribed dangerous combinations of medications known to be used by addicts to increase their high, including opioids, benzodiazepines, and muscle relaxants.

At Young's detention hearing, Magistrate Judge York heard from Young's attorney that the Board had already considered the allegations in the indictment and had determined that—far from being dangerous—Young was fit to continue practicing medicine, albeit with restrictions. Relying on counsel's representations, Judge York ordered Young released on bond over the government's objection.

The government appealed, and U.S. District Court Judge Breen conducted a two-day hearing in May 2019, where the government first reviewed with Board Investigator Shirley Pickering the Board's investigative file on Young. While a fair conclusion could be

drawn from that evidence that the Board's disciplinary action against Young was both too late and too little to meet its oversight function in Young's case, *nowhere* in that record did the Board purport to authorize Young's conduct. Judge Breen also heard and saw how outside the exam room, Young was just as dangerous. For example, the United States presented a video of an apparent sexual assault of a semi-conscious woman, Transcript of Detention Hearing, Day No. 2 at 150:12-15 [ECF 97]; Young's sexual exploits with a number of his patients who received prescriptions from him for controlled drugs, *id.* at 120:5 – 121:4, 143:8-22; Young's threats on social media, *id.* at 187:25-188:2, and Board Investigator Pickering's testimony about fearing for her life after Young threatened her, Transcript of Detention Hearing, Day No. 1 at 118:2-21 [ECF 99].

After hearing the government's evidence, Judge Breen revoked Young's bond. On the record, Judge Breen rejected Young's original claim that the Board had essentially blessed what the Grand Jury accused Young of doing with his licensure and position of trust in the community (Doc. 81). Young appealed that decision to the Sixth Circuit, which affirmed. Now, Young seeks to recycle what he calls his "modified public authority" defense at trial, in front of the jury.

The Court should preclude Young's return to his unfounded claim that the Board's failure to act on his behavior inside and outside of the exam room equates to advice that what he was doing was legal.

### **Legal Standard**

Fed. R. Crim. P. 12.3(a) requires a defendant who intends to request the public authority defense to notify the Court and government in advance. The notice must contain the following information: (A) the law enforcement agency or federal intelligence agency

involved; (B) the agency member on whose behalf the defendant claims to have acted; and (C) the time during which the defendant claims to have acted with public authority. Fed. R. Crim. P. 12.3(a)(2).

If a defendant meets Rule 12.3's notice requirements, there are three versions of the public authority defense he can raise. *United States v. Theunick*, 651 F.3d 578, 589 (6th Cir. 2011) (citing *United States v. Valentine*, 59 F.3d 171 (6th Cir. 1995) (unpublished)). These were summarized by the Eleventh Circuit in *United States v. Baptista-Rodriguez*:

> First, the defendant may allege that he [acted in good faith; *i.e.*, that he] lacked criminal intent because he **honestly believed he was performing the otherwise-criminal acts in cooperation with the government**. "Innocent intent" is not a defense per se, but a defense strategy aimed at negating the mens rea for the crime, an essential element of the prosecution's case. This court has recognized "innocent intent" as a legitimate defense tack [where, for example] . . . defendants acted in good faith under the sincere belief that their activities were exempt from the law . . . .
>
> A second possible defense is "public authority." With this affirmative defense, the defendant seeks exoneration based on the fact that he reasonably **relied on the authority of a government official to engage him in a covert activity**. *Anderson*, 872 F.2d at 1513; *see United States v. Reyes–Vasquez,* 905 F.2d 1497, 1500 n. 5 (11th Cir.1990), *cert. denied*, 501 U.S. 1237, 111 S.Ct. 2869, 115 L.Ed.2d 1035 (1991). The validity of this defense depends upon whether the government agent in fact had the authority to empower the defendant to perform the acts in question. If the agent had no such power, then the defendant may not rest on the "public authority"; reliance on the apparent authority of a government official is not a defense in this circuit, because it is deemed a mistake of law, which generally does not excuse criminal conduct. *Anderson*, 872 F.2d at 1515; *United States v. Rosenthal*, 793 F.2d 1214, 1236, *modified on other grounds*, 801 F.2d 378 (11th Cir.1986), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1377, 94 L.Ed.2d 692 (1987). A defendant legitimately may rely, however, on a government official's real authority to authorize the defendant's conduct. *Anderson*, 872 F.2d at 1515; *Rosenthal*, 793 F.2d at 1235–36; *see Lopez–Lima*, 738 F.Supp. at 1408. Actions properly sanctioned by the government are not illegal.

