IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

_____
                                    |
UNITED STATES OF AMERICA,            |
                                    |
           Plaintiff,                |
                                    |
vs.                                  | NO. 19-CR-10040
                                    |
JEFFREY W. YOUNG, JR.,               |
                                    |
           Defendant.                |
_____


TRANSCRIPT OF THE JURY TRIAL

BEFORE THE HONORABLE JOHN T. FOWLKES

AFTERNOON SESSION

DEFENSE'S OPENING STATEMENT



MONDAY

MARCH 27, 2023




TINA DuBOSE GIBSON, RPR
OFFICIAL REPORTER
FOURTH FLOOR FEDERAL BUILDING
MEMPHIS, TENNESSEE 38103


**UNREDACTED TRANSCRIPT**

```
 1              A P P E A R A N C E S
 2
 3       Appearing on behalf of the Government:
 4            KATHERINE PAYERLE
              ANDREW PENNEBAKER
 5            United States Department of Justice
              Fraud Section
 6            1400 New York Avenue, NW
              Washington, DC 20530
 7            (202) 341-4227
              katherine.payerle@usdoj.gov
 8            andrew.pennebaker@usdoj.gov
 9
         Appearing on behalf of the Defendant:
10
              CLAIBORNE H. FERGUSON
11            RAMON DAMAS
              The Claiborne Ferguson Law Firm, PA
12            294 Washington Avenue
              Memphis, Tennessee 38103
13            (901) 529-6400
              claiborne@midsouthcriminaldefense.com
14            ramon@midsouthcriminaldefense.com
15
16
17
18
19
20
21
22
23
24
25
```

**UNREDACTED TRANSCRIPT**

1                        MONDAY

2                   MARCH 27, 2023

3             ----------------------

4

5         THE COURT:  Thank you.

6         And now we'll hear matter from Mr. Ferguson.

7         MR. FERGUSON:  Ladies and gentlemen of the jury,

8 Jeff Young was broken, and he was playing a character.  Jeff

9 Young was one of the top nurse practitioners in Jackson,

10 Tennessee, until he went through a divorce with his wife, and

11 when he went through that divorce, it broke him.  It changed

12 him, and he puts on this character, the Rock Doc.  Fame,

13 glory, for whatever reason, it ultimately became consuming

14 for him to be this persona of the Rock Doc.

15         His practice and his habits, along with clientele

16 he had in his office, began to change.  But the key to this

17 case is that he never stopped being a family practice nurse.

18 He was writing prescriptions that, in his mind, his intent

19 was to be helpful, to be a healer, to be the doctor that he

20 wanted to be that he couldn't be.

21         The Government wants and they would have you

22 believe that he became a drug dealer.  There's a difference

23 in this case, in this type of case, than the typical drug

24 dealer.  If you and I went outside and we gave away Lortab,

25 Oxycodone, OxyContin, that's illegal.

**UNREDACTED TRANSCRIPT**

1         Jeff Young, through the State of Tennessee, had
2    permission to write prescriptions.  Those prescriptions had
3    to be based on his belief that he was writing prescriptions
4    for those who needed the drugs.
5         This is an intent crime.  He had to have the
6    intent not to be prescribing these drugs in the course of his
7    medical opinion.  This is not a malpractice case.  And you
8    will hear witnesses testify as to what the standard of care
9    is.  The standard of care is not the same thing as what his
10   intent was.
11        His intent was to help.  Did it?  Probably not.
12   But he was broken, playing a character, but he has never --
13   he's in there writing prescriptions for these drugs in his
14   office with people sitting in his waiting room with his staff
15   doing the intake, blood pressure.
16        You'll hear from Shirley Pickering.  She's going
17   to tell you about the problems they had with Jeff Young with
18   his charting and whether or not he was charting correctly and
19   what the steps the State of Tennessee did regarding that.
20   But even that is not becoming -- stepping over that line to
21   become a drug dealer.
22        Intent in this case is what you have to look at.
23   Did he knowingly and intentionally distribute drugs outside
24   of the professional opinion that this health care provider
25   had about what should be prescribed?

