1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

_____
                              |
UNITED STATES OF AMERICA,      |
                              |
            Plaintiff,         |
                              |
vs.                            |   NO. 19-CR-10040
                              |
JEFFREY W. YOUNG, JR.,         |
                              |
            Defendant.         |
_____|


TRANSCRIPT OF THE JURY TRIAL

BEFORE THE HONORABLE JOHN T. FOWLKES

AFTERNOON SESSION


FRIDAY

MARCH 31, 2023


TINA DuBOSE GIBSON, RPR
OFFICIAL REPORTER
FOURTH FLOOR FEDERAL BUILDING
MEMPHIS, TENNESSEE 38103

**UNREDACTED TRANSCRIPT**

1           A P P E A R A N C E S

2

3       Appearing on behalf of the Government:

4           KATHERINE PAYERLE
            ANDREW PENNEBAKER
5           United States Department of Justice
            Fraud Section
6           1400 New York Avenue, NW
            Washington, DC 20530
7           (202) 341-4227
            katherine.payerle@usdoj.gov
8           andrew.pennebaker@usdoj.gov

9

        Appearing on behalf of the Defendant:
10
            CLAIBORNE H. FERGUSON
11          RAMON DAMAS
            The Claiborne Ferguson Law Firm, PA
12          294 Washington Avenue
            Memphis, Tennessee 38103
13          (901) 529-6400
            claiborne@midsouthcriminaldefense.com
14          ramon@midsouthcriminaldefense.com

15

16

17

18

19

20

21

22

23

24

25

**UNREDACTED TRANSCRIPT**

```
 1                        FRIDAY

 2                     MARCH 31, 2023

 3              ----------------------

 4

 5           THE COURT:  Okay.  Anything before we bring in

 6   the jurors?

 7           MS. PAYERLE:  No, Your Honor.

 8           MR. FERGUSON:  No, Your Honor.

 9           THE COURT:  This is going to be the most

10   exhilarating part of the trial.

11           MS. PAYERLE:  Yes, Your Honor.

12           THE COURT:  All right.  Bring them in, please.

13                (Jury in at 1:05 p.m.)

14           THE COURT:  Okay, ladies and gentlemen.  I hope

15   you enjoyed lunch.  I hope you didn't eat too much and fall

16   asleep because of the next portion of the trial.  Seriously,

17   the last thing before you begin your deliberations are the

18   closing instructions.  I'm going to read them.  Please listen

19   carefully.  About 25 pages I have to read plus the verdict

20   form.  But understand you will have the instructions with you

21   when you go back to deliberate.

22           It's important to listen now as I go through

23   them.  But they will be there for you in order to refer to

24   them for certain law that you may need.  A lot of these

25   you've heard already.  You'll hear them again.  And then
```

**UNREDACTED TRANSCRIPT**

1    there are quite a few additional ones, once I had an

2    opportunity to talk to the lawyers and listen to all the

3    proof.  So let's go ahead and get to it and get it done.

4              This is United States v. Jeffrey Young.  Closing

5    instructions.  The evidence in this case has been completed,

6    and it is my duty now to instruct you as to the law.  The law

7    applicable to this case is stated in these instructions.  And

8    it is your duty to carefully consider all of them.  The order

9    in which these instructions are given is not an indication of

10   their relative importance.  You should not single out one or

11   more of them to the exclusion of others, but you should

12   consider each one in the light of and in harmony with the

13   others.

14             You are the exclusive judges of the facts in this

15   case.  Also, you are the exclusive judges of the law under

16   the direction of this Court.  You should apply the law to the

17   facts in deciding the case.  And you should consider all of

18   the evidence in light of your own observations and experience

19   in life.

20             The indictment in this case is a formal written

21   accusation charging the defendant with various crimes.  It is

22   not evidence against the defendant, and it does not create

23   any inference of guilt.  It is just the formal way that the

24   Government tells the defendant what crime he is accused of

25   committing.  It does not even raise any suspicion of guilt.

**UNREDACTED TRANSCRIPT**

 1  Because, as you know, the defendant has pled not guilty to

 2  the crimes charged in the indictment.

 3          At times during the trial, I have ruled upon the

 4  admissibility of evidence.  You must not concern yourself

 5  with these rulings.  Neither by such rulings, these

 6  instructions or any remarks, which I have made, do I mean to

 7  indicate any opinion as to the facts or what your verdict

 8  should be.

 9          Statements, arguments, and remarks of counsel are

10  intended to help you in understanding the evidence and

11  applying the law, but they are not evidence.  If any

12  statements were made that you believe are not supported by

13  the evidence, you should disregard them.  And you must make

14  your decision based only on the evidence that you saw and

15  heard here in the courtroom.  Do not let any rumors,

16  suspicions, or anything else that you may have seen or heard

17  outside of the courtroom to influence your decision in any

18  way.

19          The evidence in this case includes only what the

20  witnesses said while they were testifying under oath, the

21  exhibits that I allowed into evidence, and the stipulations

22  of the parties.  Nothing else is evidence.  The lawyers'

23  statements and arguments are not evidence.  Their rulings and

24  objections to my legal rulings are not evidence.  And even my

25  comments and questions aren't evidence.

**UNREDACTED TRANSCRIPT**

1          Presumption of innocence, burden of proof, and

2    reasonable doubt.  Defendant starts the trial with a clean

3    slate with no evidence at all against him, and the law

4    presumes that he is innocent.  This presumption of innocence

5    stays with him unless the Government presents evidence here

6    in court that overcomes the presumption and convinces you

7    beyond reasonable doubt that he is guilty.  It is, therefore,

8    incumbent upon the Government, before you can convict the

9    defendant, to establish to your satisfaction beyond

10   reasonable doubt that the crimes charged in the indictment

11   have been committed, that the same were committed within the

12   Western District of Tennessee before the indictment was

13   returned, and that the defendant on trial committed the

14   crimes in such a manner that would make him guilty under the

15   law as defined and explained to you.

16          The Government has the burden of proving the

17   guilt of the defendant beyond reasonable doubt.  And this

18   burden never shifts, but remains on the Government throughout

19   the trial of this case.  Defendant is not required to testify

20   or prove his innocence in any way.  This means that even

21   though the defendant has a right to present evidence, he has

22   no obligation to do so or to prove to you in any way that he

23   is innocent.  It's up to the Government to prove that he is

24   guilty, and this burden stays on the Government from start to

25   finish.  You must find the defendant not guilty unless the

**UNREDACTED TRANSCRIPT**

1  Government convinces you beyond reasonable doubt that he is

2  guilty.

