UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

**UNITED STATES OF AMERICA,**
    **Plaintiff,**

**vs.**                                                                  **No. 1:19-cr-10040-JTF-1**

**JEFFREY YOUNG,**
    **Defendant.**

## SENTENCING MEMORANDUM

    Comes now, Defendant by and through his counsel and files this, his Sentencing Memorandum.

    Jeff Young is Jeff Young's worst enemy. He was at one time a highly respected practitioner in the Jackson, TN area where he specialized in cardiovascular health care. He worked for multiple health care providers and was responsible for the formation of several specialty practices. He was a sought-after lecturer and presenter for his work in the Skyline Cardiovascular Institute and cardiovascular care. He was on top of his game and was one of the most respected nurse practitioners in the Jackson area…..then he got divorced.

    Jeff Young's life was turned upside down by his ex-wife, Dawn Cox Patterson. Dawn was always around, the two couldn't fight enough for each other. Whether the fighting took place in court or whether it was in social media, these two were relentless. This appears to have put Jeff Young into a destructive nosedive. He went from being the preacher's son to the infamous Rock Doc, his alter-ego; the person that was in for the party, for the women, for the attention. He created the Rock Doc out of

thin air, whole cloth, as the antithesis of what he had been for the majority of his life. Overnight, Jeff Young became the tattooed bad boy of medicine. He lost control of his clinics, lost control of finances, lost control of patients, and lost control of his life. How, with as many times the State Nursing Board investigated complaints against him, he wasn't referred to treatment?

Speaking of the State Nursing Board, the Board fully investigated every complaint against Mr. Young, including allegations of over prescribing, and not once in at least 13 complaints or investigations did they take any action against him of significance. They signed off on his prescribing habits for several years, eventually limiting his ability to prescribe opioids but allowing him to continue to practice. If they had taken action, Mr. Young's prescribing habits and mistakes would have been fixable and repairable. There are classes that the Board refers prescribers to assist in prescribing habits. By the time the Board required this, he was in the sights of the DEA. That's not to minimize his actions, but it is the role of the investigators of the Board to do their job. Mr. Young had to have a DEA license to prescribe the medicines in question and not until he was in federal custody did the State or the DEA move to revoke his prescribing privileges. In fact, there may not have been any regulatory actions taken, he may have voluntary surrendered his licenses or it might have been his bond condition.

Mr. Young's clinic was a ticking time-bomb. He was seeing at times 40+ patients a day. If he only spent 12 minutes on each of the patients and never did anything except see patients, he would need an 8-hour day. The sheer volume of his practice leads to the obvious lack of supervision of the patients. He was churning

through the patients, all while trying to keep other clinics staffed and open. And on top of this he had to maintain the raunchy alter ego, the Rock Doc, in the minds of anyone that would listen. He had parties to go to, bars to hang out in, videos to shoot and lets not forget about shooting a pilot for his reality show. Well, he got what he wanted, fame; his name is synonymous with overprescribing opioids. See,

The Atlantic:

https://www.theatlantic.com/health/archive/2021/01/rock-doc-opioids/617405/

CBS News:

https://www.cbsnews.com/news/nurse-practitioner-jeffrey-young-rock-doc-convicted-of-illegally-prescribing-opioids-from-clinic/

The DOJ:

https://www.justice.gov/usao-wdtn/pr/nurse-practitioner-convicted-opioid-distribution-conspiracy

The Washington Times:

https://www.washingtontimes.com/news/2023/apr/4/jeffrey-young-rock-doc-convicted-prescribing-over-/

The Daily Beast

https://www.thedailybeast.com/rock-doc-jeff-young-the-wild-story-of-a-reality-tv-wannabe-accused-in-pills-for-sex-scheme

Doctors Associations that are fighting the licensing of Nurse Practitioners have even championed Jeff Young as a poster child for why nurses should not "function in the same capacity as physicians" in an effort to protect their market share. See, https://www.physiciansforpatientprotection.org/board-of-nursing-vs-board-of-medicine-a-case-study-of-nurse-practitioner-rock-doc-jeffrey-young/

A promising young man's life destroyed when he lost his mind during a divorce, a man with a pathological need to be loved and respected, felt the only way to break from the pain of the ex-wife was to completely go crazy. To throw off the old Jeff of the khakis pants and polo shirts to rock t-shirts and tattoos. From the good boy to the bad boy. It's too bad he never listened to the people that told him he would get himself in trouble. His life was spiraling out of control with no place to go but down.

And to make matters worse, he is medically fragile. He has a transplanted kidney, his mom's kidney. He is on anti-rejection medications and is always at risk of rejection or further diseases.

He has been away from his son for nearly 4 years and has missed him growing up. He is off to college, having graduated from high school while his father was in pre-trial custody. These years and memories are gone and Jeff Young will never be able to make this up to his son who's most formative memory of his father will be that he is a convicted criminal.

Many of the "facts" contained in the presentence report are rumors and assumptions without proof. He should be held accountable for that which the government can put on proof about. Clearly the attempt to hold him responsible for EVERY prescription he EVER wrote is clearly not supported by the proof. Courts have rejected this application where there was a mixture of valid and non-valid prescription.

This court must make an "individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 49-50 (2007). Above all, a court's final determination of a sentence must reflect "§ 3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary' to accomplish the sentencing goals advanced in 3553(a)(2)," namely, retribution, deterrence, incapacitation, and rehabilitation. See *Kimbrough v. United States*, 552 U.S. 85, 111 (2007).

