| | |
|---|---|
| Tennessee Department of Health | Page 4 of 32 |
| Office of Investigations | File Title: Jeffrey Young, APN |
| Report of Investigation | Respondent's Name: Young, Jeffrey |
| (Continuation) | Complaint Number: 201602822 |

from Mr. Young's office reflected a message on 09/10/14 that M. Yancey wanted another prescription written on Monday, because the medication was not due to be filled until 09/20/14; he had been taking more of them; and he wanted vial of Nubain so his wife could give him a shot. Mr. Young noted that he gave Percocet "yesterday"; he could not give Nubain in a vial; he referred M. Yancey to Dr. Schmidt for pain management; and M. Yancey was going to the emergency room for a pain shot. M. Yancey's medical record from Regional/Tennova Hospital reflected that M. Yancey went to that facility on 09/10/14; he reported that he received a prescription for 90 Percocet per month; and he used all his Percocet, and couldn't get more until 09/20/14. M. Yancey was noted in that medical record to be expressing suicidal ideations; to report it was easier to buy drugs on the street than live with pain; and had told a friend he would rather put a gun to his head. The record reflected that Mr. Young was notified. The medical record from Regional/Tennova hospital reflected that M. Yancey suffered from depression, suicidal ideation, substance abuse, and acute psychotic break. Mr. Young continued to prescribe controlled substances. No mental health referral was noted by Mr. Young. Mr. Young denied that he was notified of the 09/10/14 findings by Regional/Tennova Hospital.

On 08/03/15, M. Yancey was seen by Mr. Young; his urine drug screen was inconsistent; and Mr. Young wrote him prescriptions for Hydrocodone with Acetaminophen #30, and Clonazepam #45. On 08/10/15, M. Yancey went to Regional/Tennova Hospital, and reported he had fallen down stairs (NOTE records from multiple medical providers reflect multiple complaints by M. Yancey that he had fallen/injured himself). On 08/10/15, M. Yancey was administered Fentanyl by Regional/Tennova Hospital, and was prescribed Acetaminophen with Codeine #6, and Tramadol HCL #30. M. Yancey did not notify that hospital that he was currently being prescribed controlled substances by M. Young; told that hospital he had not recently seen a physician; CT scan of head and cervical spine showed no acute fracture or subluxation; and he was discharged home the same day. Mr. Young reported that he was aware that Mr. Yancey went to the emergency room on 08/10/15; he did not know he received Fentanyl; and he did not know why M. Yancey did not notify the ER of the controlled substance prescriptions prescribed by Mr. Young.

On 08/12/15, M. Yancey was seen by Mr. Young; Mr. Young wrote him prescriptions for Zohydro #30, Clonazepam #90, Carisprodol #90; Mr. Young signed a short term disability form for M. Yancey; and Mr. Young signed a Do Not Resuscitate Order for M. Yancey. On 08/15/15, M. Yancey was found unresponsive at his home; emergency medical services were notified and responded to the scene; and M. Yancey was pronounced dead. Interview with J. Copeland – Crockett Co. EMS, and review of the EMS record of M. Yancey reflected that M. Yancey was found supine in bed with no response or pulse; he was cold to touch and lividity was setting; he was placed on cardiac monitor; asystole was noted in all three leads; and he was transported to the funeral home by EMS. M. Yancey was found unresponsive by his children; his wife was not at the home at the time he was discovered unresponsive; EMS notified Ms. Yancey; the family was adamant that they did not want an autopsy; the Medical Examiner – Dr. Emison did not come to the scene; and no autopsy was ordered. Dr. Emison did not examine M. Yancey's body at the funeral home. On direct questioning, J. Copeland reported that M. Yancey's death could have been attributed to a drug overdose.

Witness interviews and photographs/documentation by Crockett County EMS reflected that multiple pill bottles were found on the nightstand next to M. Yancey's body, and in the home; there was a small cup that appeared to be a medicine cup with a small amount of liquid in it located on the nightstand; there appeared to be some type of medication box on the nightstand; and there appeared to be intranasal medication on the nightstand. A used syringe was reported to be found under M. Yancey's pillow, and multiple syringes (some empty and some

| Tennessee Department of Health | Page 5 of 32 |
|---|---|
| Office of Investigations | File Title: Jeffrey Young, APN |
| Report of Investigation | Respondent's Name: Young, Jeffrey |
| (Continuation) | Complaint Number: 201602822 |

filled) were found hidden in the home. Photographs taken at the death scene and interview by J. Copeland reflected that M. Yancey had needle marks/puncture sites on his gums, feet, arm, and leg; and M. Yancey was found to have a white cloth/tissue with blood on it in his hand. Lab was drawn from M. Yancey for toxicology screening. Crockett County Sheriff's Department was contacted by EMS, and responded to the scene. After Crockett County Sheriff's Department had left the scene, they were called to come back to that scene after the used syringe had been found under M. Yancey's pillow.

