IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|    Plaintiff, | )    Cr. No.: 1:19-cr-10040 |
| | ) |
| vs. | ) |
| | ) |
| JEFFREY YOUNG, | ) |
| | ) |
|    Defendant. | ) |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

The United States, by and through its undersigned counsel, hereby respectfully provides the following memorandum of points and authorities in opposition to the Defendant's motion to dismiss the Indictment (Doc. 333) (hereinafter the "Motion"). Defendant claims that the Indictment failed to charge him with a "cognizable federal offense" because his prescriptions were authorized through his valid licensure. In his Motion, Defendant fails to cite binding Supreme Court precedent that forecloses his argument. Specifically, the Supreme Court in *United States v. Moore*, 423 U.S. 122 (1975) squarely held that registered medical providers, situated equally to Defendant, can be prosecuted "under [the Controlled Substances Act (hereinafter the "CSA," codified at Title 21, United States Code Section 801, *et seq*.)] when their activities fall outside the usual course of professional practice." *Id*. at 124. The CSA itself—without considering the Code of Federal Register—authorizes the criminal prosecution of medical providers who prescribe outside the usual course of professional practice. Further, the United States did

not rely upon the "*Chevron/Auer* Deference" when it charged these or other criminal defendants who violate the CSA by prescribing controlled substances outside the course of professional practice, not for a legitimate medical purpose. Finally, the Indictment properly sets forth the charges. Consequently, the Motion should be denied.

1. **Relevant Procedural History**

In March 2023, Jeffrey Young was convicted of fifteen counts of various violations of the CSA after evidence was presented at trial, which established beyond a reasonable doubt that the Defendant, a licensed and registered nurse practitioner, had prescribed controlled substances outside the course of professional practice for non-medical purposes. On March 15, 2024, Defendant filed a motion to dismiss the indictment for lack of subject matter jurisdiction, claiming the issue under consideration in *Relentless, Inc. v. Department of Commerce*, Case No. 22-1219 and *Loper Bright Enterprises v. Raimondo*, Case No. 22-451,[1] two cases currently before the Supreme Court, will be dispositive of whether the Government can charge the Defendant with a violation of the CSA.  The Motion should be denied.

2. **Defendant's argument is foreclosed by *Moore*, which held medical practitioners whose activities fall outside the usual course of professional practice can be prosecuted under the CSA.**

The Supreme Court in *Moore* considered the exact issue presented by Defendant, which is whether a registered medical provider's conduct was unlawful pursuant to 21

---

[1] *Relentless* and *Loper Bright* challenge a 2007 change to the Magnuson–Stevens Fishery Conservation and Management Act (MSFCMA), an administrative code commonly referred to as the Magnuson–Stevens Act (MSA), requiring fishing vessels to pay the salaries of the federal observers who oversee their operations.  Neither case addresses the CSA.

U.S.C. § 841 because they were "authorized" at the time of their prescribing. In his Motion, Defendant dissected various parts of the CSA, churned over terms like "as authorized" and "except as authorized," argued that the statutory definition of terms like "valid prescription" applied narrowly to one kind of prescription but not others, and advanced a formulation that would subject those registered under the CSA to punishment distinct from those not registered (Doc. 333 at 25). Defendant's analysis led him to conclude the Government cannot permissibly criminalize his conduct under the CSA. Yet, the Supreme Court in *United States v. Moore,* 423 U.S. 122 (1975), which undertook the same analysis, came to an on-point conclusion directly opposite to that of the Defendant.

In *Moore*, the Supreme Court found the statutory language of the CSA "cannot fairly be read to support the view that all activities of registered physicians are exempted from the reach of Section 841 simply because of [medical practitioner's status as "registered"]. *Moore* at 131–32. Moreover, after a thorough analysis of the CSA, the *Moore* Court held that "[t]he legislative history indicates that Congress was concerned with the nature of the drug transaction, rather than with the status of the defendant." *Moore* at 134.