4

>   A third possible defense in cases like the present one **is "entrapment by estoppel."** This defense applies when a government official tells a defendant that certain conduct is legal and **the defendant commits what would otherwise be a crime in reasonable reliance on the official's representation**. *See United States v. Hedges*, 912 F.2d 1397, 1405 (11th Cir.1990); *United States v. Clegg*, 846 F.2d 1221, 1222 (9th Cir.1988) (applying defense to defendant who claimed government officials solicited, encouraged, and assisted his efforts to smuggle weapons to rebels in Afghanistan). Although this court generally has recognized the defense of entrapment by estoppel, *see Hedges*, 912 F.2d at 1405, one panel has stated in dictum that such a defense is foreclosed when a defendant claims he believed he was working on behalf of the government in an intelligence gathering capacity, *see Reyes–Vasquez*, 905 F.2d at 1500.

17 F.3d 1354, 1368 n.18 (11th Cir. 1994) (emphases added).

## Argument

Young's filing fails to satisfy Rule 12.3's notice requirements, which ends the inquiry. Even if Young had satisfied those requirements the evidence he has thus far presented—for example, in the prior detention hearing—plainly fails to meet the demanding standard for allowing a public authority under any of the three versions of the defense considered in the Sixth Circuit. The Government takes each argument in turn.

1. ***Young cannot raise the public authority defense because he has not complied with Rule 12.3.***

In his pleading, Young provides nothing more than the following notice about his "modified public authority" defense:

> [W]hile not an actual Public Authority defense, as it is merely an attach [sic] on the intent or mens rea element, the Defendant notices his intent to rely of [sic] the Tennessee Medical Board's continued licensing of his practice while aware of his prescribing practice as it is proof of a lack of intent or knowledge to violate the "authorized manner" clause.

Dkt. 239 at 1.

5

Rule 12.3 instructs that any version of the public authority defense must first involve a "law enforcement agency or federal intelligence agency." The one Young propounds does not. Even if the Board were a law enforcement agency—a proposition for which Young offers no authority—the Board has no actual or apparent authority to speak on what does or does not constitute a violation of federal law. *See, e.g., United States v. Baker*, 438 F.3d 749, 755 (7th Cir. 2006) (collecting cases); *accord United States v. Rector,* 111 F.3d 503, 506 (7th Cir.1997) ("[T]his court would be going against the weight of authority if it ruled that statements by state law enforcement officials may constitute a defense of entrapment by estoppel to federal charges."), *overruled on other grounds by United States v. Wilson,* 169 F.3d 418, 428 n. 9 (7th Cir.1999).

Next, Rule 12.3 requires a defendant purporting to mount a public authority defense to name "the agency member on whose behalf the defendant claims to have acted." Again, Young's pleading falls short. Instead of naming an agency member, Young cites the renewal of his nursing license while an unnamed individual or individuals with the Board was/were "aware of his prescribing practice." Dkt. 239 at 1. Young's pleading is facially insufficient to meet the second prong of the notice requirement.

Finally, Rule 12.3 requires a defendant to specify the time during which the defendant claims to have acted with public authority. Young fails this requirement as well.[2]

---

[2] Further, although not raised in this pleading, this defense does not apply to a subsequent grant of authority, as Young has previously suggested the Board Order was. *See United States v. Lowenstein*, 108 F.3d 80, 83 (6th Cir. 1997). Similarly, if the defendant was not aware of the representation at the time of the offense, the defense fails. *Id.*

A failure to comply with Rule 12.3 allows the Court to exclude the testimony of any undisclosed witness on the public authority issue except the defendant. Fed. R. Crim. P. 12.3(c). Young has failed to meet even his threshold burden here.

### 2. Even if Young's notice had been sufficient, Young should be precluded from advancing a public-authority defense.

Not only must a defendant's public-authority notice contain a quantum of detail that Young's does not; the defendant must meet certain additional requirements specific to whichever of three versions of the defense he propounds. *See Dixon v. United States*, 548 U.S. 1, 7–17 (2006) (discussing defendant's burden on public-authority defense). Again, Young cannot do so.