**UNREDACTED TRANSCRIPT**

1           You go to two doctors, you'll get two different
2  diagnoses, two different treatments.  It's all different.  If
3  you don't like the doctor you have, you can go to a different
4  doctor.  He went from being one of the greatest in Jackson to
5  being a broken man playing a character, but he didn't become
6  a drug dealer.
7           You may find that his decision-making was
8  clouded, that it wasn't the most appropriate of medical
9  treatments, that there might have been a better way to do it,
10 or that some other doctor would have done it differently.
11 But so long as he's acting as a healthcare provider while
12 he's doing it with that, in his mind, that good faith basis
13 that it's correct, he never steps outside the role of his
14 license through the state to write that prescription.
15          If it was negligent, if it was wrong, sue him.
16 It's malpractice.  The question for you is:  Was he a drug
17 dealer?  He's not a drug dealer.  In this, of course, I'll
18 ask you to find that he's not guilty of these charges.  I
19 appreciate you.
20          THE COURT:  Thank you, Mr. Ferguson.  Just one
21 moment.  All right.  I said that we were going to get into
22 proof today, but I think I was looking at the wrong clock
23 back there.  It shows after four, and I think it's well after
24 five, so we're going to go ahead and call it for the day.  I
25 should have looked on my watch rather than the clock.  And I

**UNREDACTED TRANSCRIPT**

1   know I've indicated we're going to start the proof, but we've
2   run out of time for today.  We'll pick it up tomorrow
3   morning.
4               All right.  So we're clear tomorrow.  I don't
5   have anything else, so we can turn our attention to this
6   case.  I'd like for you to be back in the jury room at nine
7   o'clock.  Okay?  We will pick it up at that time.  I think
8   tomorrow we're going to provide lunches for you so you don't
9   have to worry about that even though it's beautiful outside.
10              Now, when you go home this evening, remember my
11  instructions too.  You are not to discuss the case with
12  anyone, including family and friends.  You see, because
13  they're going to hit you tonight.  Okay.  And they're going
14  to be asking you:  Did you get on one of those cases?  This
15  is a good, juicy federal case.  You know, and they're going
16  to kind of put a little pressure on you to talk about it.
17              Remember you're under court order not to discuss
18  the case with anyone or allow anyone to discuss it with you.
19  Probably more important is investigations on your own.
20  Sometimes it may be tempting to look up someone's name, look
21  up a location that you know about now, things like that.
22  Please don't do that.
23              And remember my admonition about local news.
24  During the case, it will be an inconvenience for a while, but
25  don't take in any of the local news.

**UNREDACTED TRANSCRIPT**

1  Okay.  So we're going to go ahead and break until
2 tomorrow morning at nine o'clock.
3  Okay.  Let me double-check something.  Anything
4 from either side before I go ahead and dismiss them?
5  MS. PAYERLE:  No, Your Honor.
6  MR. FERGUSON:  No, Your Honor.
7  THE COURT:  All right.  Okay, folks.  Try to be
8 in there at -- right at nine o'clock.  We'll be in there a
9 few minutes before, and we'll pick it up at that time.
10  (Jury out at 5:18 p.m.)
11  THE COURT:  Okay.  We'll go ahead and adjourn
12 court, but if you would, please, just give the jurors a few
13 minutes to clear the floor before you leave.  You can leave
14 anything you want in here.  The doors will be locked and, of
15 course, we won't have any other cases tomorrow.  All right.
16 Okay.
17  MS. PAYERLE:  Thank you.
18  MR. FERGUSON:  Thank you.
19  THE COURT:  Let's go ahead and adjourn court.
20  (Adjournment.)
21
22
23
24
25

**UNREDACTED TRANSCRIPT**

# C E R T I F I C A T E

I, TINA DuBOSE GIBSON, do hereby certify that the foregoing 7 pages are, to the best of my knowledge, skill and abilities, a true and accurate transcript from my stenotype notes of the trial hearing held on the 27th day of March, 2023, in the matter of:

UNITED STATES OF AMERICA

vs.

JEFFREY W. YOUNG, JR.

Dated this 28th day of March, 2023.

S/Tina DuBose Gibson

_____
TINA DuBOSE GIBSON, RPR
Official Court Reporter
United States District Court
Western District of Tennessee

**UNREDACTED TRANSCRIPT**