3          Now, while the Government's burden of proof is a

4  strict or heavy burden, it is not necessary that the

5  defendant's guilt be proved beyond all possible doubt.  It is

6  only required that the Government's proof exclude any

7  reasonable doubt.  Possible doubts or doubts based purely on

8  speculation are not reasonable doubts.  A reasonable doubt is

9  a real doubt, a doubt that is based on reason and common

10  sense after careful and impartial consideration of all of the

11  evidence.  It may arise from the evidence or lack of evidence

12  or the nature of the evidence.

13          Proof beyond reasonable doubt means proof, which

14  is so convincing, that you would not hesitate to rely and act

15  upon it in making the most important decisions in your own

16  lives.  If you are convinced that the Government has proved

17  the defendant guilty beyond reasonable doubt, say so by

18  returning a guilty verdict.  If, on the other hand, you are

19  not convinced, say so by returning a verdict of not guilty.

20          Credibility of witnesses.  You should consider

21  all the evidence presented in this case by the Government and

22  the defendant and give it a full, fair, and impartial

23  consideration.  Part of your responsibility is to determine

24  what the facts are based on what you heard from the

25  witnesses.  If there are conflicts in the testimony of

**UNREDACTED TRANSCRIPT**

different witnesses, it is your duty to reconcile them if you can.  For the law presumes that every witness has told the truth.

But when you cannot reconcile the statements of different witnesses, then you must decide which witnesses or witness you believe and how important his or her testimony was.  You do not have to accept or reject everything a witness said.  You're free to believe all, none, or any part of any person's testimony, but you should act reasonably and carefully in making these decisions.

In forming your opinion as to which witnesses you believe, let me suggest some things for you to consider in evaluating each witness' testimony.  Ask yourself if the witness was able to clearly see or hear the events. Sometimes even an honest witness may not have been able to see or hear what was happening and may make a mistake.

Ask yourself how good the witness' memory seemed to be.  Did the witness seem able to accurately remember what happened.  Ask yourself if there was anything else that may have interfered with the witness' ability to perceive or remember the events.  Ask yourself how important -- ask yourself how the witness acted while testifying.  Did the witness appear honest or did the witness appear to be lying. Ask yourself if the witness had any relationship to the Government or to the defendant or anything to gain or lose

1    from the case.  Anything that might influence the witness'

2    testimony.  Ask yourself if the witness had any bias,

3    prejudice, or reason for testifying that might cause the

4    witness to lie or slant the testimony in favor of one side or

5    the other.  Ask yourself if the witness testified

6    inconsistently while on the witness stand or if the witness

7    said or did something or failed to say or failed to do

8    something at any other time that is inconsistent with what

9    the witness said while testifying.

10              If you believe that the witness was inconsistent,

11   ask yourself if this -- if this makes the witness' testimony

12   less believable.  Sometimes it may, and other times it may

13   not.  Consider whether the inconsistency was about something

14   important or about some unimportant detail, and ask yourself

15   if it seemed to be an innocent mistake or if it seemed

16   deliberate.

17              Also ask yourself how believable the witness'

18   testimony was in light of all the other evidence in the case.

19   Was the witness' testimony supported or contradicted by other

20   evidence that you found believable.  Sometimes the testimony

21   of different witnesses just will not agree.  And you must

22   decide which testimony you accept.

23              You should think about whether the disagreement

24   involves something important or not, and whether you think

25   that someone is lying or is just simply mistaken.  Remember,

**UNREDACTED TRANSCRIPT**

1   people see and hear things differently.  And witnesses may

2   testify honestly, but simply be wrong about what they thought

3   they saw or remembered.  Also, two honest people who witness

4   the same event may not describe it in exactly the same way.

5   It's a good idea to think about which testimony agrees best

6   with all the other evidence.

7   　　　　　Also, the number of witnesses testifying

8   concerning any particular dispute is not controlling.  You

9   may decide that the testimony of a smaller number of

10  witnesses concerning any fact in dispute is more believable

11  than the testimony of a larger number of witnesses to the

12  contrary.  These are only some of the things that you may

13  consider in deciding how believable each witness was.

14  　　　　　You may also consider other things that you think

15  shed light on the witness' believability.  Use your common

16  sense and your everyday experience in dealing with people,

17  and then decide what testimony you believe and how much

18  weight you think it deserves.

19  　　　　　Remember, we had an expert witness or an opinion

20  witness.  During the trial, you heard the opinion testimony

21  of Dr. Tricia Aultman, who is described as an opinion or

22  expert witness.  The rules of evidence provide that if

23  scientific, technical, or other specialized knowledge might

24  assist the jury in understanding the evidence or in

25  determining a fact in issue, a witness qualified as an

**UNREDACTED TRANSCRIPT**

1  opinion or expert witness by means of special knowledge,

2  skill, or experience may testify and state his or her

3  opinions concerning such matters and give reasons for their

4  testimony.

5          Merely because an opinion or expert witness has

6  expressed an opinion does not mean, however, that you are

7  bound to accept the opinion.  You must decide whether the

8  witness' opinions were based on sound reasons, judgment, and

9  information.  Part of that decision will depend upon your

10  judgment about whether the witness' background, training, and

11  experience is sufficient for the witness to give the opinion

12  that you heard.  The same as with any other witness, it is up

13  to you to decide the credibility of such witnesses and

14  whether you believe this test- -- believe the testimony and

15  choose to rely upon it.

16          Summaries that were introduced into evidence.

17  During the trial you have seen or heard evidence in the form

18  of data summaries, charts, drawings, e-mail exchanges, and

19  similar material.  These summaries were admitted into

20  evidence in addition to the material they summarized because

21  they may assist you in understanding the evidence that has

22  been presented.  But the summaries themselves are not the

23  evidence of the material they summarize.  And they are only

24  valid and reliable as the underlying material they summarize.

25          Separately charged individuals.  Two of the

**UNREDACTED TRANSCRIPT**

1   persons allegedly involved in these events, Alexander

2   Alperovich and Andrew Rudin, are not on trial.  This does not

3   matter.  There's no requirement that all members of a

4   criminal episode be charged, prosecuted, or tried in one

5   proceeding, nor is there any requirement that the names of

6   any others involved be known.  An indictment can charge a

7   defendant with a crime involving persons whose names are not

8   known; whether they are named or not does not matter.