In making these individual assessments, sentencing courts are free to disagree with the guidelines' recommended sentence in any particular case, and may impose a different sentence based on a contrary view of what is appropriate under § 3553(a). This includes the freedom to disagree with "policy decisions" of Congress or the Sentencing Commission that are contained in the guidelines. See *Pepper v. United States*, 562 U.S. 476 (Mar. 2, 2011), *Spears v. United States*, 555 U.S. 261 (2009) (confirming *Kimbrough's* holding that courts may vary from particular guideline because of policy disagreement with that guideline) (per curiam).

This is a case in which this Court should reject the guidelines, because they are a poor guide to the minimally sufficient sentence for Mr. Young in particular, and because the flaws in their development and, in particular, in the Specific Offense Characteristics that drives Mr. Young's guideline range, make them a poor guide generally. This is a case outside the "heartland" of the Guidelines and deserves the individual sentencing demanded by the §3553 sentencing procedures. The Specific Offensive Characteristics drastically inflate the advisory range as they are not

designed to take into consideration the specific facts of this case that make it different. They were not targets towards medical providers.

As for the §3553 sentencing factors:

I. **The punitive purpose of sentencing warrants a sentence below the mechanically calculated range.**

Section 3553(a)(2)(A) requires the Court to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." As the plain language indicates, this provision requires the Court to consider these purposes in relation to the instant offense. In this case, a well-respected medical professional has been incarcerated for nearly four years, he has lost his ability to ever practice his craft, his life and reputation are destroyed, he missed his son growing up and he has lost everything he ever owned.  He is a convicted felon.  All of this must be considered when considering what "just punishment" is, and the punishment he has already received.

II. **The deterrent and protective purposes warrant a sentence below the advisory range.**

The sentencing statute also requires the Court to consider the "need for the sentence imposed . . . to afford adequate deterrence to criminal conduct" and the need to "protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(2)(B) & (C). While many believe that the higher the sentence, the greater the effect in deterring others, the empirical research shows no relationship between

sentence length and deterrence. The general research finding is that "deterrence works," in the sense that there is less crime with a criminal justice system than there would be without one. But the most pertinent question for this Court is whether a shorter term of imprisonment of 4½-6 years is minimally necessary to serve this purpose of sentencing. And, in Mr. Young's particular circumstances, the answer is a resounding "yes." A lengthy sentence serves no purpose. As to the "threat" or deterrence value to other medical providers, that warning bell has been rung loud and clear, in fact, based on cases like this, practitioners begin to under prescribe needs pain medications, something that cause the unintended consequence of hurting patients that needed pain management.  See, https://pubmed.ncbi.nlm.nih.gov/35272687/ (titled: "THE DEA WOULD COME IN AND DESTROY YOU": A QUALITATIVE STUDY OF FEAR AND UNINTENDED CONSEQUENCES AMONG OPIOID PRESCRIBERS IN WV). There is no more general deterrence to be had, in fact the CDC is backpedaling from the harsh rhetoric that once said to limit pain medication at all costs, as this led to negative patient-care outcomes.  As the research cited above found, providers felt that taking on patients who legitimately required opioids would jeopardize their career and refused to treat them.

**III. The rehabilitative purpose of sentencing warrants a sentence below the advisory range.**

Section 3553(a)(2)(D) requires the Court to consider "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." This purpose militates strongly in favor of a sentence below the advisory range. As a

preliminary matter, Congress has explicitly directed that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). In other words, locking someone up neither achieves nor is a substitute for rehabilitation or achieving the goals set forth in § 3553(a)(2)(D). Thus, imprisoning Mr. Young for the term demanded by the guidelines cannot be justified on the basis of offering him any rehabilitation, education, or vocational training, it only offers him death in prison.

IV. **A below-range sentence does not run afoul of the goal of avoiding unwarranted disparity because it is a warranted disparity.**

The Court must also consider the need to avoid unwarranted disparities among similar offenders. 18 U.S.C. § 3553(a)(6). However, this preference is not to avoid all disparities at all costs. Rather, it is to avoid unwarranted disparities; disparity remains an ameliorative tool to adjust the guidelines because "[f]air sentencing is individualized sentencing." Fifteen Years of Guidelines Sentencing, https://www.ussc.gov/research/research-and-publications/research-projects-and-surveys/fifteen-years-guidelines-sentencing at 113 (Nov. 2004).

Mr. Young respectfully requests a sentence below the Guideline range. Jeffrey Young respectfully asks this Court to impose a sentence below the advisory guideline range, a sentence that adequately serves the punitive, deterrent, and rehabilitative goals of sentencing. This sentence also accounts for his particular circumstances, while minimizing the negative impact on his child and his physical health. Mr. Young

looks forward to returning to his child and to rebuilding his life, a life far far away from a prescription pad.

**The
CLAIBORNE ⚜ FERGUSON
Law Firm, P.A.**
294 Washington Avenue
Memphis, Tennessee 38103
(901) 529-6400
Claiborne@midsouthcriminaldefense.com

/s/Claiborne H. Ferguson
CLAIBORNE H. FERGUSON (BPR 20457)

CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of November, 2023, I served a true and correct copy of the foregoing upon the person(s) listed below by the following method(s) of service:

[   ] Depositing it in the U.S. mail, first class postage prepaid and properly addressed;
[   ] Hand delivery;
[   ] Facsimile transmission
[ **X**] Electronic Transmission - PACER

Jillian Willis
Katherine Payerle
Andrew Pennebaker
U.S. Department of Justice
Criminal Division, Fraud Section
202-257-5852

/s/ Claiborne H. Ferguson