Interview with A. Gilliland, Crockett County Sheriff's Department, reflected that no incident report was completed at the time Crockett County Sheriff's Department initially reported to the scene of M. Yancey's death, or when they returned to that scene after the used syringe was found under M. Yancey's pillow. A. Gilliland reported that no investigation was conducted by the Crockett County Sheriff's Department; he had no documentation to provide me; Crockett County EMS would have the photographs; and he had just discovered that he had never sent the specimen taken from M. Yancey to TBI for toxicology screening. He reported that Crockett County Sheriff's Department did not take possession of the syringes or pill bottles found at the scene, and they had not tested the contents of the syringes.

Interview with Dr. Emison and review of M. Yancey's death certificate reflected cause of death to be probable cardiac event, due to or as a consequence of polypharmacy. On direct questioning, Dr. Emison reported that M. Yancey's death was related to a drug overdose; it could have been; he would say it was; and it had the appearance of one. Dr. Emison stated that he did not know where Mr. Yancey would have access to syringes; he did not think M. Yancey's medical condition required syringes; he figured M. Yancey took polypharmacy that led to heart problems that killed him; and M. Yancey's heart could not handle the dosage of the polypharmacy that M. Yancey took.

K. Yancey (M. Yancey's wife) denied that M. Yancey had a cardiac diagnosis; reported he had no mental health provider since 2006 or 2007; he could get depressed at times; he took extra pain pills at times; denied M. Yancey was prescribed any medication that required syringes; and that his death could have been an overdose. K. Yancey reported that she had been concerned about the Zohydro prescribed for M. Yancey by Mr. Young. K. Yancey reported that she was aware of the Do Not Resuscitate Order for M. Yancey at Mr. Young's office, and that she had refused to sign it when M. Yancey asked her to. S. Crowe (pharmacist – Fred's Pharmacy) reported concerns regarding the Zohydro prescribed for M. Yancey by Mr. Young. He reported that Mr. Young prescribed Carisprodol, Lorazepam, and Zohydro concurrently for M. Yancey, and he described that combination as the "Trinity" meds.

Mr. Young initially denied that he had written the Do Not Resuscitate Order (DNR) for M. Yancey. When confronted with the documentation in M. Yancey's medical record obtained during investigation of Complaint #201600067, Mr. Young then reported that he did see that documentation in the medical record; confirmed the signature on the form was Mr. Young's; stated that he wrote the order because M. Yancey wanted him to; confirmed that M. Yancey did not have a terminal diagnosis; and stated that the PCP or attending provider could sign the DNR. When asked if polypharmacy contributed to M. Yancey's death, Mr. Young stated it was speculation; there was no autopsy or toxicology, so it would be a guess; and when asked how he knew there was no toxicology findings, he stated he asked Mr. Yancey's wife. Mr. Young denied that M. Yancey expressed suicidal ideations to Mr. Young; he confirmed that he did not refer M. Yancey to a mental health provider; and denied that his care of M. Yancey was negligent. NOTE: Mr. Young reported that M. Yancey was not being

| | |
|---|---|
| **Tennessee Department of Health** | **Page 6 of 32** |
| **Office of Investigations** | **File Title: Jeffrey Young, APN** |
| **Report of Investigation** | **Respondent's Name: Young, Jeffrey** |
| **(Continuation)** | **Complaint Number: 201602822** |

seen by a chronic pain treatment facility while being treated by Mr. Young, and reported that Mr. Young had taken over all of Mr. Yancey's treatment. After the interview with Mr. Young was concluded, and I had returned to my office, I received an e-mail from Mr. Young's attorney, reporting that Mr. Young had just recalled that on the last office visit with M. Yancey, M. Yancey had discussed wanting to go to nursing school; he had earned a scholarship to attend a local school to enroll in a nursing program; and the excited and positive discussion about future plans, along with complete lack of expression of any suicidal ideation to Mr. Young was one of the many reasons that M. Yancey's death came as such a shock to Mr. Young. No previous mention of this conversation had been made by Mr. Young; there was no notation of this information in the medical record; and M. Yancey's wife did not provide this information in interview.

*(refer to att. #1 thru #38; int. #1 thru #7)*