Furthermore, "'severe criminal penalties' were imposed on those, like [the Defendant], who sold drugs, not for legitimate purposes, but 'primarily for the profits to be derived therefrom.'" [2] *Id.* at 135.

---

[2] In addition to *Moore*, the Supreme Court has historically upheld convictions against physicians who act outside the bounds of professional practice. *See In Jin Fuey Moy v. United States*, 254 U.S. 189 (1920) (affirming the conviction of a physician on facts similar to the instant case (e.g., no adequate physical examination, the dispensing of large quantities of drugs without specific directions for use, and fees graduated according to the amount of drugs prescribed); *see*

The *Moore* Court found Section 822(b), which reads "'[p]ersons registered . . . under this subchapter to . . . distribute, or dispense controlled substances are authorized to possess, . . . distribute, or dispense such substances . . . to the extent authorized by their registration and in conformity with the other provisions of this subchapter…' is a qualified authorization of certain activities, *not a blanket authorization of all acts by certain persons*.³ This limitation is emphasized by the subsection's heading 'Authorized activities,' which parallels the headings of Sections 841-843, 'Unlawful acts.'" *Moore*, 423 U.S. at 131.

Importantly, the *Moore* Court did not consider the CFR, and instead found the "qualified authorization" was based on a thorough understanding of the entirety of the CSA. In fact, the *Moore* Court squarely held that the Government may prosecute licensed registrants who prescribe outside the usual course of professional practice (again without reference to the CFR), because "[o]ther provisions throughout the [CSA] reflect the intent of Congress to confine authorized medical practice within accepted limits." *Id.* at 142.

Finally, with facts strikingly similar to the ones at issue in the instant case, the *Moore* Court analyzed the facts presented at trial, holding:

> The evidence presented at trial was sufficient for the jury to find that respondent's conduct exceeded the bounds of "professional practice." As detailed above, he gave

---

*also United States v. Behrman*, 258 U.S. 280 (1922) (affirming the conviction of a doctor who had prescribed heroin, morphine, and cocaine to a person whom he knew to be an addict).

³ The Defendant incorrectly claims that in relying on 21 C.F.R 1306.04 to charge 21 U.S.C. § 841, the Government impermissibly "impl[ies] a conditional authorization to [21 U.S.C.] § 841(a)." (Doc. 223 at 5). The Defendants are mistaken. The *Moore* Court clearly held any "qualified authorization" arises from "*Congress' intent* to limit a registered physician's dispensing authority to the course of his[/her] professional practice." *Moore* at 139–41 (emphasis added).

> inadequate physical examinations or none at all. He ignored the results of the tests he did make. He took no precautions against its misuse and diversion. He did not regulate the dosage at all, prescribing as much and as frequently as the patient demanded. He did not charge for medical services rendered, but graduated his fee according to the number of tablets desired. *In practical effect, he acted as a large-scale "pusher" not as a physician. Id.* at 143. (emphasis added).

Standing alone, the Supreme Court's decision in *Moore* is dispositive of the issues raised by the Defendant and requires the Motion be denied.

### 3. The Controlled Substances Act

The CSA governs the manufacture, distribution, and dispensing of controlled substances in the United States. *See* 21 U.S.C. § 801, *et seq*. "[E]nacted in 1970 with the main objectives of combating drug abuse and controlling legitimate and illegitimate traffic in controlled substances, criminalizes, *inter alia,* the unauthorized distribution and dispensation of substances classified in any of its five schedules." *Gonzales v. Oregon*, 546 U.S. 243, 243 (2006). Congress explicitly delegated to the Attorney General the ability to "promulgate and enforce any rules, regulations, and procedures which he may deem necessary and appropriate for the efficient execution of his functions under [the CSA]." 21 U.S.C. § 871(b). The Drug Enforcement Agency ("DEA") was established in 1973 to serve as the primary federal agency responsible for the enforcement of the CSA.

In passing the CSA, "Congress was particularly concerned with the diversion of drugs from legitimate to illegitimate channels….It was aware that registrants [i.e., prescribers like the Defendants, who were registered with the DEA to prescribe these drugs], who have the greatest access to controlled substances and therefore the greatest

opportunity for diversion, were responsible for a large part of the illegal drug traffic."