Though Young fails to specify which version of the public authority defense he seeks to introduce, it is presumably not the first or the second version, which would both require Young to offer evidence that he believed he was acting in cooperation with the government or at the government's direction, respectively, like a confidential source might. *See, e.g.*, *United States v. Holmquist*, 36 F.3d 154, 161 nn. 6-7 (1st Cir. 1994) (characterizing as "nonexistent" and "not a defense at all" the "'defense' of apparent public authority" based "on a mistaken but good-faith belief that one's conduct is authorized by the government").

Most likely, Young hopes to mount the third version of the defense, entrapment by estoppel, which the Sixth Circuit has cautioned is "rarely available." *United States v. Theunick*, 651 F.3d 578, 589 (6th Cir. 2011). Young's apparent claim that the Board acquiesced to his conduct by allowing his continued licensure would only work if Young could show that the (yet-unnamed) individual who was an official of the state "actively misled" him. *See, e.g.*, *Cox v. Louisiana*, 379 U.S. 559, 571 (1965) (reversing convictions

7

where anti-picketing statute prohibited demonstrations "near" a courthouse and protestors were "affirmatively told" by "the highest police officials of the city, in the presence of the Sheriff and Mayor," that protesting across the street from the courthouse was lawful under that statute); *United States v. Troncoso*, 23 F.3d 612, 615 (1st Cir. 1994) (defense fails absent advice from official that conduct "was actually legal"); *United States v. Triana*, 468 F.3d 308, 316 (6th Cir. 2006) (probation officers' failure to prohibit defendant's involvement with federal health care programs was not an announcement because a government official did not "explicitly [tell defendant] his actions were legal . . . ."); *United States v. Ramirez-Valencia*, 202 F.3d 1106, 1109 (9th Cir. 2000) (holding that to succeed under an entrapment-by-estoppel defendant, the defendant "must do more than show the government made 'vague or even contradictory statements.'").

In addition to being unable to show how he was "actively misled," Young also cannot show how his reliance on the (yet-unnamed) official of the state's (yet-unnamed) advice that "actively misled" him, was reliance that was both actual and reasonable. *Theunick*, 651 F.3d at 589.

Here, there was no actual reliance by Young on advice by the Board. Indeed, the evidence will show that Young was well-aware of the Board's rules and disregarded them, going so far as to falsify medical records to feign compliance, such as indicating that he had performed physical exams when he had not done so. *See, e.g.*, *United States v. Schafer*, 625 F.3d 629, 637–38 (9th Cir. 2010) (in rejecting public-authority defense, pointing to purported "patient" forms admonishing that "cannabis remains illegal under Federal Law" in concluding that dispensary's reliance on alleged official's misstatements of law was not actual).

8

Nor would any actual reliance have been reasonable. *See, e.g.*, *id.* at 637 (recognizing that for reliance to be reasonable, purported official had to have been "made aware of all the relevant historical facts [and then] affirmatively told [the defendant] the proscribed conduct was permissible"). As the government demonstrated to Judge Breen, Young did not share with the Board important details about the conduct with which he is charged in this case, including Young's sexual exploits of young, vulnerable female patients receiving from Young dangerous cocktails of controlled drugs.

## Conclusion

In sum, Young fails under Rule 12.3 to meet the notice requirements for a public-authority defense, and can articulate no facts that would support any version thereof. Young should therefore be precluded from eliciting testimony or offering evidence in support of it at trial. *Cf. Theunick*, 651 F.3d at 589–90 (reasoning that where defendant's supposed reliance was "unsupported by any documentation, unsupported by any testimony from any Government agent, unsupported by any data sheets, physical evidence or the like," the defendant "failed to establish the factual basis to justify the rare case in which an entrapment by estoppel instruction should be given.").

Respectfully submitted,

/s/ Drew Pennebaker
Andrew Pennebaker
Dermot Lynch
Katherine Payerle
Trial Attorneys
U.S. Department of Justice

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically filed through ECF on October 19, 2022.

                                         */s/ Drew Pennebaker*
                                         Andrew Pennebaker
                                         Trial Attorney