9           Testimony of accomplice.  You've heard the

10  testimony of witnesses, Dr. Alexander Alperovich and Kristie

11  Gutgsell.  I'm going to mess up these names throughout.  Just

12  bear with me on that.  Gutgsell.  You've also heard that

13  Dr. Alperovich and Ms. Gutgsell entered into cooperation

14  agreements with the Government where they were allowed to

15  enter guilty pleas to lesser charges.

16          The cooperation agreements also require that both

17  provide truthful testimony during the trial.  Because of

18  their cooperation and testimony, they helped to receive

19  additional consideration in the form of a reduced -- a

20  reduction in their sentence at their sentencing hearing.  It

21  is permissible for the Government to enter into such

22  agreements, but you should consider Dr. Alperovich and

23  Ms. Gutgsell's testimony with more caution than the testimony

24  of other witnesses.  Consider whether their testimony may

25  have been influenced by the agreements that they entered into

**UNREDACTED TRANSCRIPT**

1   with the Government.  Also, the fact that Dr. Alperovich and

2   Ms. Gutgsell pleaded guilty is not evidence that the

3   defendant is guilty.  And you cannot consider this against

4   the defendant in any way.

5          Lastly, do not convict the defendant based on the

6   unsupported testimony of such witnesses standing alone,

7   unless you believe their testimony beyond reasonable doubt.

8          Testimony of drug addict.  You heard the

9   testimony of Hope Rogers and Tricia Stansell.  You have also

10  heard that they were using controlled substances during the

11  time that they testified about.  It is permissible for the

12  Government to use such witnesses, but you should consider

13  their testimony more -- with more caution than the testimony

14  of other witnesses.

15         An addict may have a constant need for drugs and

16  for money to support buying drugs and may also have a greater

17  fear of imprisonment because of a supply of the drugs that

18  may be cut off.  Think about these things and consider

19  whether their testimony may have been influenced by their

20  addiction.  Do not convict the defendant based upon

21  unsupported testimony of such witnesses standing alone unless

22  you believe that testimony beyond reasonable doubt.

23         Prior convictions.  I think a couple of them

24  indicated they have prior convictions.  You heard the

25  testimony of witness, Hope Rogers, who has previously been

1   convicted of a crime.  This earlier conviction was brought to

2   your attention only as one way of helping you decide how

3   believable her testimony was.  Do not use it for any other

4   purpose during the trial.  It is not evidence of anything

5   else.

6          And statements by the defendant.  You've heard

7   evidence that the defendant made statements to the Nursing

8   Board for the State of Tennessee during interviews conducted

9   by that Board in which the Government claims he admitted

10  certain facts but denied others, which the Government

11  believes were later proven to be false.  It is for you to

12  decide whether the defendant made any of the statements and,

13  if so, how much weight they deserve.

14         In making these decisions, you should consider

15  all the evidence about the statements, including the

16  circumstances under which the defendant allegedly made them.

17  You may not convict the defendant solely upon his own

18  uncorroborated statement or admission to the Nursing Board.

19         Identification.  The Government has the burden of

20  proving the elements of each of the crimes charged, and this

21  burden specifically includes the identity of the defendant as

22  the person who committed the crimes for which he is on trial.

23  The identity of the defendant must be proven in the case on

24  the part of the Government to your satisfaction beyond

25  reasonable doubt.  In other words, the burden of proof is on

**UNREDACTED TRANSCRIPT**

1  the Government to show that the defendant now on trial before

2  you is the identical person who committed the alleged crimes

3  with which he is charged.

4          In considering the identity of a person, you may

5  take into consideration all the facts and circumstances in

6  the case.  The Court further charges you that if you are

7  satisfied from the whole proof in the case beyond reasonable

8  doubt that the defendant committed the crimes charged against

9  him, and you are satisfied beyond reasonable doubt that he

10  has been identified as a person who committed the crimes

11  charged, then it will be your duty to convict him.  On the

12  other hand, if you are not satisfied with identity from the

13  proof or if you have a reasonable doubt as to whether he has

14  been identified from the whole body of proof in this case,

15  then you should return a verdict of not guilty.

16          Defendant not testifying.  The defendant has not

17  taken the stand to testify as a witness, but you shall place

18  no significance on this fact.  The defendant is presumed

19  innocent of the charges in the indictment, and the burden is

20  on the Government to prove his guilt beyond reasonable doubt.

21  He is not required to take the stand on his own behalf, and

22  his election not to do so cannot be considered for any

23  purpose against him, nor can any inference be drawn from that

24  fact.

25          Transcriptions of the recordings.  You have

**UNREDACTED TRANSCRIPT**

viewed some video recordings that were received in evidence,
and you were shown subtitles on the recordings.  Keep in mind
that the subtitles are not evidence.  They were shown to you
only as a guide to help you follow what was being said.  The
video recording itself is the evidence.  If you notice any
differences between what you heard on the recording and what
you read on the subtitles, then you must rely on what you
heard and not what you read.  And if you could not hear or
understand certain parts of the recording, you must ignore
the subtitles as far as those parts are concerned.

In the indictment, the word "and" in the
indictment and the instructions.  Although the indictment
charges that the statute was violated by acts that were
connected with the word "and", it is sufficient that the
evidence establishes a violation of the statute by any one of
the acts charged.  Of course, this must be proven beyond
reasonable doubt.

On or about.  You will note that the indictment
charges the offenses were committed on or about certain
dates.  The Government does not have to prove that the crimes
happened on an exact date.  But the Government must prove
that the crimes happened reasonably close to those dates.

When you heard before, direct and circumstantial
evidence.  One type of evidence is called direct evidence,
and the other is called circumstantial.  Direct evidence is

**UNREDACTED TRANSCRIPT**

1  those parts of testimony admitted in court which referred to

2  what happened and was testified to by witnesses who saw or

3  heard or otherwise sensed what happened firsthand.  If a

4  witness testified about what they themselves saw or heard or

5  otherwise sensed, they presented direct evidence.

6          Circumstantial evidence is all the testimony and

7  exhibits which give you clues about what happened in an

8  indirect way.  It is simply a chain of circumstances that

9  indirectly proves a fact.  It consists of all the evidence,

10  which is not direct evidence.  Do not assume that direct

11  evidence is always better than circumstantial.