*Moore,* 423 U.S. at 135. The *Moore* Court held:

> The [statutory scheme of the CSA], viewed against the background of the legislative history, reveals [Congress'] intent to limit a registered physician's dispensing authority to the course of his[/her] professional practice. Registration of physicians and other practitioners is mandatory for the applicant to be authorized to dispense drugs under the law of the State in which he[/she] practices. In the case of a [medical provider], the CSA contemplates that he[/she] is authorized by the State to practice medicine and to dispense drugs in connection with his[/her] professional practice. [Notably,] the federal registration, which follows automatically, extends no further. *It authorizes transactions within the legitimate distribution chain and makes all others illegal.* Implicit in the registration of a physician [or medical provider] is the understanding that he[/she] is authorized only to act as a physician [or medical provider].

*Moore*, 423 U.S. at 139–41 (internal citations and quotations omitted) (emphasis added); *see also* 21 U.S.C. § 802(21).

Additionally, the provisions of the CSA itself reflect Congress' intent to confine authorized medical practice within accepted limits. For instance,

> Section 812(b)(2) includes in its definition of Schedule II drugs a requirement that (t)he drug (have) a currently accepted medical use with severe restrictions. Registration under the CSA to dispense or to conduct research with Schedule I drugs, which are defined as having "no currently accepted medical use in treatment in the United States," § 812(b)(1)(B), does not follow automatically from state registration as it does with respect to drugs in Schedules II through V, all of which have some accepted medical use. § 823(f). The record and reporting requirements of § 827 are made inapplicable with respect to narcotic drugs in Schedules II through V when they are prescribed or administered "by a practitioner in the lawful course of his professional practice." § 827(c)(1)(A). Section 828(a) prohibits the distribution of Schedule I and II drugs unless pursuant to specified order forms; § 828(e) makes it unlawful for "any person" to obtain drugs with these order forms "for any purpose other than their use, distribution, dispensing, or administration in the conduct of a lawful business in such substances or in the course of his professional practice or research." Section 844(a) prohibits possession of controlled substances unless the drug was obtained "from a practitioner, while acting in the course of his professional practice, or except as otherwise authorized . . . ."

*Moore*, 423 U.S. at 141–42.

When read in its entirety, and after understanding the legislative intent, the CSA itself authorizes a registrant "only to act 'as a physician.'" *Moore*, 423 U.S. at 135. Consequently, Section 841 of the CSA makes it a federal offense for any person, registered practitioner or not, to knowingly or intentionally distribute or dispense a controlled substance except as authorized by law. *See* 21 U.S.C. § 841(a)(1) (herein after "Section 841(a)(1)").[4]

Criminal law generally seeks to punish conscious wrongdoing. Whether a criminal statute requires the Government to prove that the defendant acted knowingly is a question of congressional intent. *Rehaif v. United States*, 588 U. S. ——, ——, 139 S.Ct. 2191, 2195 (2019). When interpreting criminal statutes, the Court "start[s] from a longstanding presumption ... that Congress intends to require a defendant to possess a culpable mental state." *Id*. (internal citation omitted). Scienter refers to the degree of knowledge necessary to make a person criminally responsible for his or her acts. *See ibid*. In *Ruan v. United States*, 597 U.S. 450 (2022), the Supreme Court held:

> [I]n § 841 prosecutions, a lack of authorization is often what separates wrongfulness from innocence. Defendants who produce evidence that they are "authorized" to dispense controlled substances are often doctors dispensing drugs via prescription. We normally would not view such dispensations as inherently illegitimate; we