12          According to our law, direct evidence is not

13  necessarily better than circumstantial.  Either type of

14  evidence can prove a fact if it is convincing enough.  And

15  the Court instructs you that in considering the evidence, you

16  may consider both kinds of evidence, direct and

17  circumstantial, which are of equal value under our law.

18          The parties entered into a stipulation.  During

19  the trial, the parties presented and entered into evidence a

20  stipulation.  A stipulation is simply an agreement between

21  the parties regarding an evidentiary matter.  Merely because

22  a stipulation was presented to you and introduced into

23  evidence does not mean that you are bound to accept the

24  contents of the stipulation as true.

25          The same as with any other piece of evidence, it

**UNREDACTED TRANSCRIPT**

1   is up to you to decide the value of the stipulation and

2   whether you choose to rely upon it.  You are directed to give

3   the stipulation such weight as you think it deserves along

4   with all the other evidence in the case.

5          Your notes.  Some of you took notes.  Members of

6   the jury, you've been allowed to take notes in this case.

7   The Court charges you that these notes are for your

8   individual use only, and you should not use said notes

9   directly or indirectly, explicitly or implicitly to persuade

10  other jurors as to the accuracy of said notes.  They should

11  not be shown to others, nor compared, nor referred to in any

12  way as authority, but should be used privately by the maker

13  of said notes as an aid to his or her individual memory.

14         Your deliberations.  The verdict must represent

15  the considered judgment of each juror.  In order to return a

16  verdict, it is necessary that each juror agree thereto.  Your

17  verdict must be unanimous.  It is your duty as jurors to

18  consult with one another and to deliberate with a view

19  towards reaching an agreement if you can do so without

20  violence to individual judgment.  Each of you must decide

21  this case for yourselves, but do so only after an impartial

22  consideration of the evidence with your fellow jurors.

23         In the course of your deliberations, do not

24  hesitate to reexamine your own views and change your opinion

25  if convinced it is erroneous.  But do not surrender your

**UNREDACTED TRANSCRIPT**

honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors for the mere purpose of returning a verdict.

Punishment.  If you decide that the Government has proved the defendant guilty, then it would be my job, not yours, to decide the appropriate punishment.  It would violate your oaths as jurors to even consider punishment in deciding your verdict.  Your job is to consider the evidence introduced during the trial and decide if the Government has proved the defendant guilty beyond reasonable doubt.

The law applicable to the charges in the indictment.  Separate consideration, a single defendant charged multiple crimes.  The indictment charges the defendant with one count of conspiracy with others to unlawfully distribute controlled substances, 13 counts of unlawful distribution of controlled substance, and one count of maintaining a drug-involved premises.  All of these charges were alleged to be committed outside the usual course of professional practice and without a legitimate medical purpose.

The number of charges is no evidence of guilt, and this should not influence your decision in any way.  It is your duty to separately consider the evidence that relates to each charge, and return a separate verdict for each one. For each charge, you must decide whether the Government has

1  presented proof beyond reasonable doubt that the defendant is

2  guilty of that particular charge.

3        Your decision on one charge, whether it is guilty

4  or not guilty, should not influence your decision on any

5  other charges.  You must be convinced that the Government has

6  proved all of these elements as to each count beyond

7  reasonable doubt in order to find the defendant guilty.

8        Count 1 of the indictment charges the defendant

9  with conspiracy to distribute and dispense controlled

10  substances to wit:  Hydrocodone, oxycodone, and fentanyl.

11  Not for a legitimate medical purposes and outside of the

12  usual course of professional practice in violation of federal

13  law.

14        For you to find the defendant guilty of this

15  offense, the Government must prove each of the following

16  elements beyond reasonable doubt:  One, that two or more

17  persons conspired or agreed to knowingly or intentionally

18  distribute controlled substances through prescriptions that

19  were not issued for a legitimate medical purpose by a

20  practitioner acting within the usual course of professional

21  practice.

22        And, two, that the defendant, knowing that such

23  prescriptions would not be issued for a legitimate medical

24  purpose by a practitioner acting within the usual course of

25  professional practice voluntarily joined the conspiracy with

1   knowledge of its purpose.

2           Conspiracy generally.  As I told you before,

3   conspiracy is an agreement between two or more people to join

4   together to accomplish some unlawful purpose.  It is a kind

5   of partnership in crime in which each member becomes the

6   agent of every other member.  It does not matter whether or

7   not the conspiracy was ultimately successful.  The essence of

8   the offense is that two or more people have combined or

9   mutually agreed to do something illegal.

10          For you to find the defendant guilty of

11   conspiracy, you also must be convinced beyond reasonable

12   doubt that the Government has proven each of the following

13   elements:  First, that two or more persons agreed to try to

14   accomplish a common and unlawful plan, as charged in Count 1

15   of the indictment; and, two, that the defendant knew the

16   unlawful purpose of the agreement and joined it willfully.

17   That is, with the intent to further the unlawful purpose.

18          Several definitions.  An act is done -- when an

19   act is done unlawfully, it means that the actions were

20   contrary to or against the law.  The terms knowingly,

21   willfully, and intentionally mean voluntarily and not because

22   of mistake or accident.  Ordinarily, there is no way that a

23   defendant's state of mind can be proved directly because no

24   one can read another person's mind and tell what that person

25   is thinking.  But a defendant's state of mind can be proved

**UNREDACTED TRANSCRIPT**

1   indirectly by surrounding circumstances.

2           This includes things like what the defendant

3   said, what the defendant did, how the defendant acted, and

4   any other facts or circumstances in evidence that show what

5   was in the defendant's mind.  You may also consider the

6   natural and probable result of any act that the defendant

7   knowingly did, and whether it is reasonable to conclude that

8   the defendant intended those results.  This, of course, is

9   all for you to decide.

10          The term dispense means to deliver a controlled

11  substance to an ultimate user by or pursuant to a lawful

12  order of a practitioner, including the prescribing and

13  administering of a controlled substance.  The term dispenser

14  means a practitioner who so delivers a controlled substance

15  to an ultimate user.

16          And the term distribute means the defendant

17  delivered or transferred a controlled substance.  The term

18  distribute includes the actual or constructive transfer of a

19  controlled substance, including the sale of a controlled

20  substance.  The term distribute also includes the prescribing

21  and administering of a controlled substance.  And I instruct

22  you at this time that hydrocodone, oxycodone, and fentanyl

23  are controlled substances under federal law.