---

[4] The Defendant makes much of the Government's use of expert witnesses. But the use of expert witnesses does not require *Chevron/Auer* deference. As with many statutory standards, the Government may call an expert witness when scientific, technical, or other area of specialized knowledge may help the jury to understand the evidence or decide an issue. When prosecuting a medical practitioner for a violation under the Section 841(a)(1), the Government may call a medical expert witness to assist the jury to determine whether the defendant knew or should have known that a prescription was issued outside the course of professional practice, not for a legitimate medical purpose. The defense may rebut the Government expert's conclusion by calling a medical expert witness of his own. Ultimately, the jury – not the government – decides whether the defendant has broken the law.

expect, and indeed usually want, doctors to prescribe the medications that their patients need. In § 841 prosecutions, then, it is the fact that the doctor issued an unauthorized prescription that renders his or her conduct wrongful, not the fact of the dispensation itself. In other words, authorization plays a "crucial" role in separating innocent conduct—and, in the case of doctors, socially beneficial conduct—from wrongful conduct.

*Ruan*, 597 U.S. at 458–59.

Here, the Government has properly charged the Defendant under the CSA, pursuant to *Moore*, with failing to prescribe controlled substances for a legitimate medical purpose during the usual course of professional practice to their patients, in violation of Section 841(a)(1). And, ultimately, it is the jury—not the government—who decides whether a prescription is valid under the CSA.[5]

---

[5] Title 21, C.F.R. 1306.04 provides a convenient summary of the relevant legal standard to be proven at trial, that is: whether the prescription, which purported to authorize the dispensing of the drug, was valid. Given the Supreme Court's holding in *Moore* and *Gonzales*, Courts borrow the language in Section 1306.04 as a simple way to explain the relevant standard to juries. Convictions obtained with these instructions have been upheld across the country. *United States v. Rosenberg, 515 F.2d 190 (9th Cir. 1975)* ("the jury [must] look into [a practitioner's] mind to determine whether he prescribed the pills for what he thought was a medical purpose or whether he was passing out the pills to anyone who asked for them."); *United States v. Boettjer, 569 F.2d 1081 (9th Cir. 1978)* ("As I indicated to you just now, the defendant, as a licensed physician, may issue prescriptions for controlled substances so long as he does so lawfully. In order for you to find the defendant guilty on any count, you must first find beyond a reasonable doubt that the prescription in that count was issued by him other than in good faith for a legitimate medical purpose and in accordance with the medical standards generally recognized and accepted in the medical profession."); *United States v. Stump, 735 F.2d 273 (7th Cir. 1984)* ("holding that evidence was sufficient to support a conviction where the doctor's pattern of prescribing drugs "could not possibly be consistent with legitimate medical treatment."); *United States v. Collier, 478 F.2d 268, 271-72 (5th Cir. 1973)* ("It is apparent that a licensed practitioner is not immune from the act solely due to his status, . . . but rather, because he is expected to prescribe or dispense drugs within the bounds of his professional practice of medicine."); *United States v. Badia, 490 F.2d 296 (1st Cir. 1973)* ("The government acknowledges that appellant is authorized to 'dispense' controlled substances and therefore could not have been convicted of violating § 841(a)(1) unless the jury found that his actions constituted something other than

4. ***Chevron/Auer* Deference Has No Bearing on This Case or Any Other Criminal Prosecution of a Defendant who violates the Controlled Substances Act by Prescribing Controlled Substances Outside the Usual Course of Professional Practice, Not for a Legitimate Medical Purpose**

The Code of Federal Regulations (hereinafter "CFR") is the codification of the general and permanent rules published in the *Federal Register* by the executive departments and agencies of the Federal Government. The Supreme Court in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837 (1984) and *Auer v. Robbins*, 519 U.S. 452 (1997) sets forth the legal tests as to when Courts should defer to an agency's interpretation of its own statutes or to interpretations of ambiguous or vague regulations that were promulgated according to the agency's authority.[6]

The Defendant contends the Government relied on the CFR, an interpretation of the CSA, through permission conveyed by *Chevron* (and relatedly *Auer*), known as "*Chevron/Auer* Deference," when charging the Defendant with violations of Section 841(a)(1).[7] The Defendant speculates the Supreme Court will overturn the *Chevron/Auer*

---

dispensing, namely, distributing."); *United States v. Norris, 780 F.2d 1207, 1209 (5th Cir. 1986)* ("In this case, the district court carefully modelled its charge after the *Moore* charge and properly directed the jury to consider: 1) Whether Dr. Norris prescribed the drugs for what he subjectively considered a legitimate medical purpose and 2) from an objective standpoint whether the drugs were dispensed in the usual course of a professional practice. The charge was a correct statement of the law."); *United States v. Dixon, 201 F.3d 1223, 1230 (9th Cir. 2000)* ("A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.").