24          The term a legitimate medical purpose by an

25  individual practitioner acting in the usual course of his

**UNREDACTED TRANSCRIPT**

1  professional practice means acting in accordance with

2  generally recognized and accepted professional standards in

3  the State of Tennessee and the field in which the

4  individual -- in the field with which the individual

5  practices.  In considering whether the defendant acted for a

6  legitimate medical purpose in the usual course of

7  professional practice, you may consider all of the

8  defendant's actions and the circumstances surrounding those

9  actions.

10         Prescriptions.  Licensed physicians and nurse

11  practitioners are authorized to distribute controlled

12  substances through valid prescriptions.  A prescription is

13  authorized only when it is issued for a legitimate medical

14  purpose by an individual practitioner acting in the usual

15  course of professional practice.  The term practitioner

16  includes a physician or a nurse that is licensed by the State

17  Tennessee to distribute a controlled substance in the usual

18  course of professional practice.

19         The usual course of professional practice.  The

20  term usual course of professional practice means a course of

21  treatment in accordance with a generally recognized and

22  accepted standard of medical practice.  You have heard or

23  seen exhibits about what may constitute the usual course of

24  professional practice for prescribing controlled substances

25  in the State of Tennessee, and you are to weigh that evidence

1   the same way you would weigh any other evidence in this case.

2            In considering whether the defendant or an

3   alleged conspirator issued a prescription with a legitimate

4   medical purpose in the usual course of professional practice,

5   you may consider all the practitioners' actions and

6   circumstances surrounding.  For you to find the defendant

7   guilty, the Government must prove to you beyond reasonable

8   doubt that the defendant knowingly and voluntarily joined the

9   conspiracy or agreement and knew or intended that the

10  prescriptions at issue were not written for a legitimate

11  medical purpose by a practitioner acting in the usual course

12  of professional practice.

13           Good faith.  A practitioner may not be convicted

14  of unlawful distribution of controlled substances.  When he

15  distributes controlled substances in good faith to patients

16  in the regular course of professional practice -- that should

17  be usual course of professional practice.  But only the

18  lawful acts of a practitioner are exempted from prosecution

19  under the law.  A controlled substance is distributed by a

20  practitioner in the usual course of his or her professional

21  practice if the substance is distributed in good faith while

22  medically treating a patient.

23           Good faith is not merely a practitioner's sincere

24  intention towards the people who come to see him, but rather

25  involves his sincerity in attempting to conduct himself in

**UNREDACTED TRANSCRIPT**

accordance with the standards of medical practice generally

recognized and accepted in the State of Tennessee.

Thus, good faith, in this context, means an

honest effort to prescribe substances for a patient's

condition in accordance with the standards of medical

practice generally recommended and accepted in the State of

Tennessee.

However, practitioners who act outside the usual

course of professional practice and prescribe or distribute

controlled substances for no legitimate medical purpose may

be guilty of unlawful distribution of controlled substances.

This means that once the defendant meets the burden of

producing evidence that he -- that his or her conduct was

authorized, the Government must then prove beyond reasonable

doubt that the defendant knowingly or intentionally acted in

an unauthorized manner.  Negligence, carelessness, or

foolishness are not sufficient to convict.  Again, this is

all for you to decide.

Deliberate ignorance.  No one can avoid

responsibility for a crime by deliberately ignoring the

obvious.  If you are convinced that the defendant

deliberately ignored a high probability that the

prescriptions he issued or agreed would be issued were not

issued for a legitimate medical purpose by a practitioner

acting within the usual course of professional practice, then

**UNREDACTED TRANSCRIPT**

you may find that he knew that the prescriptions he issued or agreed would be issued were not issued for legitimate medical purposes.

But to find this, you must be convinced beyond reasonable doubt that the defendant was aware of the high probability that the prescriptions were not issued for a legitimate medical purpose by a practitioner acting within the usual course of professional practice, and that the defendant deliberately closed his eyes to what was obvious. Carelessness, negligence, or foolishness on the defendant's part is not the same as knowledge and would not be enough to convict.  And, again, this is -- of course, is for you to decide.

Now, Counts 2 through 7 of the indictment charge the defendant with unlawfully distributing oxycodone and hydrocodone to a pregnant woman, that is, patient Hope Rogers, on six specific occasions in violation of federal law.

For you to find the defendant guilty of this charge -- of these charges, the Government must prove each of the following elements beyond reasonable doubt for each count:  One, that the defendant knowingly and intentionally distributed oxycodone or hydrocodone; two, that the defendant knew at the time of the distribution that the substances were controlled substances; three, that the defendant knowingly

1    and intentionally distributed the substances without a

2    legitimate medical purpose and outside the usual course of

3    professional practice; and, four, that the defendant knew

4    that patient Hope Rogers was pregnant at the time.

5              Again, I instruct you that those controlled

6    substances, oxycodone and hydrocodone, are controlled

7    substances under federal law.

8              Counts 8 through 14 of the indictment charge the

9    defendant with unlawfully distributing and dispensing

10   controlled substances, specifically hydrocodone and

11   oxycodone, not for legitimate medical purposes and outside of

12   the usual course of professional practice, in violation of

13   federal law.

14             If you find the defendant guilty of these

15   charges, the Government must prove beyond reasonable doubt

16   the following elements:  One, that the defendant knowingly

17   and intentionally distributed oxycodone and hydrocodone; two,

18   that the defendant knew at the time of the distribution that

19   the substances were controlled substances; and, three, that

20   the defendant knowingly and intentionally distributed and

21   dispensed these controlled substances without a legitimate

22   medical purpose and outside the usual course of professional

23   practice.

24             Finally, Count 15 of the indictment charges the

25   defendant with knowingly using and maintaining a place named

**UNREDACTED TRANSCRIPT**

PREVENTAGENIX at 162 Murray Guard Drive, Jackson, Tennessee,

for the purpose of distributing control II -- Schedule II

controlled substances outside the usual course of

professional practice and without a legitimate medical

purpose.

For you to find the defendant guilty of these

charges, the Government must prove the following elements,

again, beyond reasonable doubt:  One, that the defendant

knowingly and intentionally opened, leased, used, and

maintained a place named PREVENTAGENIX; and, two, that the

defendant did so for the purpose of unlawfully distributing

and dispensing a controlled substance.

The phrase for the purpose of unlawfully

distributing a controlled substance means that the drug

distribution was a significant or important reason for which

the defendant opened, leased, used, or maintained the

premises.  But the Government is not required to prove that

the drug distribution was the defendant's primary or sole

purpose for doing so.  In other words, the Government is not

required to only prove that drug activity was a significant

reason why the defendant opened, leased, used, and maintained

the place.