[6] Generally, the *Chevron/Auer* Deference applies in the context of Administrative Law.
[7] In the first instance, it was the Grand Jury, and not the Government, who lodged the accusations against the Defendants. The Grand Jury did not rely on the Chevron/Auer Deference, nor could it.

Deference in *Relentless* and *Loper Bright*, so they argue the Court should, on their motion, dismiss the Indictment for a lack of subject matter jurisdiction because they believe that without the *Chevron/Auer* Deference, the Government will be unable to charge the Defendant with a violation of Section 841(a)(1). The Defendant's position– and the assumptions upon which it is based – are incorrect as a matter of law.

As explained above, the *Moore* Court, without reference to the CFR, was decided before *Chevron* and *Auer* conferred the deference at issue in the Motion. As explained above, without the benefit of *Chevron* and *Auer, Moore* held a medical practitioner whose activities fall outside the usual course of professional practice can be prosecuted under Section 841(a)(1). In addition, the CSA itself authorizes the criminal prosecution of any person, registered or not, who knowingly or intentionally unlawfully distributes or dispenses a controlled substance. *See* 21 U.S.C. § 801, *et seq*.

While the Defendant cites to *Gonzales v. Oregon*, 546 U.S. 243 (2006), the Defendant's argument reveals a misunderstanding of the facts and posture of the *Gonzales* case. In *Gonzales,* the Government was seeking to enforce a *secondary* interpretation of 21 C.F.R. 1306.04[8],[9], to wit: controlled substances dispensed in relation to a physician assisted suicide is, *per se*, not for a legitimate medical purpose. The secondary interpretation of

---

[8] Title 21 Code of Federal Regulations Section 1306.04 states that "[a] prescription for a controlled substance to be effective must be issued for a *legitimate medical purpose* by an individual practitioner acting in the usual course of his professional practice." (Emphasis added).
[9] The Defendants claim 21 C.F.R. 1306.04 is a "misstatement of the law" (Doc. 223 at FN 5) and "completely fabricated by the Government" (Doc. 223 at FN 7). The Defendants bombastic position is contradicted by the Supreme Court's holding in *Moore*, which the Defendants failed to consider.

"legitimate medical purpose"[10] was promulgated by the Attorney General in response to a new law in the State of Oregon which legalized the practice of physician-assisted suicide. The *Gonzales* Court held that this *secondary* interpretation of the CFR –outlawing the dispensation of controlled substances by a physician to assist suicide in contravention of state law – was impermissible. *Id.* at 258.

Of course, 21 C.F.R. § 1306.04 is not a secondary interpretation of the CFR. Consequently, the Government neither sought nor required *Chevron/Auer* Deference when pointing to 21 C.F.R. § 1306.04 in the Indictment because it is merely a restatement of the CSA itself. *Gonzales v. Oregon*, 546 U.S. 243, 244 (2006). In fact, the *Gonzales* Court squarely found that the language in 21 C.F.R. § 1306.04 merely "parrot[s]" the CSA. *Id.* at 257 ("An agency does not require special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language.") Moreover, the *Gonzales* Court suggested that when it comes to the job of curbing physician-involved drug trafficking, the Attorney General may have had authority to go even further in defining what constitutes a legitimate medical practice. *Id.* at 258. Nonetheless, when relying on 21 C.F.R. § 1306.04, the Attorney General has not promulgated any interpretive rule on which the Government relies to charge the Defendant with 21 U.S.C. § 841. Thus, the *Chevron/Auer* Deference issues

---

[10]    The *Gonzales* Court found the phrase "legitimate medical purpose" ambiguous when considering the Government's secondary interpretation of the phrase as applied to the State of Oregon's Assisted Suicide Law.

under consideration in *Relentless* and *Loper Bright* are inapposite for consideration by this Court.