If you find, from your consideration, all of the

evidence, from all of the evidence that the Government has

proved each of these elements beyond reasonable doubt that

**UNREDACTED TRANSCRIPT**

1   the defendant opened, leased, used, or maintained a

2   drug-involved premise, then you should find the defendant

3   guilty of maintaining a drug-involved premises.  If, on the

4   other hand, you find from your consideration of the evidence

5   that the Government has failed to prove any one of these

6   elements beyond reasonable doubt, then you should find the

7   defendant not guilty.

8           Your deliberations.  The verdict must represent

9   the considered judgment of each juror.  I think I have read

10  this one to you.  It is your duty as jurors to consult with

11  one another and deliberate towards a view of reaching an

12  agreement if you can do so without violence to individual

13  judgment.  Each of you must decide this case for yourselves,

14  but do so only after an impartial consideration of the

15  evidence with your fellow jurors.

16          In the course of your deliberations, do not

17  hesitate to reexamine your own views, and change your opinion

18  if convinced it is erroneous.  But do not surrender your

19  honest conviction as to the weight and effect of the evidence

20  solely because of the opinion of your fellow jurors or for

21  the mere purpose of returning a verdict.

22          When you go to the jury room, you should first

23  select one of your members to act as foreperson.  The

24  foreperson will preside over your deliberations and speak for

25  you here in court.  If you should desire to communicate with

**UNREDACTED TRANSCRIPT**

1   me at any time, please write down your message or question,

2   whatever it is, and pass the note to one of our court

3   security officers who will bring it to my attention.  I will

4   respond as promptly as possible either in writing or by

5   having you return to the courtroom so I can address you

6   orally.

7          I caution you, however, with regard to any

8   message or question that you might send, that you should not

9   tell me your numerical division at the time.  I don't need to

10  know if you're a six/six split, seven/five, or eleven/one.

11         Now, a verdict form has been prepared and will be

12  placed in the folder along with these instructions and handed

13  to you by our court security officer or courtroom deputy.  At

14  any time that you are not deliberating, lunch, break,

15  whatever, the folder and the verdict form should be delivered

16  to our court security officer who will deliver it to the

17  courtroom clerk for safekeeping.  You will take the verdict

18  form to the jury room and when you have reached unanimous

19  agreement, you will have your foreperson fill in the verdict

20  form, date and sign it.

21         I'll have a copy of these instructions, the

22  indictment, and the exhibits in the case sent back to you in

23  the jury room.

24         Remember, you can have no sympathy or prejudice

25  or allow anything but the law and the evidence to have any

**UNREDACTED TRANSCRIPT**

influence upon your verdict, and you must render your verdict

with absolute fairness and impartiality.

Therefore, take the case, consider all the facts

and circumstances fairly and impartially, and report to this

Court such verdict as truth dictates and justice demands.  In

just a minute, you will be able to retire and begin your

deliberations.  That was a long one.

As I said, jury -- a verdict form, as I think the

lawyers discussed, is going to be actually attached at the

rear or the end of the instructions.  It's pretty simple.

There's 15 counts.  The verbiage there just sets out, for an

example, we the -- we find the defendant, Jeffrey Young, as

to Count 1 conspiracy, and there's a blank there, also the

words guilty or not guilty.  It's pretty simple.  Whoever the

foreperson is will fill out the form, circle guilty or not

guilty or write it in the blank, but just clearly communicate

to me what your unanimous verdict is.  And there's a

signature space there for each of the 15 counts.

Now, when you go back to your jury room, you'll

have all the evidence there with you.  I think you know that.

Most of it is documentary.  But there were playing of some

videos, and things like that.  If you desire, you don't have

to, but if you desire to view those, let us know, and we will

make arrangements for some type of device to be brought back

there for you to view them.  Don't have to but if that's your

1  request, we can accommodate.  So you have all the exhibits

2  back there when you go to start your deliberations.

3          This is important, all 12 final jurors have to be

4  involved in all of the deliberations.  You say, of course we

5  will.  That means that before you can start deliberating and

6  talking about the case, there have to be 12 people around the

7  table back there along with the exhibits, the instructions,

8  and the indictment.  So when you're discussing it, if someone

9  stands up and steps into the restroom, all discussions and

10  deliberations on the case must cease until that person comes

11  back.  Remember, all 12 must be involved in all of the

12  deliberations.  Okay.  All right.

13          That will be up to y'all from this point forward

14  however you want to take recesses and things like that.  But

15  my job now is to look at the 12 jurors.  I know it's

16  difficult listening to all that.  I don't think anyone fell

17  out and passed out or anything like that.

18          And so the final word is I think our 12 jurors

19  are ready to go ahead and proceed with deliberations and

20  final decisions in the case, which means I turn to our two

21  alternates.  Y'all don't think you served an important part

22  in this trial, but you actually did.  Y'all forced all 12 to

23  come back when they were supposed to.  They may have hung out

24  at the house longer but knew that we had alternates that were

25  going to step in and take their place.  I want to thank you

**UNREDACTED TRANSCRIPT**

1   for your time and service on this case.  I truly appreciate

2   it, and I really mean it when I say that I can't do my job

3   unless good folks come down here and serve on juries.

4            I'm going to ask everyone to step in the jury

5   room, but I'd like to come back and just thank you personally

6   before you be on your way.  Okay.  All right.  Anything

7   before we turn loose the jury - - --

8            MR. FERGUSON:  No.

9            MS. PAYERLE:  No.

10           THE COURT:  -- okay.  All right.  Then I'm going

11  to go ahead and dismiss you to the jury room.  Remember,

12  start deliberations when all the material is brought back to

13  you.  I'll be back to just speak with our alternates in just

14  a few minutes.

15            (Jury out at 1:58 p.m.)

16           THE COURT:  Okay.  I think all of you have

17  probably given your contact information to Mr. Herrin.  I

18  don't require that everyone sit in the courtroom and wait

19  patiently, so -- you know, but as long as he has that contact

20  information, like I say, it's not necessary to be right here.

21  Okay.  All right.  Unless there's anything else?  Yes, ma'am.

22           MS. PAYERLE:  I do have one thing.  Judge, this

23  might be the time to do it.  I have spoken with Mr. Ferguson.