   5. **The Indictment Properly Alleges a Federal Crime and the Court has Subject Matter Jurisdiction over this Case.**

Motions to dismiss in a criminal action are governed by Rule 12 of the Federal Rules of Criminal Procedure. Rule 12 provides that a defendant may bring a motion challenging "a defect in the indictment or information," including "a claim that the indictment ... fails to ... state an offense." Fed.R.Crim.P. 12(b)(3)(B). First, an indictment is sufficient if it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend. *Hamling v. United States*, 418 U.S. 87, 117 (1974). Second, the indictment is sufficient if it enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Id*. "An indictment that clearly tracks the language of the relevant criminal statute sufficiently contains the elements of the offense." *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010); *United States v. Chichy*, 1 F.3d 1501, 1504 n.3 (6th Cir. 1993).

The allegations in an indictment are presumed to be true and evaluated in the light most favorable to the Government. *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001) ("[C]ourts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based."). "In a prosecution under the Controlled Substances Act, the Government need not refer to a lack of authorization (or any other exemption or exception) in the criminal indictment." *Ruan*, 597 U.S at 461.

Here, the Indictment tracks the language of the CSA, specifically Section 841(a)(1) and 21 U.S.C. § 846; contains the elements of each crime, including the applicable *mens rea*; and contains a statement of facts to fairly inform the Defendant of the specific offense with which they have been charged, including the controlled substances, along with the dates of dispensing, which the Government alleges were prescribed outside the course of professional practice, not for a legitimate medical purpose. *United States v. Darji*, 609 F. App'x 320, 335 (6th Cir. 2015) citing *United States v. Birbragher*, 603 F.3d 478, 488 (8th Cir. 2010) ("holding the defendant had adequate notice that the distribution of controlled substances outside the course of professional practice violated the CSA regardless of the means of distribution."). The Indictment also enables the defendant to plead guilty or not to the charges alleged, and it is sufficiently specific to bar of future prosecutions for the same conduct. Finally, because no form of agency deference was either sought or required to use the language of the CFR in the Indictment, any subsequent decision in *Relentless* and *Loper Bright* have no bearing on the Government's ability to charge the Defendant under the CSA. Consequently, this Court has subject matter jurisdiction over this case, and the Motion should be denied.

6. **Conclusion**

Long before *Chevron/Auer* Deference was created, the *Moore* Court squarely held, and the CSA itself provides, that medical providers like the Defendant can be prosecuted under the CSA when his activities fall outside the usual course of professional practice. Defendant's argument is tantamount to a driver with a valid license claiming that the State of Tennessee has bestowed him with the authority to speed.

Further, the Government did not promulgate, seek, or reference any agency deference in relation to 21 C.F.R. 1306.04. Consequently, the *Chevron/Auer* Deference issues under consideration in *Relentless* and *Loper Bright* have no bearing on these or other criminal defendants who violate the CSA by prescribing controlled substances outside the course of professional practice, not for a legitimate medical purpose. For these, and all the reasons discussed above, the Motion should be denied.

Dated March 22, 2024                                                       Respectfully submitted,

                                                                          GLENN LEON
                                                                          Chief, Fraud Section
                                                                          Criminal Division
                                                                          United States Department of Justice

                                                                          By:   /s/ Katherine Payerle
                                                                          Katherine Payerle
                                                                          Assistant Chief
                                                                          U.S. Department of Justice
                                                                          (202) 341-4227
                                                                          Katherine.payerle@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of March, 2024, the foregoing motion was filed with the Clerk of the Court using the CM/ECF System, which will send notice and constitute service of such filing, to counsel of record for the defendants.

/s/ *Katherine Payerle*
KATHERINE PAYERLE
U.S. Department of Justice
Assistant Chief