24  On October 2, 2019, which now feels like a very long time

25  ago, this case was pending in Jackson in front of Judge

**UNREDACTED TRANSCRIPT**

1   Breen.  There was a motion to transfer, I guess, venue, but

2   it's the division.  I think -- and there was some concern, I

3   think, the basis of that motion had to do with the -- sort of

4   the defendant's sort of fame in the community and the people

5   who knew him.

6                   THE COURT:  Right.

7                   MS. PAYERLE:  And as a result, Judge Breen

8   implemented an order saying -- and I'm just reading from the

9   document here:  The Court directs all counsel to refrain from

10  having contact with the media in any form and not to send or

11  make comments to the public regarding this case from this

12  point forward.

13                  I wonder if we could just move or jointly move to

14  lift that order at this point because the jury is now out and

15  sort of in the interest of public access and so forth, it

16  just seems appropriate.

17                  THE COURT:  Mr. Ferguson?

18                  MR. FERGUSON:  I don't have any objection.

19                  THE COURT:  All right.  Then we will remove the

20  gag order as it were, and so y'all can, as you normally

21  would, discuss the case with whomever you choose.

22                  MS. PAYERLE:  Thank you, Judge.

23                  MR. FERGUSON:  Thank you, Your Honor.

24                  THE COURT:  Okay.  We'll be in recess.

25                  (Deliberation 2:00 p.m. to 4:07 p.m.)

**UNREDACTED TRANSCRIPT**

1          THE COURT:  Okay, everybody.  They want a -- you

2    know, a video player of some type -- I think y'all saw this

3    too -- to view something, which is not a problem.  The real

4    question why I've gathered everyone together is whether I'm

5    just going to check with the jurors to see if there's any

6    heartburn about, you know, staying later.  It's, what, four

7    o'clock, a little after four now, and normally I let them go

8    to 5:30, at least, maybe even six.  But the weather -- the

9    National Weather Service has put us in Category 5, is my

10   understanding, which is probably the highest that it goes.

11   Folks from DC may not realize that we're right in the middle

12   of tornado alley right now so.  Be that as it may, I'm going

13   to bring them in and talk with them about it.  If they want

14   to continue -- well, before you bring them in, I'm ready to

15   stay, but comments from either side?

16          MS. PAYERLE:  I think we prefer to stay, Your

17   Honor.  We'll be flying back to DC in the morning.

18          THE COURT:  Okay.

19          MR. FERGUSON:  Same here.  I'm here whenever.

20          THE COURT:  All right.  Bring them in, please.

21               (Jury in at 4:08 p.m.)

22          THE COURT:  All right.  Folks, I have a note that

23   says, we need to see a video player.  Who is our foreperson,

24   the person that wrote this (indicating)?

25          Okay.  Is that Mr. ████? Okay.  You are the

**UNREDACTED TRANSCRIPT**

1   foreperson?

2              JUROR:  Yes.

3              THE COURT:  Okay.  It's no problem getting a

4   video player to you for watching whatever you want to, as I

5   told you before.  But the real reason I brought you in here

6   is the weather.  Okay.  A lot of folks have already cleared

7   out of the building.  Normally, we'd work until 5:30, maybe

8   even six, because y'all are deliberating.  I put no pressure

9   on you about how long it's going to take you to make your

10  decision.  That's totally up to you.  But I just kind of need

11  to know if there's any heartburn about staying this extra

12  hour because we all are ready to stay with you, but, you

13  know, that threat of weather is upon us now.

14             You know, I did the thing that experts always do,

15  you know, weather experts always do is look out the window

16  before I came in.  It hadn't started raining yet or anything

17  like that, although there are heavy clouds over there on the

18  west.  So kind of lean over and speak to each other in your

19  ear because if y'all want to go home, I'll call it.  If you

20  want to stay, work, like I say, we normally work until 5:30

21  and maybe even six to reach a decision.  So what's the

22  consensus, I guess?

23             So what's the verdict?  I guess I shouldn't say

24  it like that.  Do you want to stay?

25                  (Jurors nod affirmatively.)

**UNREDACTED TRANSCRIPT**

1      THE COURT:  All right.  Very good.  We'll have

2   video equipment brought back to you so you can view whatever

3   you need.  We'll go ahead and excuse you to the jury room.

4   Continue your deliberations.

5              (Jury out at 4:12 p.m.)

6      THE COURT:  It's big talk for me that we have

7   video equipment that we can take right back to them.  Do we

8   have equipment?

9              CASE MANAGER:  Yes.

10      THE COURT:  Oh, we do.  Okay.  Good.  So we'll be

11   in recess, and we'll see that they get what they need.

12              MS. PAYERLE:  Thank you.

13              MR. FERGUSON:  Thank you.

14              (Deliberation 4:13 p.m. to 4:44 p.m.)

15      THE COURT:  They've indicated to me that the jury

16   has reached a verdict, and we should take a look at the

17   verdict form just to make sure everything is in order.  It's

18   incomplete, though.  So I'm going to bring them in and let

19   them know that and then send them back to continue their

20   deliberations.  Okay.

21      They reached a verdict on several counts but not

22   all of them.  And so, obviously, I don't know if it's

23   oversight the way they marked the forms or what, but I can

24   bring them in and explain that to them and just let them go

25   back to the jury room and complete their deliberations.  It

**UNREDACTED TRANSCRIPT**

1  will just be a couple of minutes or it could be, as I think

2  you know, an hour or even longer.  But that's -- yeah, that's

3  what I discovered, and that's how I'm going to handle it.

4  Any comments, positions from Government?

5              MS. PAYERLE:  No, Your Honor.

6              THE COURT:  Mr. Ferguson?

7              MR. FERGUSON:  No, Your Honor.

8              THE COURT:  All right.  Bring them in, please.

9                   (Jury in at 4:45 p.m.)

10             THE COURT:  Okay, folks.  Good news is that it's

11 not raining yet, so we're still in good stead there.  The

12 deputy clerk, Mr. Herrin, has given me the verdict form, the

13 jacket here.  I always take a look just to make sure

14 everything is in order.  The verdict form is not complete.

15 Okay.  And so I'd like for y'all to go ahead and continue

16 your deliberations concerning it being incomplete.  It may

17 just take a few minutes or maybe you need to deliberate

18 longer, but right now it's incomplete.

19             Okay.  All right.  So I'm going to let you go

20 ahead back into the jury room and continue in your

21 deliberations in whatever way y'all choose.

22                   (Jury out at 4:46 p.m.)

23             THE COURT:  Okay.  We're in recess.

24             (Deliberation 4:47 p.m. to 4:50 p.m.)

25             THE COURT:  Okay.  It's in order now.  I guess it

**UNREDACTED TRANSCRIPT**

1  was an oversight on their part.  I'm going to bring the jury

2  in now and go ahead and receive the verdict.  Bring them in.

3                    (Jury in at 4:50 p.m.)

4            THE COURT:  All right.  Y'all may be seated.

5  Okay.  Mr. ████, I think we're ready to proceed now; is that

6  correct?

7            JUROR:  That's correct.

8            THE COURT:  Okay.  And my policy is that I read

9  the verdicts and I review them, and then we'll go ahead and

10 receive the verdict.  Everyone listen, if you would, please.

11           Mr. Young, rise and face the jury.  And I'm going

12 to go ahead and communicate the decision of the verdicts.

13           We, the jury, on charge in the indictment for our

14 verdict say:  We find the defendant, Jeffrey Young, as to

15 Count 1, the conspiracy count, guilty.  We find the

16 defendant, Jeffrey Young, as to Count 2, that's the

17 distribution to HR, guilty.  There are several.  Count 3,

18 distribution to patient HR, guilty.  Count 4, patient HR,

19 guilty.  Count 5, the same, patient HR, is guilty.  Count 6

20 is the same, patient HR, guilty as to the distribution.

21 Count 7, patient HR, is guilty.  Count 8, patient KS, is

22 guilty.  Count 9, the same.  As to Count 9, distribution of

23 KS, guilty.  Similarly, Count 10, is guilty.  Count 11,

24 patient KS, is guilty.  Count 12, also guilty, patient KS.

25 Patient KSL, this is Count 13, is guilty.  Similarly,

**UNREDACTED TRANSCRIPT**

1   Count 14, patient KSL, guilty.  And maintaining premises,

2   drug-involved premises, Count 15 is also guilty.  So it's

3   guilty as to all the counts in the indictment.  Okay.  You

4   may be seated.

5              MR. FERGUSON:  Thank you.

6              THE COURT:  Mr. █████, have I communicated that

7   correctly?

8              JUROR:  Yes, sir.

9              THE COURT:  That is the verdict on each of the

10  counts from each of the jurors; is that correct?

11             JUROR:  Yes, sir.

12             THE COURT:  Okay.  So this is the decision of the

13  jury?  Okay.

14             JUROR:  Yes, sir.

15             THE COURT:  And, everyone, I just need to make

16  sure I've read it correctly, that is, guilty on all of the 15

17  counts.  That's the decision of the jury, but I also have to

18  make sure it's the individual decision of each juror.  So I'm

19  going to start in the front on the left.

20             Ma'am, is this your verdict?

21             JUROR:  Yes.

22             THE COURT:  The way I read it, I read it

23  correctly?

24             JUROR:  You read it correctly.

25             THE COURT:  Ma'am, is this yours?

**UNREDACTED TRANSCRIPT**

```
1              JUROR:  Yes.

2              THE COURT:  Your verdict?

3              JUROR:  Yes, sir.

4              THE COURT:  Sir, your verdict?

5              JUROR:  Yes, sir.

6              THE COURT:  Yours?

7              JUROR:  Yes, sir.

8              THE COURT:  Yours?

9              JUROR:  Yes, sir.

10             THE COURT:  Your verdict, sir?

11             JUROR:  Yes, sir.

12             THE COURT:  Yours?

13             JUROR:  Yes.

14             THE COURT:  Yours?

15             JUROR:  Yes, sir.

16             THE COURT:  Yours?

17             JUROR:  Yes, sir.

18             THE COURT:  Okay.  Yours, Mr. ████?

19             JUROR:  Yes.

20             THE COURT:  And yours?

21             JUROR:  Yes.

22             THE COURT:  So it is the verdict of the jury at

23   this time.  I'm going to go ahead and accept the verdict.  It

24   has been communicated to me accurately.  And it does appear

25   to be the verdict of each individual jury -- juror, as well
```

**UNREDACTED TRANSCRIPT**

as the jury as a whole.  I really want to thank you for your
time and attention to the case.  I ask you to step back in
the jury room.  I'd like to just talk with you personally
before you get out of here today and get back to your lives
and the weekend.  Okay.  All right.  If you would, please,
I'm going to excuse you to the jury room.

                    (Jury out at 4:55 p.m.).

            THE COURT:  As I said, it's been communicated
accurately to me.  I'm going to accept the verdict of the
jury.  I think we need to go ahead and set this off for
sentencing.

            CASE MANAGER:  Thursday, August 3, 9:30 a.m.

            THE COURT:  How does that sound, Mr. Ferguson?

            MR. FERGUSON:  I'll make it work.

            THE COURT:  Okay.

            MS. PAYERLE:  Yes, Your Honor.  We'll also make
it work.

            THE COURT:  Okay.  All right.  Then, August 3,
I'll see everyone back and we will --

            CASE MANAGER:  9:30.

            MS. PAYERLE:  9:30, Your Honor.

            THE COURT:  Okay.  And we will continue at that
time.  All right.  Thank you, everyone, for a case that was
tried very professionally on both sides.  We really
appreciate it.

**UNREDACTED TRANSCRIPT**

1              MR. FERGUSON:  Thank you, Your Honor.

2              MS. PAYERLE:  Thank you, Your Honor.

3              THE COURT:  And unless there's anything else from

4    either side?

5              MR. FERGUSON:  No, Your Honor.

6              MS. PAYERLE:  No, Your Honor.

7              THE COURT:  Let's go ahead and adjourn court.

8              (Adjournment.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNREDACTED TRANSCRIPT**

44

**C E R T I F I C A T E**

1

2

3

4          I, TINA DuBOSE GIBSON, do hereby certify that the

5   foregoing 43 pages are, to the best of my knowledge, skill

6   and abilities, a true and accurate transcript from my

7   stenotype notes of the TRIAL hearing held on the 31st day of

8   March, 2023, in the matter of:

9

10  UNITED STATES OF AMERICA

11  vs.

12  JEFFREY W. YOUNG, JR.

13

14

15  Dated this 3rd day of April, 2023.

16

17

18

19                    S/Tina DuBose Gibson

20                    _____
                      TINA DuBOSE GIBSON, RPR
21                    Official Court Reporter
                      United States District Court
22                    Western District of Tennessee

23

24

25

**UNREDACTED TRANSCRIPT**